# U.S. District Court
## Southern District of Florida (West Palm Beach)
## CRIMINAL DOCKET FOR CASE #: 9:21−mj−08026−BER−1

Case title: USA v. Mackey

Other court case number: 21−M−82 (RER) Eastern District of New York

Date Filed: 01/27/2021

Date Terminated: 01/29/2021

---

Assigned to: Magistrate Judge Bruce E. Reinhart

**Defendant (1)**

| | | |
|---|---|---|
| **Douglass Mackey** | represented by | **Kristy Militello** |

27344−509

*English; YOB 1989*

*TERMINATED: 01/29/2021*

*also known as*

Ricky Vaughn

*TERMINATED: 01/29/2021*

Federal Public Defender's Office
450 Australian A venue South, Suite 500
West Palm Beach, FL 33401
561−833−6288
Email: Kristy_Militello@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender Appointment*

**Noticing FPD−WPB**
(561) 833−6288
Email: wpb_ecf@fd.org
*TERMINATED: 01/28/2021*
*Designation: Public Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|

Removal of Complaint from
Eastern District of New York for
Violation of 18:241

---

**Plaintiff**

| | |
|---|---|
| **USA** | represented by **Jennifer C. Nucci**<br>U.S. Attorney's Office<br>500 S. Australian Avenue<br>Suite 400<br>West Palm Beach, FL 33401<br>561−820−8711<br>Fax: 561−805−9846<br>Email: jennifer.nucci@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>Designation: Retained |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/27/2021 | 1 | | Magistrate Removal of Complaint from Eastern District of New York Case number in the other District 21−M−82 (RER) as to Douglass Mackey (1). (spe) (Entered: 01/27/2021) |
| 01/27/2021 | 2 | | NOTICE OF HEARING as to Douglass Mackey – Initial Appearance – Rule 5(c)(3)/40 set for 1/27/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. (spe) (Entered: 01/27/2021) |
| 01/27/2021 | 3 | | PAPERLESS Minute Order for proceedings held before Magistrate Judge Bruce E. Reinhart: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Douglass Mackey held on 1/27/2021. Date of Arrest or Surrender: 1/27/2021. Defendant present via Zoom and sworn. Defendant consented to proceed via videoconference. Defendant advised of charges, maximum penalties, and rights. Defendant questioned regarding appointment of counsel and appointed FPD, with Court reserving the right to require a contribution to defendant's defense costs at a future date. Bond set as to Douglass Mackey (1) at $50,000 PSB. Total time in court: 25 minutes. Removal/Identity Hearing set for 1/29/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Preliminary/Arraignment set for 2/17/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. (EDNY initial appearance set for 2/1/2021 at 11:00 A.M.) Attorney Appearance(s) via Zoom: Jennifer C. Nucci (AUSA); Kristy Militello (AFPD). Attorney added: Noticing FPD−WPB for Douglass Mackey (Digital 10:27:47; 10:55:24 & Zoom) Signed by Magistrate Judge Bruce E. Reinhart on 1/27/2021. (spe) (Entered: 01/27/2021) |
| 01/27/2021 | 4 | | $50,000 PSB Bond Entered as to Douglass Mackey Approved by Magistrate Judge Bruce E. Reinhart. *Please see bond image for conditions of release.* (spe) (Additional attachment(s) added on 1/27/2021: # 1 Restricted Bond with 7th Page) (spe). (Entered: 01/27/2021) |
| | | | *Main Document* |
| | | | Attachment # 1 *Restricted Bond with 7th Page (Not Attached)* |

| 01/28/2021 | 5 | | Notice of Assignment of Assistant Federal Public Defender as to Douglass Mackey. Attorney Kristy Militello added. Attorney Noticing FPD–WPB terminated.. Attorney Kristy Militello added to party Douglass Mackey(pty:dft). (Militello, Kristy) (Entered: 01/28/2021) |
|---|---|---|---|
| 01/28/2021 | 6 | | Invocation of Right to Silence and Counsel by Douglass Mackey (Militello, Kristy) (Entered: 01/28/2021) |
| 01/28/2021 | 7 | | DEMAND for Disclosure of Expert Witness Summaries as to Douglass Mackey (Militello, Kristy) (Entered: 01/28/2021) |
| 01/29/2021 | 8 | | PAPERLESS Minute Entry for proceedings held by Zoom video conference before Magistrate Judge Bruce E. Reinhart: Status Conference Re: Identity/Removal Hearing as to Douglass Mackey held on 1/29/2021. Defendant sworn and consented to appear by video conference. The defendant waived identity/removal hearing. Defendant reserved his right to have a Preliminary hearing in the E/D of New York. The Court ordered the defendant to appear by Zoom video conference on 2/3 with the E/D of New York. The Court ordered the defendant removed. All further proceedings are to be held by the E/D of New York. Total time in court: 7 minutes. Attorney Appearance(s): Sarah Schall, Kristy Militello (Digital 10:45:33) (tmn) (Entered: 01/29/2021) |
| 01/29/2021 | 9 | | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Douglass Mackey (tmn) (Entered: 01/29/2021) |
| 01/29/2021 | 10 | | ORDER OF REMOVAL ISSUED to the E/D of New York as to Douglass Mackey. Closing Case for Defendant. Signed by Magistrate Judge Bruce E. Reinhart on 1/29/2021. *See attached document for full details.* (tmn) (Entered: 01/29/2021) |

SPN:NR/EDP
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | **TO BE FILED UNDER SEAL** |
| – against – | COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT |
| DOUGLASS MACKEY, also known as "Ricky Vaughn," | 21-M-82 (RER) |
| Defendant. | (18 U.S.C. § 241) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

MAEGAN REES, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

In or about and between September 2016 and November 2016, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendant DOUGLASS MACKEY ("MACKEY"), also known as "Ricky Vaughn," together with others, conspired to injure, oppress, threaten and intimidate persons in the free exercise and enjoyment of a right and privilege secured to them by the Constitution and laws of the United States, to wit, the right to vote, in violation of Title 18, United States Code, Section 241.

(Title 18, United States Code, Section 241)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so for more than three years.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups engaged in public corruption offenses and offenses against the public.  These investigations are conducted in both an undercover and overt capacity.  During that time, I have participated in investigations of criminal behavior, including violations of 18 U.S.C. §§ 201 (bribery), 666 (embezzlement concerning programs receiving federal funds), 1341 (mail fraud), 1343 (wire fraud) and 1349 (wire fraud conspiracy), among other statutes, and I have conducted or participated in surveillance, witness interviews and the execution of search warrants and arrest warrants.  Through my training, education and experience, I have become familiar with the manner in which criminal activity is carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement.  I am familiar with the facts and circumstances set forth below from my participation in the investigation and from my review of the investigative file and reports of other law enforcement officers involved in the investigation.

---

[1] Because the purpose of this Affidavit and Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

<u>Background</u>

2.      In or about 2016, MACKEY, working with other individuals described in greater detail below, made coordinated use of social media to spread disinformation relevant to the impending 2016 Presidential Election ("the Election").  The disinformation spread by these individuals often took the form of "memes."[2]  MACKEY and his co-conspirators variously discussed and debated aspects of these memes, including their content, their formatting and the timing of their release, and expressed a desire that the memes would influence the behaviors of those who saw them.

3.      As the Election approached, MACKEY, in conjunction with others known and unknown, spread disinformation about the manner by which citizens could and should cast their votes during the Election—conduct that constituted criminal infringement of the right to vote.  Specifically, in or about and between September 2016 and November 2016, MACKEY, together with his co-conspirators, formulated, created and disseminated information over social media that claimed, among other things, that supporters of a Presidential candidate from one of the two main political parties (the "Candidate") could and should vote for the Candidate by

---

[2] In the context of internet activity, a "meme" refers to "an amusing or interesting item (such as a captioned picture or video) or genre of items that is spread widely online especially through social media."  Meme, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/meme.

3

posting a specific hashtag[3] on Twitter or Facebook, or by texting the Candidate's first name to a specific telephone text code (the "Text Code"). MACKEY and his co-conspirators conspired to design and distribute these messages with the intent that supporters of the Candidate would believe the fraudulent information contained therein, attempt to cast their votes via social media or text message and, as a result, fail to cast their votes in the Election in a legally valid manner.

### Mackey and the Mackey Accounts

4.     At all times relevant to this Complaint, MACKEY was a resident of New York City.

5.     As set forth in greater detail below, MACKEY used the following Twitter accounts (collectively, the "MACKEY Accounts") at various times:

| Twitter User Name | User ID Number | Dates of Use[4] | Defined Term |
|---|---|---|---|
| @Ricky_Vaughn99 | 2288462990 | Jan. 12, 2014 - Oct. 5, 2016 | MACKEY Account 1 |
| @TheRickyVaughn | 784710017538818084 | Oct. 8, 2016 - Nov. 2, 2016 | MACKEY Account 2 |
| @ReturnofRV | 1876503835 | Nov. 3, 2016 - Nov. 14, 2016 | MACKEY Account 3 |

---

[3] In the context of internet activity, a "hashtag" is a "word or phrase preceded by the symbol # that classifies or categorizes the accompanying text (such as a tweet)." Hashtag Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/hashtag.

[4] The date ranges for the MACKEY Accounts reflect information received from Twitter as to the dates each account was registered and subsequently suspended. According to records obtained from Twitter pursuant to a judicially authorized search warrant, MACKEY Account 3 was created on September 17, 2013. However, Twitter does not possess any direct messages, participation in group direct messages or tweets for MACKEY Account 3 prior to November 3, 2016, shortly after the suspension of MACKEY Account 2 on November 2, 2016.

| @VRichard1776[5] | 937703269463359488 | Dec. 4, 2017 - April 28, 2018 | MACKEY Account 4 |

6. In the months leading up to the Election, MACKEY's true identity as the user of MACKEY Accounts 1, 2 and 3 was not publicly known.

7. Various individuals who interacted with "Ricky Vaughn" have confirmed that the individual known as "Ricky Vaughn" is indeed MACKEY.

    a. On or about April 2, 2018, a candidate running for Congress (the "Congressional Candidate") revealed on the website Gab that "Ricky Vaughn's" real name was MACKEY.[6]

    b. On or about April 3, 2018, a podcast host (the "Podcast Host") interviewed the Congressional Candidate, who revealed that MACKEY had worked for his/her campaign. After the interview, the Podcast Host posted a photo of MACKEY on his/her blog with the caption "Douglass Mackey, a/k/a Ricky Vaughn." In a subsequent one-on-one direct message using MACKEY Account 4, MACKEY

---

[5] On or about March 26, 2018, MACKEY, using his alias "Ricky Vaughn," was interviewed on a podcast. At the close of the interview, MACKEY stated that he was using the Twitter handle @VRichard69. Records provided by Twitter confirm that @VRichard69 and MACKEY Account 4 were both handles used by the Twitter account corresponding to ID number 937703269463359488.

[6] Based on my training, experience and the investigation to date, I understand that Gab is a social networking website that "champions free speech, individual liberty and the free flow of information." Gab Homepage, available at www.gab.com (last visited, January 20, 2021). In late 2016, Gab was not available for use by the general public and was only available to invited users. See "Banned from Twitter? This site promises you can say whatever you want." Washington Post, Nov. 29, 2016, available at, https://www.washingtonpost.com/news/the-intersect/wp/2016/11/29/banned-from-twitter-this-site-promises-you-can-say-whatever-you-want/ (noting that various social media users had moved to Gab following suspension from other social media platforms, such as Twitter).

stated that he had "just got doxed[7] hardcore by [the Podcast Host]" and referenced a photo and said, "it's on [Podcast Host's] website."

c. According to an April 5, 2018, article in the Huffington Post, a filmmaker (the "Filmmaker") interviewed an individual who identified himself as "Ricky Vaughn" in 2016 and met him in person. Following the Congressional Candidate's statements, the Filmmaker confirmed to two news publications that a photo of MACKEY depicted the same individual s/he was introduced to as "Ricky Vaughn." MACKEY had previously discussed his role in the Filmmaker's film: in May 2016, MACKEY, using MACKEY Account 1, stated in a direct message, "I'm gonna be in . . . [Filmmaker's] documentary." A Twitter user inquired, "in person[?]" to which MACKEY responded, "lol yeah. I was like an anonymous shadow." Based on my review of the film in question, I know that MACKEY's face never appeared in the documentary; rather, his voice was presented over a drawing of his "Ricky Vaughn" persona.

d. On or about October 5, 2020, FBI agents conducted a voluntary interview with the Congressional Candidate. The Congressional Candidate confirmed that "Ricky Vaughn's" true name was MACKEY, and that MACKEY had offered his services to his/her campaign. The Congressional Candidate added that, although s/he had never met MACKEY in person, s/he frequently communicated with MACKEY by telephone and via MACKEY's personal email accounts.

e. On or about October 19, 2020, FBI agents conducted a voluntary interview of the Filmmaker who again confirmed that s/he had interviewed MACKEY in 2016 and that s/he knew MACKEY at that time by his Twitter name of "Ricky Vaughn." The Filmmaker further confirmed that s/he had subsequently been shown a photograph of MACKEY and confirmed that the individual in the photograph was the individual the Filmmaker had met as "Ricky Vaughn."

---

[7] To "Dox" is "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge." Dox, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/dox.

6

8.      MACKEY posted numerous statements to MACKEY Account 1 consistent with MACKEY being its user.  Among other things, in communications both public and private, MACKEY revealed his place of residency (noting he lives in "NYC," "Manhatten [sic]," "the upper east" and "the big apple"), his place of origin ("I'm a Vermonter shhh don't tell anyone), his age (noting that he was 26 in 2015), the college he attended (noting that he went to "an elite school," that his "old school" was "Middlebury") and the sport he played in college, including specifics about his greatest athletic achievements (noting that he "ran cross country" and his greatest 800 meter time was "2:01"[8]).  Based on my knowledge, experience and the investigation to date, each of these facts match the known biography of MACKEY.  MACKEY also provided information connecting his accounts.  For example, MACKEY revealed in private communications over MACKEY Account 2 and MACKEY Account 3 that he was using the same Facebook account that he had previously and publicly associated with MACKEY Account 1 (the "MACKEY Facebook Account").

## The Co-Conspirators

9.      Various individuals known and unknown, including MACKEY, collaborated to create and disseminate false information regarding the manner in which citizens could and should vote.  MACKEY's co-conspirators, described in greater detail below, included the following Twitter users:

---

[8] See https://www.tfrrs.org/athletes/2286943/Middlebury/Doug_Mackey (noting that MACKEY's best 800 meter time was 2:02).

7

| Twitter User ID Number | Defined Term |
|---|---|
| 108465379 | Co-Conspirator 1 |
| 779739206339928064 | Co-Conspirator 2 |
| 704041886089084928 | Co-Conspirator 3 |
| 6091342 | Co-Conspirator 4 |

**Probable Cause**

Use of Social Media Platforms

10.     During the time period relevant to this Complaint, MACKEY and his co-conspirators were users of Twitter, among other social media platforms.  Users of Twitter can "tweet" messages or pictures (also referred to as "tweets"), which display on a "timeline," a real-time stream of tweets shared by other accounts the user follows.  Timelines are distinct to each user.  Anyone on Twitter can follow or unfollow any other user at any time, with the exception of blocked accounts.  Users may also retweet, which is a tweet that a user forwards to his/her followers.  In addition to its public aspects, Twitter permits its users to message each other privately via direct message ("DM").  Further, users can form private direct message groups ("Group DMs"), which permit users to send and receive direct messages, which may include text, videos, images and hyperlinks, to and from a group of designated users.  These groups are private, and users may only be added by another member of the group.

11.     In or about 2016, MACKEY, using MACKEY Account 1, established a large audience on Twitter, with approximately 58,000 followers at the time of his suspension.  A February 23, 2016, analysis by the MIT Media Lab ranked MACKEY Account 1 as the 107th

8

most important influencer of the then-upcoming Election, ranking it above more widely known outlets and individuals, such as NBC News (#114), Stephen Colbert (#119) and Newt Gingrich (#141), among others.  In a Group DM dated March 25, 2016, MACKEY took note of his own ranking, commenting that it was "unreal."  MACKEY did not publicly identify himself as the user of MACKEY Account 1 during the time that it was active.

12.     On or about October 5, 2016, Twitter suspended MACKEY Account 1 for violating Twitter's rules—specifically, for "participating in targeted abuse."  Shortly thereafter, MACKEY shared a screenshot of Twitter's message announcing the ban via the social media website Gab.  The screenshot uploaded to Gab included the following message from MACKEY Account 1:  "We all knew this was coming.  Don't worry, I will return to twitter soon."

13.     On or about October 8, 2016, approximately three days after MACKEY Account 1 was suspended, an associate of MACKEY (the "Associate") created MACKEY Account 2 and subsequently transferred control of the account to MACKEY.[9]  The profile image used for MACKEY Account 2 was the same image used for MACKEY Account 1 with some modifications.  As noted above, MACKEY revealed in private communications over MACKEY Account 2 that he was using the MACKEY Facebook Account that he had previously and publicly associated with MACKEY Account 1.  Shortly after its creation, multiple Twitter users

---

[9] On or about November 23, 2020, FBI agents conducted a voluntary interview with the Associate.  S/he confirmed that s/he had created a Twitter account before the Election and then transferred ownership of the account to MACKEY.

who previously corresponded with MACKEY Account 1 added MACKEY Account 2 to various preexisting Group DMs. Some of these users explained that MACKEY had used his Facebook account to confirm that MACKEY Account 2 was his new Twitter account. As such, participants in specific Group DMs who used this feature to communicate with MACKEY using MACKEY Account 1 were now able to communicate with him through MACKEY Account 2. For instance, MACKEY, using MACKEY Account 2, was invited to join groups that were, at times, self-labeled the "Fed Free Hatechat" Group DM (hereinafter, "Fed Free Hatechat") and the "War Room" Group DM (hereinafter, "War Room")[10] and that MACKEY had previously participated in using MACKEY Account 1. My review of these Twitter records reflects that the participants in the Group DMs believed that the user of MACKEY Account 1 and MACKEY Account 2 were the same individual.

14.     MACKEY Account 2 had more than 9,000 followers on or about November 2, 2016, when Twitter suspended MACKEY Account 2. The next day, on or about November 3, 2016, MACKEY Account 3[11] was invited into the Fed Free Hatechat and War

---

[10] Group DMs contain a label that can be changed by any member of the group. The Group DM also contains an index number that stays the same regardless of whether the label changes.

[11] On or about November 4, 2016, MACKEY, using MACKEY Account 3, tweeted the message, "tfw [that feel when] you haphazardly post a /pol/ meme and it winds up on [cable network]." The tweet embedded a link to a screenshot of a cable news broadcast on or about November 3, 2016. The broadcast image included a depiction of a tweet from MACKEY Account 2 that included one of the Deceptive Images (defined below). Based on the investigation to date and the language of the tweet, I believe that MACKEY was confirming that

10

Room in a manner similar to how MACKEY Account 2 had been invited by those same groups following the suspension of MACKEY Account 1. MACKEY Account 3 remained in active use between November 3, 2016, and its suspension by Twitter on November 15, 2016.

<u>Use of Twitter by MACKEY and His Co-Conspirators</u>

15. Starting in at least 2015, MACKEY participated in numerous Group DMs. These groups, which at times included dozens of individuals, and at times had overlapping membership, served as forums for the participants to share, among other things, their views concerning how best to influence the Election. Among other things, MACKEY and the members of these groups used the Group DMs to create, refine and share memes and hashtags that members of the groups would subsequently post and distribute.

16. For example, on or about December 22, 2015, MACKEY and his associates exchanged messages in the Fed Free Hatechat relating to memes suggesting that certain voters were hiding their desire to vote for a Presidential candidate from one of the two main political parties ("Candidate 2"). MACKEY stated, using MACKEY Account 1, "It's actually a great meme to spread, make all these shitlibs think they're [sic] friends are secretly voting for [Candidate 2]." A participant in the group conversation, a Twitter user, described it as

---

he was the user of both MACKEY Accounts 2 and 3 ("you haphazardly post […]"). The tweet was retweeted 576 times and "favorited" 1,012 times.

11

"perfect psyops,"[12] to which MACKEY later replied, "We've hit upon meme magic motherlode." The next day, MACKEY used MACKEY Account 1 to retweet a tweet that contained one of the discussed memes with the following text: "If you need support, I am here for you. #[Candidate 2] Closet."

17. Several months later, on or about April 20, 2016, MACKEY and his associates exchanged messages in a Group DM labeled "Infowars Madman" (the "Madman Group") relating to plans to alter images of various celebrities in a manner that falsely suggested that the celebrities were supporting Candidate 2's candidacy. Co-Conspirator 1 suggested to the group that they needed to "keep it in waves consistent . . . today is [Celebrity 1] tomorrow can be [Other Celebrity] or maybe even let [Celebrity 1] ride cuz its too good." A Twitter user suggested that they "get the [Other Celebrity] stuff ready" but that they "let [Celebrity 1] be the topic of discussion for awhile." After Co-Conspirator 1 added that it would be more "effective" to be "coordinated" and "all be on the same target together, spreading these rumors," MACKEY responded, using MACKEY Account 1, "I really like this idea," noting that they needed to "outmeme" their opponents. That same day, MACKEY used MACKEY Account 1 to retweet a post by Co-Conspirator 1 containing one of the discussed memes, stating "BREAKING NEWS: [CELEBRITY 1] JOINS THE # [CANDIDATE 2] TRAIN!!" Approximately one week later, on

---

[12] MACKEY and his associates periodically described their creation and distribution of political memes as "psyops." Based on my training, experience and the investigation to date, I believe that "psyops" stands for "Psychological Operations," and typically refers to military operations meant to influence the psychological state of a target audience.

or about April 28, 2016, MACKEY used MACKEY Account 1 to post a similar meme to Twitter concerning a different celebrity, stating "BREAKING: [Celebrity 2] feeling the backlash from fans for her support for [Candidate 2]." A few minutes later, Co-Conspirator 1 retweeted MACKEY's post.

18. Finally, on or about October 28, 2016, approximately ten days before the Election, the participants of both the Fed Free Hatechat and the War Room discussed the "Draft Our Daughters" meme, which suggested that the Candidate would provoke armed conflict and draft women to fight the resulting wars. MACKEY was a participant in both groups using MACKEY Account 2. Members in both groups suggested that the meme would influence women voters and thus should be distributed ("#DraftOurDaughters is trending," "[i]t's trending and normie[13] liberal women are freaking out about it," "I need to do a tweet on that. It's fucking hilarious," "it's eliciting sheer terror from the woman vote. Lean in on it," and "I haven't seen a single issue make the shitlib woman vote waver in this election, until this. This is resonating hugely."). That same day, MACKEY used MACKEY Account 2 to tweet or re-tweet the DraftOurDaughters meme numerous separate times, including retweets of tweets by Co-Conspirator 2 and Co-Conspirator 3.

---

[13] "Normie" is a noun and adjective describing someone, often pejoratively or ironically, whose tastes and lifestyles are mainstream. Normie, Merriam-Webster Dictionary, available at https://www.merriam-webster.com/words-at-play/words-were-watching-normie-normcore#:~:text=Normie%20is%20a%20rising%20noun,being%20deliberately%20bland%20or%20unremarkable.

19.   The co-conspirators continued their efforts throughout the election season: MACKEY and his co-conspirators used Twitter's messaging functions to discuss and refine memes[14] and used Twitter's tweet function to spread the memes to other users.  In both DMs and Group DMs, MACKEY and his co-conspirators discussed techniques for using social media platforms to reach larger audiences, such as "hijack[ing]" popular hashtags with memes, "leveraging [MACKEY's] network" to get a hashtag trending, and using memes to appeal to "normies."  MACKEY appeared to have outsized influence in these efforts due to his significant social media following and his related ability to generate conversations on the internet through his posting activity.[15]

---

[14] During conversations within the Fed Free Hatechat, MACKEY routinely described creating memes ("I'm editing the pics into a meme right now"), his excitement that his memes were taking hold ("WE ARE THE MEMES WE'VE BEEN WAITING FOR," "THE MEMES ARE SPREADING," "I'm starting to believe in Meme Magic") and his ability to get others to create memes for him ("I love how I can ask for photoshops and get them back in like 1 hour."). MACKEY and his associates frequently espoused their preference for using memes as their primary means of messaging.  For example, in or around January 2016, MACKEY stated in the Fed Free Hatechat:  "I aggregate content, troll, meme, and comment. . . . You can collect a really good image meme collection and just respond to high profile characters with the perfect image meme response.  Images work better than words. . . . Planted a lot of seeds."  During the same conversation, a Twitter user suggested that the group "collaboratively [sic] work on a guide" to explain their meme methodologies and outline, "step by step, each major aspect of the ideological disruption toolkit."

[15] In various groups, MACKEY and his associates expressed awareness of MACKEY's particular ability to convey messages.  For example, after tweeting a response critical of a television appearance by a United States senator, a Twitter user stated, "damn ricky your followers really watch your tweets.  The activity level when you re-tweet is absurd."  MACKEY responded, "yeah [] I have the most active fans."  In a DM around the same time period, the Associate wrote MACKEY and asked, "Do you have goals?  a team?  tasks?  assignments?

14

<u>Dissemination of Disinformation About Voting</u>

20.     Starting in or around September 2016, MACKEY and his co-conspirators began discussing, designing and circulating memes related to the time, place and manner of voting.  These memes, among other things, falsely claimed that supporters of the Candidate could cast a vote in the Election by posting on Facebook or Twitter, or by sending a text message to a specified text code (hereinafter described categorically as "Deceptive Images").  Contemporaneous communications between and among MACKEY and his co-conspirators demonstrate that the goal of the Deceptive Images was to influence viewers of the Deceptive Images to vote in a legally invalid manner.  These discussions frequently took place over DMs and Group DMs.

21.     On or about September 26, 2016, one Twitter user sent a message to the Madman Group, which included MACKEY Account 1, Co-Conspirator 1 and Co-Conspirator 4.  The message included an image that falsely informed voters in the United Kingdom that they could cast their vote in the June 2016 United Kingdom referendum by posting "Vote Remain" on their Facebook or Twitter account with the hashtag "EUReferendum."  Along with the image, the Twitter user wrote: "Can we [m]ake[16] something like this for [the Candidate]?  Nov 8."

_____

Happy to take on something if it's helpful."  MACKEY responded, "I should right?  I have like the most loyal army on Twitter."

[16] The author of the message stated "fake" rather than "make," and corrected the typo in a subsequent message.

15

Approximately five minutes later, another member of the group responded, "Typical that all the dopey minorities fell for it."

22. On or about October 5, 2016, Twitter suspended MACKEY Account 1 for "targeted abuse." Although MACKEY could no longer use MACKEY Account 1 to access the Madman Group, the members of the group, including Co-Conspirator 1, Co-Conspirator 4 and others, continued to formulate, circulate and discuss the Deceptive Images:

a. On or about October 16, 2016, Co-Conspirator 4 posted a Deceptive Image to the Madman Group. The Deceptive Image posted by Co-Conspirator 4 included a photo of the Candidate with the following text: "Your vote matters. And now, it's easier than ever to cast your vote. Simply post [Candidate name with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016. Together we can defeat [Candidate 2] and elect [Candidate]."

b. Within minutes, members of the Madman Group discussed ways to make the Deceptive Image more effective. One member of the group responded, "Don't post it yet though, a week or less before the election… I'm making a version myself." Co-Conspirator 4 responded, "make sure to use the latest color schemes they have." Another member responded, "I would get rid of the \"and elect [Candidate]\" part at the bottom though. Together we can defeat [Candidate 2] is more assertive." That same day, Co-Conspirator 1 stated, "[Twitter user] u need to make a text message version of that too," to which Co-Conspirator 4 responded, "[Co-Conspirator 1] hold on."

c. Approximately 12 minutes later, Co-Conspirator 4 posted three additional Deceptive Images to the Madman Group. Each of these Deceptive Images depicted images of the Candidate and included the line: "Simply post [#Candidate with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016."

16

d.  Based on my training, experience and the investigation to date, I believe that the concerns expressed by the co-conspirators and others regarding the timing and appearance of the Deceptive Images indicate that they intended that the Deceptive Images would be used to deceive their targets, and thus sought to make the Deceptive Images appear as authentic as possible.

e.  On or about October 17, 2016, Co-Conspirator 4 sent another Deceptive Image to the Madman Group.  The Deceptive Image featured a photograph of the Candidate and the following text: "We are proud to announce a new partnership between Facebook and Twitter, and the United States State Department.  Now, you won't even have to leave your bedroom in order to vote.  Simply post [Candidate name with Vice President Candidate name] with the hashtag #PresidentialElection on your Facebook or Twitter account between 6:00 AM EST and 8:00 PM EST on November 8th, 2016."

f.  On or about October 20, 2016, Co-Conspirator 4 sent another Deceptive Image to the Madman Group.  The Deceptive Image featured a silhouette of a map of the United States and the following text: "Voting just became easier.  Post [Candidate name with Vice President Candidate] on your Facebook or Twitter account on November 8th, 2016 to cast your vote.  That's it."

g.  On or about October 28, 2016, Co-Conspirator 4 posted another copy of a Deceptive Image and the word "heh."  Three minutes later, a participant in the Madman Group responded, "Dopey shitlibs will fall for it too."  Seven minutes later, Co-Conspirator 4 posted another Deceptive Image.

23.  On or about October 29, 2016, a member of the War Room, whose membership at the time also included Co-Conspirators 1, 2, 3 and MACKEY, through MACKEY Account 2, posted a Deceptive Image to the group.[17]  The image depicted a photo of

---

[17] MACKEY had previously participated in the War Room Group DM using MACKEY Account 1.

17

the Candidate and the following text: "Vote for [the Candidate]. Post [Candidate's first name] using #PresidentialElection On November 8th tweet and post the word [Candidate's first name] using the hashtag "#PresidentialElection" on Facebook or Twitter between 7am and 9pm EST to cast your vote for [the Candidate]. Stronger together. [Candidate's website address]." The image also included the logo of the Candidate's campaign.

24.     Less than a minute later, the same Twitter user posted another Deceptive Image to the War Room. The image depicted a photo of the Candidate and the following text: "Vote Early Text '[Candidate's first name]' to 59925 Today Paid for by [Candidate] for President  Must be 18 years or older to vote. Must be a legal citizen of the United States. Vote by Text Not Available in Guam, Puerto Rico, Alaska or Hawaii." The image also included the logo of the Candidate's presidential campaign. As detailed below, "59925" is the same Text Code included in Deceptive Images later distributed by MACKEY.

25.     On or about October 30, 2016, Co-Conspirator 2 tweeted the following: "Remember @[Candidate] voters, on Nov 8th, you can vote from home by #Tweeting \"#[Candidate's first name]\", this is only set up for @[the Candidate] voters." This tweet was retweeted 151 times. Co-Conspirator 2 then sent a screenshot of his/her tweet to the War Room, which included MACKEY and Co-Conspirators 1, 2 and 3. Another participant in the War Room stated that he "liked the idea" but stated "what if we make it more believable acting like it's unfair that they can text and vote and we can't." Another War Room member responded,

18

"Fuck yeah [], Smart."  Co-Conspirator 2 responded, "yeah, true, [], I'm working on it, let me see what I can come up with."

26.     Shortly thereafter, Co-Conspirator 2 posted to the War Room a screen shot of an apparent supporter of Candidate 2 who read the tweet and appeared to now believe that voting by tweet was possible.  Co-Conspirator 2 stated "here's what I worried about [], people on [Candidate 2's] side thinking this is legit and they stay home.  I'm plotting, will have something soon."  Another member responded, "[Co-Conspirator 2], what about if we say something about its too late b/c we didn't register for it [and] we'll have to do it next election or some shit."  Co-Conspirator 2 responded, "Yep, I think so."

27.     As described in greater detail below, on or about November 1, 2016, and November 2, 2016, MACKEY used MACKEY Account 2 to post two Deceptive Images to Twitter.  Twitter suspended MACKEY Account 2 shortly thereafter.

28.     On or about November 2, 2016, Co-Conspirator 4 posted a link to a news article to the Madman Group discussing MACKEY's suspension for distributing the Deceptive Images and added, "hhahaha."  Another Madman Group member responded, "LOL Ricky."

29.     On or about November 3, 2016, a Fed Free Hatechat member authorized MACKEY to re-join the group using MACKEY Account 3.  Shortly after his reentry to the Fed Free Hatechat, MACKEY Account 3 posted a message stating, "hello team."  Twitter users in the group responded, "Hey Ricky lol. I wonder if Jack will lighten the hell up after Tuesday. Wtf" and "Welcome back Ricky."  At or around the same time, MACKEY was also added into the

19

War Room using MACKEY Account 3. The other participants of the War Room responded similarly to those in the Fed Free Hatechat: One War Room member wrote, "OMG. Ricky, you know-this kicks my twitter-love for you in the orbit," "Voter misinformation LOL" and "hahahaha so awesome." Another member responded, "Ricky." MACKEY, using MACKEY Account 3, replied, "lollolol."

      30.     On or about November 6, 2016, and November 11, 2016, MACKEY used MACKEY Account 3 to confirm that he was still using the MACKEY Facebook Account previously associated with MACKEY Accounts 1 and 2. On or about November 11, 2016, MACKEY stated in a direct message "this is my third [Twitter] account bro" and "this one is about a week old." Based on my training, experience and the investigation to date, I know that MACKEY Account 2 was suspended on or about November 2, 2016, approximately nine days before the aforementioned message, and that MACKEY began using MACKEY Account 3 on or about November 3, 2016, approximately eight days before the aforementioned message. The following day, on or about November 12, 2016, MACKEY used MACKEY Account 3 to engage in the following direct message exchange with another Twitter user:

| | |
|---|---|
| Twitter User: | The original Ricky. What did you do that got you suspended so many times |
| MACKEY: | not sure the first time. was given no reason |
| MACKEY: | the second time it was because I posted a meme that told [Candidate] supporters they could text to vote. lol |

20

| | |
|---|---|
| Twitter User: | Twitter is so petty. |
| MACKEY: | [posts a link to a Buzzfeed article discussing suspension of MACKEY Account 2 for distributing Deceptive Images, available at https://www.buzzfeed.com/amphtml/charliewarzel/twitter-doesnt-think-this-attempt-to-disenfranchise-voters-v] |
| Twitter User: | At least you tried lol |
| MACKEY: | lol tell me about it.  so petty |

MACKEY Distributes Disinformation About Voting

31.     In the final weeks before the Election, MACKEY stated his opinion that the outcome of the election would be affected by voter turnout.  On or about October 17, 2016, MACKEY sent the following two tweets in short succession from MACKEY Account 2: "Don't be overconfident [sic].  Reality is, if [the Candidate] gets turnout, and if electorate really is heavily [from the Candidate's party], we will lose in a landslide.  Doubtful[,]" and "[I]f electorate is [from the Candidate's party], and [the Candidate's party] turnout their people, [the Candidate] wins.  \n\nif electorate less [from the Candidate's party], and turnout poor for [the Candidate], we win."  Approximately two weeks later, on or about November 2, 2016, MACKEY tweeted the following: "Obviously, we can win Pennsylvania. The key is to drive up turnout with non-college whites, and limit black turnout."

32.     On or about November 1, 2016, the day before he sent the tweet suggesting the importance of limiting "black turnout," MACKEY used MACKEY Account 2 to

21

tweet a Deceptive Image.  The picture featured an African American woman standing in front of an "African Americans for [the Candidate]" sign.  The Deceptive Image included the following text: "Avoid the Line.  Vote from Home.  Text '[Candidate's first name]' to 59925[.]  Vote for [the Candidate] and be a part of history."  The fine print at the bottom of the Deceptive Image stated the following: "Must be 18 or older to vote.  One vote per person.  Must be a legal citizen of the United States.  Voting by text not available in Guam, Puerto Rico, Alaska or Hawaii.  Paid for by [Candidate] for President 2016."  The tweet included the typed hashtags "#Go [Candidate]" and another slogan frequently used by the Candidate (together, the "Candidate Hashtags").  According to Twitter records, this tweet was retweeted approximately 175 times and "favorited" 165 times.

      33.     The next day, MACKEY used MACKEY Account 2 to tweet another Deceptive Image.  The image depicted a woman sitting at a conference table and using her telephone as if she was entering a text message.  This Deceptive Image contained similar written messages to the one described above, using the same distinctive font employed by the campaign of the Candidate, although this Deceptive Image was written entirely in Spanish.  In addition, this Deceptive Image included a copy of the logo of the Candidate's campaign, as well as a link to the Candidate's campaign website.  Like the previous Deceptive Image, MACKEY's tweet from MACKEY Account 2 included the Candidate Hashtags.  According to Twitter records, this tweet was retweeted approximately 23 times and "favorited" 19 times.

22

34.     Because the tweets containing the Deceptive Images included the Candidate Hashtags, Twitter users who searched for tweets containing either of the Candidate Hashtags could have been exposed to the Deceptive Images.  Accordingly, the use of the Candidate Hashtags enabled MACKEY to spread the Deceptive Images to a wider audience than just those users who specifically followed or otherwise accessed his tweets.

35.     On or about November 2, 2016, Twitter began removing the Deceptive Images posted by MACKEY Account 2 from the Twitter platform and suspended MACKEY Account 2.  That same day, Co-Conspirator 3, a member of the War Room with MACKEY, Co-Conspirator 1 and Co-Conspirator 2, tweeted a Deceptive Image and the following message, "@RickyVaughn thanks for spreading the word! # #CandidateHashtag #Vote [Candidate] from home! Save time & Avoid the line."

<u>Text Code Records</u>

36.     According to iVisionMobile, the company that owned the Text Code listed in the two Deceptive Images distributed by MACKEY, at least 4,900 unique telephone numbers texted "[Candidate's first name]" or some derivative to the Text Code on or about and before Election Day, including many belonging to individuals located in the Eastern District of New York.  Of the approximately 4,900 numbers that corresponded with the Text Code, approximately 4,850, or 99%, sent their texts after MACKEY first tweeted a Deceptive Image from MACKEY Account 2.

23

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for defendant MACKEY, also known as "Ricky Vaughn," so that he may be dealt with according to law.

In addition, it is respectfully requested that this affidavit and arrest warrant be filed under seal until further order of the Court. Premature disclosure of the contents of this affidavit and the arrest warrant would seriously jeopardize the investigation by notifying the target of the existence of the investigation and affording him the opportunity to flee from prosecution and destroy and tamper with evidence.

Maegan Rees
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to telephonically before me on ___January 22___ , 2021

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE

24

EDP
F.# 2018R002250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

DOUGLASS MACKEY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - X

<u>P R O P O S E D   O R D E R</u>

<u>21-M-82</u> (<u>PK</u>)

    Upon the application of SETH D. DuCHARME, Acting United States Attorney

for the Eastern District of New York, by Assistant United States Attorney Erik Paulsen, for an

order unsealing the complaint and arrest warrant in the above-captioned matter upon the arrest of

the defendant;

    WHEREFORE, it is ordered that the complaint and arrest warrant in the above-

captioned matter be unsealed upon the arrest of the defendant.

Dated:   Brooklyn, New York
          Jan 26         , 2021

*Cheryl L. Pollak*

_____

HONORABLE ~~PEGGY KUO~~ Cheryl Pollak
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Jennifer C. Nucci (cierra.collier@usdoj.gov,
jennifer.nucci@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov), Magistrate
Judge Bruce E. Reinhart (reinhart@flsd.uscourts.gov)
--Non Case Participants: United States Pretrial, Probation and PSIunit Office (Court Desk)
(flsp_cd@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:20738833@flsd.uscourts.gov
Subject:Activity in Case 9:21-mj-08026-BER USA v. Mackey Notice of Hearing
```
Content–Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 1/27/2021 at 8:18 AM EST and filed on 1/27/2021

**Case Name:** USA v. Mackey

**Case Number:** 9:21–mj–08026–BER

**Filer:**

**Document Number:** 2(No document attached)

**Docket Text:**
 **NOTICE OF HEARING as to Douglass Mackey – Initial Appearance – Rule 5(c)(3)/40 set for 1/27/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. (spe)**

**9:21–mj–08026–BER–1 Notice has been electronically mailed to:**

Jennifer C. Nucci &nbsp &nbsp jennifer.nucci@usdoj.gov, cierra.collier@usdoj.gov,
usafls–brdkt@usdoj.gov, usafls–hqdkt@usdoj.gov

**9:21–mj–08026–BER–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing FPD-WPB (wpb_ecf@fd.org), Jennifer C. Nucci
(cierra.collier@usdoj.gov, jennifer.nucci@usdoj.gov, usafls-brdkt@usdoj.gov,
usafls-hqdkt@usdoj.gov), Magistrate Judge Bruce E. Reinhart (reinhart@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:20741161@flsd.uscourts.gov
Subject:Activity in Case 9:21-mj-08026-BER USA v. Mackey Initial Appearance - Rule
5(c)(3)/Rule 40
Content-Type: text/html
```

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 1/27/2021 at 2:04 PM EST and filed on 1/27/2021

| | |
|---|---|
| **Case Name:** | USA v. Mackey |
| **Case Number:** | 9:21-mj-08026-BER |
| **Filer:** | |
| **Document Number:** | 3(No document attached) |

**Docket Text:**
 **PAPERLESS Minute Order for proceedings held before Magistrate Judge Bruce E. Reinhart: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Douglass Mackey held on 1/27/2021. Date of Arrest or Surrender: 1/27/2021. Defendant present via Zoom and sworn. Defendant consented to proceed via videoconference. Defendant advised of charges, maximum penalties, and rights. Defendant questioned regarding appointment of counsel and appointed FPD, with Court reserving the right to require a contribution to defendant's defense costs at a future date. Bond set as to Douglass Mackey (1) at $50,000 PSB. Total time in court: 25 minutes. Removal/Identity Hearing set for 1/29/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. Preliminary/Arraignment set for 2/17/2021 at 10:00 AM in West Palm Beach Division before WPB Duty Magistrate. (EDNY initial appearance set for 2/1/2021 at 11:00 A.M.) Attorney Appearance(s) via Zoom: Jennifer C. Nucci (AUSA); Kristy Militello (AFPD). Attorney added: Noticing FPD-WPB for Douglass Mackey (Digital 10:27:47; 10:55:24 & Zoom) Signed by Magistrate Judge Bruce E. Reinhart on 1/27/2021. (spe)**

**9:21-mj-08026-BER-1 Notice has been electronically mailed to:**

Noticing FPD-WPB &nbsp &nbsp wpb_ecf@fd.org

Jennifer C. Nucci &nbsp &nbsp jennifer.nucci@usdoj.gov, cierra.collier@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov

**9:21-mj-08026-BER-1 Notice has not been delivered electronically to those listed below and will be**

**provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

(Revised 03/2020)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**APPEARANCE BOND:** _____

**CASE NO.:** 21-mj-8026-BER

UNITED STATES OF AMERICA:

           Plaintiff,

v.                                    USM # : 27344-509

Douglass Mackey    Defendant,

_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ _____50,000 PSB_____

### STANDARD CONDITIONS OF BOND

**The conditions of this bond are that the defendant:**

    1.  Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

    2.  May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

    3.  May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

    4.  Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    5.  Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

DEFENDANT: Douglass Mackey
CASE NUMBER:
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

X a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case; surrender within 24 hours

X b. Report to Pretrial Services as follows: ( X ) as directed or___ time(s) a week in person and___ time(s) a week by telephone;

__ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

__ d. Refrain from ____excessive OR ___abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

__ e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

__ f. Employment restriction(s): _____

X g. Maintain or actively seek full-time employment;or otherwise maintain an educational program/volunteerism

__ h. Maintain or begin an educational program;

X i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

__ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

X k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office; surrender your firearms within 24 hours

__ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

__ m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.;

__ n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

DEFENDANT: Douglass Mackey
CASE NUMBER:
PAGE THREE

__ o. **LOCATION MONITORING PROGRAM:** The defendant shall be monitored by the form of location monitoring and shall abide by all technology requirements as noted below, as well as contribute to the costs of services rendered based on ( ) ability to pay as determined by the U.S. Probation Officer – or – ( ) paid by U.S. Probation;

 __ Location monitoring technology at the discretion of the officer

 __ Radio Frequency (RF) monitoring (Electronic Monitoring)

 __ Active GPS Monitoring

 __ Voice Recognition

 __ Curfew: You are restricted to your residence every day from_____ to_____, or as directed by the supervising officer.

OR

 __ Home Detention: You are restricted to your residence at all times except for:
 ( ) medical
 ( ) substance abuse or mental health treatment
 ( ) court appearances
 ( ) attorney visits or court ordered obligations
 ( ) religious services
 ( ) employment
 ( ) other activities as pre-approved by the supervising officer

— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by ( )Pretrial Services or ( ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:

 ( ) employment
 ( ) education
 ( ) religious services
 ( ) medical, substance abuse, or mental health treatment
 ( ) attorney visits
 ( ) court appearances
 ( ) court ordered obligations
 ( ) reporting to Pretrial Services
 ( ) other _____

__ q. Third-Party Custody: _____will serve as a third party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

 r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18 U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

DEFENDANT: Douglass Mackey
CASE NUMBER:
PAGE FOUR

__ s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

__ t. Additional Sex Offense Conditions For Defendants Charged or Convicted of a Sexual Offense:

1. (  ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.
2. (  ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.
3. (  ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.
4. (  ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.
5. (  ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.
6. (  ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.
7. (  ) The defendant shall not be involved in any children's or youth organizations.
8. (  ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.
9. (  ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

X u. May travel to and from:  SDFL & EDNY____ , and must notify Pretrial Services of travel plans before leaving and upon return.

__ v. Comply with the following additional conditions of bond:
_____
_____
_____

DEFENDANT: Douglass Mackey
CASE NUMBER:
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

**DEFENDANT:** Douglass Mackey
**CASE NUMBER:**
**PAGE SIX**

### PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

### SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this ___27th___ day of ___January___, 20_21_ at ___WPB___, Florida

Signed and acknowledged before me: **DEFENDANT: (Signature)** _____

WITNESS: _____    ___Delray Beach___    ___FL___

_____   _____
City              State                                                City                          State

### CORPORATE SURETY

Signed this_____ day of _____, 20____ at _____, Florida

SURETY: _____    **AGENT: (Signature)** _____

                                              **PRINT NAME:** _____

_____   _____
City              State

### INDIVIDUAL SURETIES

Signed this ___ day of _____, 20__ at _____, Florida    Signed this ___ day of _____, 20__ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____   _____    _____   _____
City              State                          City              State

Signed this ___ day of _____, 20__ at _____, Florida    Signed this ___ day of _____, 20__ at _____, Florida

SURETY: (Signature) _____    SURETY: (Signature) _____

PRINT NAME: _____    PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____    RELATIONSHIP TO DEFENDANT: _____

_____   _____    _____   _____
City              State                          City              State

### APPROVAL BY THE COURT

Date: ___1/27/2021___    _____

**UNITED STATES MAGISTRATE JUDGE,**
BRUCE E. REINHART

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.    21-08026-REINHART

UNITED STATES OF AMERICA,
            Plaintiff,

vs.

DOUGLASS MACKEY,
            Defendant.
_____:

NOTICE OF ASSIGNMENT

The above captioned case has been assigned to the Assistant Federal Public

Defender specified below.   Please send all notices and inquiries to this attorney at

the address listed.


                                        Respectfully submitted,

                                        MICHAEL CARUSO
                                        Federal Public Defender

                                        s/ Kristy Militello
                                        Kristy Militello
                                        Assistant Federal Public Defender
                                        Attorney for the Defendant
                                        Florida Bar No. 0056366
                                        450 South Australian Avenue, Suite 500
                                        West Palm Beach, Florida 33401
                                        (561) 833-6288 - Telephone
                                        Kristy_Militello@fd.org

1

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-08026-REINHART

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

DOUGLASS MACKEY,

      Defendant.

_____/

**DEFENDANT'S INVOCATION OF RIGHT TO SILENCE AND COUNSEL**

The defendant named above does hereby invoke his rights to remain silent and to counsel with respect to any and all questioning or interrogation, regardless of the subject matter, including, but not limited to: matters that may bear on or relate to arrest, searches and seizures, bail, pretrial release or detention, evidence at trial, guilt or innocence, forfeitures; or that may be relevant to sentencing, enhanced punishments, factors applicable under the U.S. Sentencing Guidelines, restitution, immigration status or consequences resulting from arrest or conviction; appeals or other post-trial proceedings.

The defendant requests that the U.S. Attorney ensure that this invocation of rights is honored, by forwarding a copy of it to all law enforcement agents, government officials, or employees associated with the investigation of any matters

relating to the defendant. Any contact with the defendant must be made through the defendant's lawyer, undersigned counsel.

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
450 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

2

CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing

document is being served this day on all counsel of record via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for

those counsel or parties who are not authorized to receive electronically Notices of

Electronic Filing.

*s/ Kristy Militello*
Kristy Militello

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   21-08026-REINHART

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

DOUGLASS MACKEY,

      Defendant.

_____:

## NOTICE OF REQUEST FOR DISCLOSURES OF
## EXPERT WITNESS SUMMARIES

The defendant, through undersigned counsel, files this notice of request for disclosures of expert witness summaries pursuant to Fed. R. Crim. P. 16(a)(1)(G) and paragraph N of the Standing Discovery Order.   The defendant requests disclosure of expert testimony the government intends to introduce at trial during its case-in-chief.   As to each potential expert witness, the government should disclose the name of the expert witness, the witness' qualifications, present employment, a summary of the witness' opinion, and the bases and reasons for the opinion.   *See, e.g., United States v. Ortega*, 150 F.3d 937, 943 (8th Cir. 1998)(agent's

testimony, involving specialized knowledge of drug-related activities and paraphernalia, was expert opinion subject to disclosure).

Respectfully submitted,

MICHAEL CARUSO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
450 South Australian Avenue, Suite 500
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

2

CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello

3

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Kristy Militello (alis_borrero@fd.org, kristy_militello@fd.org),
Jennifer C. Nucci (cierra.collier@usdoj.gov, jennifer.nucci@usdoj.gov,
usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov), Magistrate Judge Bruce E. Reinhart
(reinhart@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:20749351@flsd.uscourts.gov
Subject:Activity in Case 9:21-mj-08026-BER USA v. Mackey Status Conference
Content-Type: text/html
```

## U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 1/29/2021 at 1:07 PM EST and filed on 1/29/2021

| | |
|---|---|
| **Case Name:** | USA v. Mackey |
| **Case Number:** | 9:21–mj–08026–BER |
| **Filer:** | |
| **Document Number:** | 8(No document attached) |

**Docket Text:**
 **PAPERLESS Minute Entry for proceedings held by Zoom video conference before Magistrate Judge Bruce E. Reinhart: Status Conference Re: Identity/Removal Hearing as to Douglass Mackey held on 1/29/2021. Defendant sworn and consented to appear by video conference. The defendant waived identity/removal hearing. Defendant reserved his right to have a Preliminary hearing in the E/D of New York. The Court ordered the defendant to appear by Zoom video conference on 2/3 with the E/D of New York. The Court ordered the defendant removed. All further proceedings are to be held by the E/D of New York. Total time in court: 7 minutes. Attorney Appearance(s): Sarah Schall, Kristy Militello (Digital 10:45:33) (tmn)**


**9:21–mj–08026–BER–1 Notice has been electronically mailed to:**

Jennifer C. Nucci &nbsp &nbsp jennifer.nucci@usdoj.gov, cierra.collier@usdoj.gov, usafls–brdkt@usdoj.gov, usafls–hqdkt@usdoj.gov

Kristy Militello &nbsp &nbsp Kristy_Militello@fd.org, alis_borrero@fd.org

**9:21–mj–08026–BER–1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1–888–318–2260.:**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No:   21-MJ-08026-BER

United States of America
      Plaintiff,
    v.

                         Charging District's Case No.  21-M-82 (RER) (EDNY)

Douglass Mackey
_____/

## WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS

I understand that I have been charged in another district, the **Eastern District of New York.**

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;
(2)     an identity hearing to determine whether I am the person named in the charges;
(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;
(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.;
(5)     a hearing on any motion by the government for detention;
(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

    X    An identity hearing and production of the warrant.

    X    A preliminary hearing in this district. I request any preliminary hearing be held in the prosecuting district, at a time set by that court.

    [ ]    A detention hearing in the Southern District of Florida.

    [ ]    An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district.  I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

     _s/ Douglass Mackey_____
     Defendant's Signature

Date: __1/29/2021_____

     _____
     Bruce Reinhart
     UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Case No. 21-8026-BER

United States of America
        Plaintiff,

    v.

DOUGLASS MACKEY,
        Defendant.

_____/

## ORDER OF REMOVAL

It appearing that in the **E/D OF NEW YORK** , a Complaint was filed against the above-named defendant on a charge of **18:241**, and that the defendant was arrested in the Southern District of Florida and was given a hearing before United States Magistrate Judge Bruce E. Reinhart  at West Palm Beach, Florida, which officially committed the defendant for removal to the **E/D OF NEW YORK**, it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge Bruce E. Reinhart for removal and posted bail in the amount of **$50,000 PSB**  which was approved by the United States Magistrate Judge Bruce E. Reinhart, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bond furnished by the defendant, and it is further ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at West Palm Beach, Florida on 1/29/2021.

Bruce E. Reinhart
United States Magistrate Judge