RCH:FTB/EDP/WJG
F. #2018R02250

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -     Docket No. 21–CR-80 (NGG)

DOUGLASS MACKEY,
   also known as "Ricky Vaughn,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF CERTAIN PROTECTIVE MEASURES CONCERNING TESTIMONY OF COOPERATING WITNESS

                            BREON PEACE
                            United States Attorney
                            Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201

                            COREY R. AMUNDSON
                            Chief
                            Criminal Division, Public Integrity Section
                            1301 New York Ave. NW, Tenth Floor
                            Washington, D.C.  20004

Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
   (Of Counsel)

William J. Gullotta
Trial Attorney
    (Of Counsel)

PRELMINARY STATEMENT

The government respectfully submits this motion for certain protective measures designed to safeguard the identity of a cooperating witness (the "CW") the government anticipates calling at trial. As explained in greater detail below, the CW participated in the dissemination of misinformation with respect to the 2016 presidential election and was a co-conspirator of the defendant. In addition, the CW is presently engaged in proactive investigations, working with the Federal Bureau of Investigation ("FBI"), and may engage in additional investigations in the future. The CW has used certain online personas and "handles," but, as far as the government is aware, the CW's real name and pedigree information have not been publicly associated with any of the CW's internet identities. To protect the CW's identity and safeguard the integrity of ongoing and future criminal investigations, the government respectfully moves the Court for the following specific relief:

1. A protective order allowing the government to disclose the CW's true identity to defense counsel on an "attorney's-eyes-only" basis;

2. Permission to redact the CW's identity and pedigree information from interview reports that the government will mark and disclose to defense counsel and to the defendant pursuant to 18 U.S.C. § 3500;

3. An order directing that the CW be referred to in open court (including during the anticipated trial testimony) only by the CW's online internet moniker(s) and not by the CW's real name;

4. An order precluding questioning by the defense concerning the details of any of the CW's current proactive work for the FBI or any other government agencies.

The government has discussed these requests with defense counsel and understands that counsel has provisionally consented to the first request, without prejudice to counsel's electing to take a different position later. The government further understands that counsel has reserved the right to oppose the balance of the requests. For the reasons set forth in greater detail below, the government respectfully requests that the Court grant all of the requested relief.

1

I.        Relevant Facts

The CW has pleaded guilty to a violation of 18 U.S.C. § 241 and entered into a cooperation agreement with the government. The government expects that the evidence at trial will show that the CW had communications with the defendant and other relevant persons over the internet through the use of Twitter, including communications discussing the creation and dissemination of deceptive images concerning the time, place, and manner by which voters could cast a vote in the 2016 presidential election. In particular, the CW participated in direct-message groups that included the defendant and others. In all instances, the CW used an online moniker for these communications and did not reveal his or her true identity, face, or likeness to the defendant or the other participants in the groups.

The government intends at trial to introduce the CW's communications as exhibits and to question the CW concerning them and the CW's understanding of the purpose of the deceptive images discussing the time, place, and manner of voting, among other related online activities. The CW has advised that apart from the CW's family, a former girlfriend. and possibly one or two former business associates, no one is aware that the CW is in fact the user of the relevant internet monikers. As far as the government is aware, the CW's true identity has never been publicly associated with any of the online monikers used by the CW on Twitter or other social media, notwithstanding the efforts of investigative journalists who have attempted to learn the CW's identity.

In addition, since entering into the cooperation agreement, the CW has provided assistance to the FBI in other criminal investigations beyond the scope of this case. The CW is presently involved in multiple, ongoing investigations and other activities in which he or she is using assumed internet names and "handles" that do not reveal his or her true identity. The CW has not interacted with any witness, subject, or target in these investigations and activities on a

2

face-to-face basis, and the government has no reason to think that the CW's true identity has been compromised as a result of this work.

II.     Applicable Law

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.  See Pointer v. Texas, 380 U.S. 400, 85 (1965).  The right of confrontation, however, "is not absolute."  United States v. Naseer, No. 10 CR 19 (RJD), 2015 WL 13843166, at *2 (E.D.N.Y. Jan. 26, 2015) (citing Chambers v. Mississippi, 410 U.S. 284, 295 (1973)).  In appropriate circumstances, the right must "bow to accommodate other legitimate interests in the criminal trial process."  Id. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish."  Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

The Second Circuit has repeatedly recognized the government's strong interest in protecting the identities of undercover agents and other confidential witnesses based on concerns for their safety and the desire to enable their continued work on ongoing and future investigations.  See, e.g., Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest . . . ."); United States ex rel. Lloyd v. Vincent, 520 F.2d 1272, 1274 (2d Cir. 1975) (recognizing the strong government interest in protecting the identities of undercover agents).  The use of an alias by a testifying witness is permissible when the government's interest in maintaining the anonymity of its witness outweighs the defendant's interest in confronting the witnesses without limitation.  See Roviaro v. United States, 353 U.S. 53, 61-62 (1957).  Indeed, courts in this district and elsewhere have been especially willing to permit the use of an alias in cases where the disclosure of a testifying witness's real

3

identity would endanger the safety of the witness. See United States v. Pugh, No. 15-CR-116 (NGG), slip op., ECF No. 99 (E.D.N.Y Feb. 24, 2016) (Garaufis, J.); Naseer, 2015 WL 13843166 at *3; United States v. Hernandez, No. 12-CR-809 (PKC), 2013 WL 3936185 (S.D.N.Y. July 29, 2013) (permitting courtroom closure and use of an alias for testifying undercover agent); El-Mezain, 664 F.3d at 491 (finding no constitutional violation where trial court permitted witnesses to testify using pseudonyms); United States v. Abu Marzook, 412 F. Supp. 2d 913, 916 (N.D. Ill. 2006).

In the same vein, courts have held that permitting law enforcement testimony under a shield or badge number does not necessarily curtail a defendant's trial rights because "[t]he cross-examiner can question the witness' activities in the . . . operation without regard to the witness' name, and similarly has an opportunity to see and hear that which he testifies about." Alvarado v. Burge, No. 05-CV-1851, 2006 WL 1840020, at *2 (S.D.N.Y. June 30, 2006). The same analysis applies to testimony under a pseudonym. As Judge Dearie observed in permitting undercover officers from the United Kingdom Security Service to testify using pseudonyms in Naseer:

> Here, the defendant will not be deprived of his right to confront these witnesses and cross-examine them – he will be free to cross-examine them on all topics other than their identity. Nothing about the witnesses' true names goes to their credibility or knowledge regarding the subject of their testimony. As in pseudonymously, here, an officer's "true name is immaterial to defendant's guilt or innocence."

2015 WL 13843166 at *3 (citation omitted); see also United States v. Urena, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014) ("[N]othing about UC-188's real name goes to his credibility or knowledge regarding the subject of his testimony."); Nelson v. Crowley, No. 07-CV-849, 2009 WL 498909, at *5 (S.D.N.Y. Feb. 23, 2009) (observing that anonymous testimony by

undercover officer did not violate Confrontation Clause's prohibition against anonymous accusers and absentee witnesses); Burge, 2006 WL 1840020, at *2; United States v. Baldassare, No. 11-CR-801 (JBW), ECF No. 58 (E.D.N.Y. July 23, 2012) (granting protective order permitting undercover agent to testify under pseudonym and use non-public entrance to courtroom and limiting cross-examination).

III. Discussion

    A. The Court Should Adopt the Proposed Protective Measures Necessary to Safeguard the CW's True Identity

The government should be permitted to (i) provide the CW's real identity to defense counsel on an "attorney's-eyes-only" basis; (ii) redact the CW's real name and pedigree information from the interview reports it will mark and disclose to defense counsel and the defendant as 3500 material;[1] and (iii) obtain from the Court an order that the CW be referred to in open court only by the internet moniker used by the CW during the relevant time and in his or her interactions with the defendant. Given that all of the activities engaged in by the defendant and the CW at issue in this trial were conducted without the defendant's knowing the CW's name, much less having met him in person, the CW's true identity is simply not relevant to the issues in dispute in trial. Nor would withholding the CW's identity from the defendant result in any prejudice – especially since, if the Court grants the requested relief – defense counsel will be

---

[1] On February 13, 2023, the government provided to defense counsel the Twitter "handles" that were used by the CW during the relevant time. This disclosure, as well as the fact that the CW was now cooperating with the government, were made pursuant to the existing protective order in place in the case, which the parties explicitly agreed would apply to the information disclosed. The government made the disclosure to give defense counsel adequate time to review the various materials produced in discovery pertaining to the CW's Twitter accounts, including the contents of Tweets and direct messages, sufficiently in advance of trial to prepare for cross-examination of the CW. The additional 3500 material the government anticipates disclosing consists principally of a discrete number of interview reports and agent notes memorializing prior meetings between the government and the CW.

5

permitted to know the CW's identity for purposes of running a background check (although counsel will not be permitted to share the CW's identity with the defendant). See United States v. Sosa-Zarzuela, No. 21 CR. 41 (PAC), 2022 WL 16722329, at *1 (S.D.N.Y. Nov. 4, 2022) ("Courts frequently allow undercover officers to testify under pseudonyms . . . ."); Alimehmeti, 284 F. Supp. 3d at 491 ("Such restrictions on testimony are equally reasonable here, particularly insofar as the information that they preclude – a UC's identity – is neither exculpatory as to [the defendant] nor evidently relevant at trial."); Naseer, 2015 WL 13843166, at *3. The government will, of course, comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972); and 18 U.S.C. § 3500 with respect to the CW, which only further diminishes the probative value of the CW's actual identity.

Moreover, the disclosure of the CW's identity risks exposing the CW to retaliation from other co-conspirators, as well as the disruption of the current (and future) investigations in which the CW is (and may be) involved. As will be shown at trial, notwithstanding the CW's anonymity, the CW through the CW's internet moniker(s) occupied a prominent position within the online, alt-right community. In that capacity, the CW participated in, among other things, the online harassment of individuals with whom the CW maintained political disagreements, including by encouraging the CW's followers on Twitter and other social media to amplify the harassment.

In this case, the government anticipates that the CW will provide inculpatory evidence against the defendant and other individuals who, like the CW, had engaged in such harassing behavior. As such, the government anticipates that, if the CW's true identity were to become known, then those with whom the CW associated online would likely engage in such behavior towards the CW. Revealing the CW's true identity would also likely lead to the public

exposure of the CW's physical whereabouts. This could in turn subject the CW to more than simply online harassment and could very easily jeopardize the CW's safety.[2] Cf. United States v. Bundy, Case no. 2:16-cr-46-GMN-PAL, 2017 WL 888311, at *2-*3 (D. Nev. Mar. 6, 2017) (denying motion for reconsideration of order granting government's motion that undercover witness be permitted to testify using a pseudonym based on government's concern that witness may become a target for defendant's supporters, resulting in the possibility of "harassment" and the compromising of the witness's safety, as well as the witness's involvement in "on-going investigations").

        This concern is not purely theoretical. At the time of the defendant's arrest, the name of the FBI's lead case agent on the investigation became public. In the wake of the arrest, the agent's picture, hometown, high school, and other personal details were posted online in right-wing blogs, which sought to portray the agent as part of a liberal conspiracy that included other law enforcement professionals (who were also named publicly as associates of the agent). The agent was also contacted by a person purporting to be a journalist, who reached out to the agent via the agent's personal email address and cellphone number, neither of which is public. The FBI took these developments very seriously, conducting a formal threat assessment (no credible threat of violence was identified during the monitoring period), and the agent continues to take certain precautionary measures designed to ensure her safety.

---

[2] It is not lost on the government that, in seeking these protective measures, it is asking the Court to shield the CW from the type of conduct that the CW inflicted on others. The government respectfully submits that, as is the case with many cooperating witnesses, the fact that the CW may have engaged in bad conduct previously does not justify withholding protections that would otherwise be warranted.

In addition, even if the details of the CW's current assistance to the FBI were to remain confidential (see the government's application below), the disclosure of the CW's physical whereabouts may prompt any potential targets of those investigations to seek to intimidate the CW or otherwise disrupt the CW's efforts to assist law enforcement, including through the use of cyberattacks on the CW's electronic devices (the CW moved online in circles that included many individuals highly proficient in computer technology and the internet). As noted above, courts have regularly recognized similar concerns as valid and cited to them to justify the protections requested here, which will result in no prejudice to the defense given that the CW's current investigations do not relate in any way to this case.[3] See Alimehmeti, 284 F. Supp. 3d at 490-91 ("This Court has approved pseudonymous testimony by a UC as a means of protecting a UC's safety and ability to continue to work as such . . . as have other courts . . . . (internal citations omitted)). The government respectfully submits that, under the circumstances, the protections proposed here strike an acceptable and appropriate balance between preserving the defendant's ability to prepare for trial and the government's interest in preserving the CW's safety and ability to continue to assist law enforcement.

    B.    <u>The Court Should Preclude Cross-Examination Concerning the CW's Ongoing Work with Law Enforcement in Unrelated Matters</u>

As discussed above, the CW is presently involved in ongoing efforts to assist the FBI in criminal investigations that postdate and do not involve the conspiracy charged in this case. The government will comply with its <u>Brady</u> and <u>Giglio</u> obligations with respect to those matters, and the government acknowledges that the defendant should be able to elicit – in a

---

[3] Because the CW's current work with the FBI is being conducted online through the use of aliases, the government is not here seeking partial closure of the courtroom or other relief protecting the CW's physical appearance from being visible in open court. If it appears likely to occur, the government may request that the Court prevent the sketching or photographing of the CW during the testimony.

general way – that the CW's work with law enforcement is ongoing for the purpose of establishing potential bias; but the government submits that – beyond that – the details of the CWs work on those investigation are not relevant and should be precluded. See United States v. Kandic, 17-CR-449 (NGG) (RER), 2022 WL 1266431, *7 (E.D.N.Y. Apr. 28, 2022) (Garaufis, J.) (granting government's motion to preclude cross examination of undercover agent and confidential informant concerning other investigations in which they had participated because defense "lack[ed] any basis to request investigative materials pertaining to other national security investigations that are unrelated to this case" and the government had represented that it would comply with its discovery obligations); Pugh, slip op., at 3 (precluding defendant from cross examining undercover witness about "any ongoing investigations or undercover activities engaged in by the [undercover witness] to the extent they are unrelated to the defendant"). Under these circumstances, the government requests that the Court preclude inquiry into investigations on which the CW has worked that do not relate to the case against the defendant.[4]

IV. REQUEST FOR SEALING

The government respectfully requests permission to file this motion under seal. In these circumstances, the government's interest in preserving confidentiality of the CW's relationship with law enforcement should outweigh, for the moment, the public's right of access to court proceedings. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (citing need to protect ongoing investigation, as well as witness safety, as compelling reasons justifying sealing). Given the CW's (and the defendant's) online notoriety, if the public were to learn that the government's case would feature the testimony of a CW, it might prompt unnecessary scrutiny and attention on the possible identity of the CW, which could in turn threaten to

---

[4] For the avoidance of doubt, the CW was not cooperating with the government at any point before or during 2016.

9

undermine some of the protections sought here. The government will move to unseal this motion at the conclusion of the CW's testimony at trial; but, in the meantime, respectfully submits that sealing is justified.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose the following:

1. A protective order allowing the government to disclose the CW's true identity to defense counsel on an "attorney's-eyes-only" basis;

2. Permission to redact the CW's identity and pedigree information from interview reports that the government will mark and disclose to defense counsel and the defendant as 3500 material;

3. An order directing that the CW be referred to in open court (including during the anticipated trial testimony) only by the CW's online internet moniker(s) and not by the CW's real name);

    4.    An order precluding questioning by the defense concerning the details of any of the CW's current proactive work for the FBI or any other government agencies.

Dated:    Brooklyn, New York
             February 24, 2023

                        Respectfully submitted,

                        BREON PEACE
                        UNITED STATES ATTORNEY
                        Eastern District of New York

                        COREY R. AMUNDSON
                        Chief
                        Criminal Division, Public Integrity Section

By:    /s/
        Erik D. Paulsen
        F. Turner Buford
        Assistant United States Attorneys
        (718) 254-7000

        William J. Gullotta
        Trial Attorney
        (202) 514-0047

cc:    Clerk of the Court (NGG)
       Andrew J. Frisch, Esq. (by E-Mail)