UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

         -against-

DOUGLASS MACKEY,

                  Defendant.
───────────────────────────────

**MEMORANDUM & ORDER**

**21-CR-80 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is a motion, filed under seal by the Government on February 24, 2023, for protective measures to safeguard the identity of a cooperating witness ("CW"). (Mot. (Dkt. 66) at 1.) On March 2, 2023, Defendant Mackey filed a memorandum in opposition to the Government's motion, arguing that (1) the court should not permit the Government's motion to remain under seal, and (2) the court should deny the Government's motion because the Government has not satisfactorily "establish[ed] why an anonymous tweeter on the Internet should be permitted to be a witness at a criminal trial without identifying himself." (Opp. (Dkt. 73) at ECF 2.)

I. **BACKGROUND**

The court assumes familiarity with the Government's theory of this case, which charges Defendant Mackey with participating in an online conspiracy to injure certain Twitter users' right to vote by spreading disinformation regarding the time, place, and manner of the 2016 Presidential election. (*See generally* Indictment (Dkt. 8); Compl. (Dkt. 1); Jan. 23, 2023 Mem. & Order (Dkt. 55).) Jury Selection is scheduled to begin on March 13, 2023; Opening Statements are set for March 16, 2023. (Dec. 19, 2022 Text Order.) The Government intends to call a series of witnesses to prove that case, including at least one CW. (Gov't Witness List (Dkt. 78).)

1

The CW is an alleged co-conspirator of Defendant Mackey's, who has pleaded guilty to a violation of 18 U.S.C § 241 and entered into a cooperation agreement with the government. (Mot. at 2.) The Government intends to introduce the CW's communications with Mr. Mackey as exhibits at trial, to question the CW concerning said exhibits, and elucidate for the jury the CW's "understanding of the purpose of the deceptive images discussing the time, place, and manner of voting, among other related online activities." (*Id.*) Additionally, the CW is expected to testify about their "own understanding of [their] online interactions with the defendant and other co-conspirators," their "understanding of the scope of the defendant's influence on social media and the defendant's role in the conspiracy; the coordinated action taken by the CW, the defendant, and other co-conspirators to disseminate widely certain content on social media; and the various strategies used by the co-conspirators to try to sway the outcome of the 2016 election through the use of social media." (Reply (Dkt. 76) at 1-2.)

## II. PROTECTIVE MEASURES REQUESTED FOR A COOPERATING WITNESS

The Government submits that the following protective measures are necessary to "protect the CW's identity and safeguard the integrity of ongoing and future criminal investigations" (Mot. at 1.):

1. A protective order allowing the government to disclose the CW's true identity to defense counsel on an 'attorney's-eyes-only' basis;

2. Permission to redact the CW's identity and pedigree information from interview reports that the government will mark and disclose to defense counsel and to the defendant pursuant to 18 U.S.C. § 3500;

3. An order directing that the CW be referred to in open court (including during the anticipated trial testimony) only by the CW's online internet moniker(s) and not by the CW's real name;

4. An order precluding questioning by the defense concerning the details of any of the CW's proactive work for the FBI or any other government agencies.

(*Id.*) Defendant Mackey counters that (1) the Government has not offered sufficient justification for shielding the witness's identity and (2) his need to explore the witness's credibility and bias arising from work with the FBI requires that the general nature of his work and degree of his ongoing contact with the government be disclosed. (Opp. at ECF 2.)

### A. Withholding the Identity of a Trial Witness

#### 1. Legal Standard

Allowing a witness to testify pseudonymously or granting other measures to protect the identity of a witness testifying at trial can potentially come into conflict with a criminal defendant's right to confront witnesses testifying against him pursuant to the Sixth Amendment's Confrontation Clause. *Smith v. Illinois*, 390 U.S. 129, 133 (1968). "[T]he very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives." *Id.* at 131. Nonetheless, controlling case law within the Second Circuit allows courts to grant these types of measures when rendered necessary by the circumstances. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *United States v. Crowley*,

318 F.3d 401, 417 (2d Cir. 2003) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, (1986)); *see also Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (recognizing the "[g]overnment's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," as well as limitations to that privilege "aris[ing] from the fundamental requirements of fairness . . . [w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused.")

When considering whether to permit a witness to testify under a pseudonym, courts in this circuit have considered factors such as the witness's safety, their ability to continue assisting the government if their identity is disclosed, and whether knowledge of the witness's real name would go to the witness's credibility or knowledge regarding the subject of their testimony.[1] *See United States v. Hernandez*, No. 12-CR-809-S1 (PKC), 2013 WL 3936185, at *3 (S.D.N.Y. July 29, 2013); *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 490-91 (S.D.N.Y. 2018) (granting "pseudonymous testimony by [an undercover officer] as a means of protecting [an undercover officer's] safety and ability to continue to work" and "restrictions on testimony" that "preclude the defense from eliciting, during cross examination or otherwise, the names or identifying characteristics of" the undercover officer

---

[1] Although this issue has not been squarely before the Second Circuit, the Circuit has addressed the related issue of whether a trial court was within its rights to pressure the defense not to ask a government witness his address on cross-examination. *United States v. Marti*, 421 F.2d 1263, 1265-66 (2d Cir. 1970). The *Marti* court did not find reversible error but did acknowledge the defense's interest in obtaining a witness's address on cross-examination so that the defense can investigate the witness out-of-court as well as the countervailing possibility that the government may not wish for the address to be revealed if it might "subject the witness to reprisals" or be "used to humiliate or annoy the witness." *Id.*

in light of the fact that "the information [these measures] preclude the defense from publicly eliciting... is neither exculpatory as to [the defendant] nor evidently relevant at trial"); *United States v. Naseer*, No. 10-CR-19 (S-4) (RJD), 2015 WL 13843166, at *3 (E.D.N.Y. Jan. 26, 2015) (granting a request based on specific facts set forth by the government to keep witness names secret where there were "national security and safety concerns" and "[n]othing about the witnesses' true names [went] to their credibility or knowledge regarding the subject of their testimony"); *United States v. Mial*, No. 21-CR-499-05, 2022 WL 5240988, at *6-7 (S.D.N.Y. Oct. 6, 2022) (allowing an undercover officer to testify under a pseudonym, under the condition that their true name be disclosed to defense counsel on an attorneys'-eyes-only basis and all *Giglio* material be promptly disclosed); *United States v. Dan Zhong*, No. 16-CR-614 (DLI), 2018 WL 6173430, at *1-2 (E.D.N.Y. Nov. 26, 2018) (permitting victim witnesses of an alleged forced labor conspiracy to testify using pseudonyms and limit the disclosure of the actual names of victim witnesses and testifying family members of victims to defense counsel only because "the victims and/or their families potentially face[d] reprisals for their testimony" and the "Defendant's need for the identity of the victim witnesses [did] not outweigh the concerns raised as to the safety of those witnesses" as their "true names and identities [were] immaterial to Defendant's guilt or innocence").[2]

---

[2] The Defense relies heavily on *United States v. Maxwell*, where then-District Judge Nathan refused to allow witnesses for the defense to testify anonymously on the basis of "generalized concerns" regarding "scrutiny and harassment because of the significant publicity this case has garnered." No. 20-CR-330 (AJN), 2021 WL 5967913, at *1-2 (S.D.N.Y. Dec. 15, 2021). Judge Nathan's ruling was in regard to—and particularly tailored to the circumstance of—*defense* witnesses, while the application before this court is in regard to a cooperating *government* witness involved in ongoing unrelated government investigations.

5

At least one court in this Circuit has adopted the three-step test put forth by the New York Court of Appeals for determining whether the government should be permitted to "shield a witness's identity, address, or occupation." *United States v. Urena*, 8 F. Supp. 3d 568, 572 (S.D.N.Y. 2014) (citing *People v. Stanard*, 42 N.Y.2d 74, 84 (1977)). Under this test, the party seeking to shield the witness's identity must first "come forward with some showing of why the witness should be excused from answering the question. Excuse may arise from a showing that the question will harass, annoy, humiliate or endanger the witness." *Id.* at 572-73. Second, the burden shifts to the other party to "demonstrate the materiality of the requested information to the issue of guilt or innocence" based on "(1) the extent to which the right to cross-examine is infringed, (2) the relevance of the testimony to the question of guilt or innocence, (3) the nature of the crime

---

Additionally, the Defense suggests that the court rely on the *Waller* factors to determine whether protective measures can be granted. (Opp. at ECF 3-4.) The *Waller* factors are properly used to determine whether a full or partial courtroom closure is warranted. *Waller v. Georgia*, 467 U.S. 39, 44 (1984); *see also United States v. Smith*, 426 F.3d 567, 573-76 (2d Cir. 2005) (describing at length the circumstances in which *Waller* factors should be used to assess effect of a courtroom closure on the Sixth and First Amendments). At its furthest limits, the *Waller* factors have been used to analyze testimony given by a witness behind screen and wearing disguise, under the theory that this constituted a partial courtroom closure, *United States v. Fernandez*, 590 F. App'x 117, 119 (2d Cir. 2015) (Summary Order), but this court is not aware of any case law in this Circuit suggesting that placing limitations on identifying information constitutes a partial closure. At this time, no request has been made for a courtroom closure. (Mot. at 8 n.3.) Thus, the *Waller* factors are inapplicable to the case at bar.

Finally, the Defendant suggests that cases pertaining to pseudonymous testimony by undercover law enforcement agents rather than by confidential informants or cooperating witnesses are inapplicable. (Opp. at 5-6.) The court disagrees. The key considerations in cases where the witness is a paid government employee, *see, e.g., Mial*, 2022 WL 5240988, at *6-7, are much the same as those before a court when, as here, a witness is assisting the government pursuant to a cooperation agreement rather than an employment agreement. (Mot. at 2.)

charged and the quantum of proof established aside from the testimony of the witness, (4) the nature and significance of the interest or the right asserted by the witness, and (5) the nature of and extent to which the proposed cross-examination would produce evidence favorable to that party and . . . whether such evidence would be merely cumulative." *Id.* at 573. Finally, the court uses its discretion to "weigh the various interests involved and determine whether the testimony is sufficiently material to the question of guilt or innocence to overcome the interest of the opposing party" while "keep[ing] in mind that the underlying purpose of identity testimony is to establish a background setting in which to test veracity." *Id.*

### 2. Discussion

This court follows Judge Engelmayer's lead in adopting the N.Y. Court of Appeals' three-step inquiry as a framework for deciding whether to grant the Government's requests to shield identity information.[3] *See Urena*, F. Supp. 3d at 572-73.

First, the court finds that the Government has adequately shown that requiring the CW to reveal their identity in open court would create the likelihood that third parties would "harass" or "endanger," *id.*, the witness. The Government notes that the CW "occupied a prominent position within the online, alt-right community" prior to their guilty plea and government cooperation. (Reply at 2.) For this reason, the Government argues, the CW's cooperation with the government "is expected to attract intense scrutiny from members of that group that are already following this case," which would, if the CW's identity were to be revealed, transform into "at a minimum, online harassment." (*Id.* at 2-3.) The court is unpersuaded by the Defendant's claim that violence

---

[3] For the purposes of this analysis, the court construes the Government's first three requests, (Mot. at 1), as part of a general request to shield identity information.

is necessarily far afield from that online harassment. (Opp. at ECF 7-9.) On the contrary, the Government is correct in its assertion that "to claim that intense online attacks do not endanger a person's physical safety is to ignore the reality of our current world," as "many acts of politically motivated violence in current society arise from campaigns of online harassment." (Reply at 3.) For this reason, the court finds that the Government had made an adequate showing that there is real, non-speculative, concern that revealing the CW's identity could lead to online or physical harassment or danger.

Second, the Defense has failed to prove that testimony regarding the CW's identity is material "to the question of guilt or innocence." *Urena*, F. Supp. 3d at 573. The Defense has merely stated that such testimony is "necessary to place him in the proper setting to judge the validity of his testimony," (Opp. at ECF 12), with no further explanation of how it is truly probative with regard to the question of guilt or innocence. Indeed, the right to cross-examine would be only very slightly infringed by the requested measures, given that—as the defense acknowledges—the relevant exchanges and interactions all took place over the internet, where the CW was known by online monikers (under which he would be testifying at trial) rather than by his legal name or personal background.[4]

---

[4] In some cases, courts have preferred for witnesses seeking anonymity to testify under an alias rather than under a non-name moniker such as a badge number so that the "jury is not made aware that the name is pseudonymous." Order, *United States v. Asainov*, No. 19-CR-402 (NGG), at 27 (E.D.N.Y. Jan. 13, 2023) (Dkt. 122); *see also Urena*, 8 F. Supp. 3d at 573 ("[T]estify[ing] under a transparent code name . . . might unhelpfully imply to the jury that defendants are dangerous. The better course, in the Court's judgment, is for [the witness] to testify under an alias, which would eliminate any suggestion to the jury of irregularity or danger.") The court sees no reason to require the use of an alias here, where the CW has largely been known by their online moniker, and continuing to use that moniker would not likely cause the jury to suspect any irregularity or danger.

Finally, the court weighs these interests, keeping in mind the general "purpose of identity testimony ... to establish a background setting in which to test veracity," *Urena*, F. Supp. 3d at 573. By the stated terms of the Government's own requests, (Mot. at 1), the Defense counsel would be provided the CW's true name and would thus be able to do a background check and explore any and all avenues for cross-examination with regard to credibility and propensity to tell the truth. When weighing the interests and considering the Defendant's ability to test veracity, the court finds that this test weighs in favor of granting the Government's requests.[5]

### B. Precluding Questioning Regarding a Cooperating Witness's Work for Government Agencies

The Government has also made an application for the court to preclude questioning of the CW regarding their assistance to the FBI with "criminal investigations that postdate and do not involve the conspiracy charged in this case" for lack of relevance. (Mot. at 8-9.) The Government acknowledges that the defense must be permitted to, in general terms, raise the fact that CW is currently working with law enforcement in order to establish the CW's potential bias to the jury. (*Id.*) Defendant Mackey counters that permission to cross-examine the CW regarding his current activities with the FBI is necessary "in order to effectively place [them] in the proper setting and test [their] credibility" and to understand whether their political views have changed, whether

---

[5] One additional factor not taken into consideration by this test, but often considered by courts in this Circuit, is the potential for "disruption of the CW's ongoing work with the FBI." (Reply at 3.) Given the anonymous and online nature of this work, the strength of the connection between revealing the CW's true identity and their ability to continue to assist the government remains unclear to this court, despite the Government's oblique reference to the possibility of "a cyberattack." (*Id.*)

they are "targeting other right-wing adherents," and what their other motivations for cooperating may be. (Opp. at ECF 11-12.)

Courts in this Circuit—including this court—have typically addressed this request separately from the other protective requests discussed above and have typically granted this request where information regarding investigations has fallen outside the bounds of the Government's disclosure requirements and been deemed not relevant to the case before the court. *See United States v. Kandic*, No. 17-CR-449 (NGG) (RER), 2022 WL 1266431, at *7 (E.D.N.Y. Apr. 28, 2022); *see also* Order, *United States v. Pugh*, No. 15-CR-116 (NGG) (E.D.N.Y. Feb. 24, 2016) (Dkt. 99) (granting the government's motion to preclude cross-examination about any ongoing investigations); *United States v. Hossain*, 19-CR-606 (SHS), 2021 WL 4272827, at *6, (S.D.N.Y Sept. 21, 2021) (finding that "information about the [confidential human source's] participation in other investigations or undercover activities unrelated to the defendant" should be excluded under Fed R. Evid. 402 because it is not probative or relevant to defenses, and that Fed. R. Evid. 403 provides "sufficient basis for prohibiting cross-examination" on this issue because "any probative value this information might have is substantially outweighed by the danger of confusing the issues and undue delay"); *Alimehmeti*, 284 F. Supp. 3d at 494 (preliminarily granting the Government's "application to preclude inquiry at trial into [an undercover agent's] participation in unrelated matters" unless the defense presented any new theory as to its relevance).

The Government represents that it is aware of its discovery obligations under *Brady* and *Giglio*. (Mot. at 8.) Moreover, the Defense fails to put forth any *specific* reasons why details of the CW's ongoing work for the government would be relevant to this trial. (*See generally* Opp. at ECF 11-12.) Thus, the Government's motion is preliminarily GRANTED. Defendant is, however

granted leave to make a renewed application relating to this issue during trial if specific circumstances arise in which the Defendant is able to articulate a particular basis on which the CW's work would be relevant beyond the general proposition that there may be political or other motivations behind the CW's decision to cooperate.

### III. PERMITTING THE GOVERNMENT'S MOTION TO REMAIN SEALED

The Government also seeks for its motion and all corresponding briefing to remain sealed until the conclusion of the CW's testimony. (Mot. at 9; Reply at 5.) However, documents submitted by parties regarding "matters that directly affect an adjudication" enjoy a presumption of public access under both the common law and the First Amendment. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-121 (2d Cir. 2006). This court is not persuaded that the Government's interest in preserving the confidentiality of the CW's relationship with law enforcement is sufficiently strong to counter the public's strong interest in access to court documents bearing on important issues relating to adjudication, given that none of the aforementioned documents contain any identifying or pedigree information. Significantly, the documents also do not contain any specific information regarding whatever assistance CW is currently providing to the Government in other cases. Thus, the court DENIES the government's request to keep this briefing sealed and respectfully requests that the Clerk of the Court unseal docket entries 66, 73, and 76.

### IV. CONCLUSION

For the reasons stated above, the Government's applications for (1) a protective order allowing the government to disclose the CW's true identity to defense counsel on an "attorney's-eyes-

11

only" basis, (2) permission to redact the CW's identity and pedigree information from interview reports that the government will mark and disclose to defense counsel and to the defendant pursuant to 18 U.S.C § 3500, and (3) an order directing that the CW be referred to in open court (including during the anticipated trial testimony) only by the CW's online internet moniker(s) and not by the CW's real name are GRANTED. The Government's application for an order precluding questioning by the defense concerning the details of any of the CW's current proactive work for the FBI or any other government agencies is also, preliminarily, GRANTED. The Government's request that all briefing regarding protective orders relating to the CW's identity remain sealed is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 7, 2023

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

12