UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

DOUGLASS MACKEY,

                Defendant.

**MEMORANDUM & ORDER**

21-CR-80-NGG

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendant Douglass Mackey's motions *in limine*. (Def. Mot. (Dkt. 55).) The court now issues its rulings on several of these evidentiary issues, while reserving judgment on others. For the reasons set forth below:

Defendant Mackey's motion to preclude all protected speech prior to September 2016 is DENIED.

Defendant Mackey's motion to preclude Twitter's reasons for suspending the "Ricky Vaughn" Twitter account is GRANTED in PART and DENIED in PART. The Government will not be able to introduce Twitter's reasons for suspending the Ricky Vaughn Twitter account on October 6, 2015 but will be allowed to submit, to the extent otherwise admissible, the Defendant and his co-conspirators' statements regarding the reasons for suspension of the account on November 2, 2016. Statements by Twitter or others regarding the November 2, 2016 suspension that were received by the Defendant Mackey or his co-conspirators may be offered for their effect on the listener. The Government is also permitted to provide evidence regarding the fact that both suspensions took place, but only as is relevant to explaining the nature of the conspiracy and timeline of events leading up to and constituting the charged conduct.

1

Defendant Mackey's motion to preclude the conclusions of MIT Media Lab about the popularity of the Ricky Vaughn Twitter account is DENIED with regard to statements made by the Defendant himself, while judgement is RESERVED with regard to the statements of others and the relevant MIT Media Lab's publication itself.

Defendant Mackey's motion to preclude statements revealing the identity of the congressional candidate described in the Complaint is DENIED without prejudice and with leave to renew if the Government seeks to introduce such evidence at trial.

Defendant Mackey's motion for an order directing the Government to produce additional potentially exculpatory discovery materials pursuant to Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") 5(f) and *Brady v. Maryland*, 373 U.S. 83 (1963) is DENIED.

Defendant Mackey's motion in opposition to the court empaneling a fully vaccinated jury is DENIED AS MOOT.

The court reserves judgment on all other motions *in limine*, with the intention of making additional decisions between now and the beginning of trial, and yet others during trial itself.

## I. BACKGROUND

The court assumes familiarity with the Government's theory of this case, which charges Defendant Mackey with participating in an online conspiracy to injure certain Twitter users' right to vote by spreading disinformation about the time, place, and manner for voting in the 2016 Presidential election. (*See generally* Indictment (Dkt. 8); Compl. (Dkt. 1); Jan. 23, 2023 M&O (Dkt. 55).) Jury selection is scheduled to begin on March 13, 2023; opening statements are set for March 16, 2023. (Dec. 19, 2022 Text Order.)

## II. STANDARD OF REVIEW

"The purpose of an *in limine* motion is to aid the trial process by enabling the court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[1] "A court will exclude evidence on a motion *in limine* only if it is clearly inadmissible on all potential grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021).

"[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-CV-858 (NGG) (PK), 2019 WL 1365752, at *2 (E.D.N.Y. Mar. 26, 2019). At trial, the court may also exercise discretion "to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## III. CERTAIN OF THE DEFENDANT'S MOTIONS IN LIMINE

As a preliminary matter, all relevant evidence is admissible unless otherwise provided by federal statute, the Federal Rules of Evidence ("Rules"), or the Constitution. Fed. R. Evid. 402. Hearsay is an out-of-court statement offered for the truth of the matter asserted, Fed. R. Evid. 801(c), and is inadmissible unless otherwise allowed under statute, the Rules, or as otherwise prescribed by the Supreme Court. Fed. R. Evid. 802. There are numerous exclusions and exceptions to the general prohibition on hearsay. *See* Fed. R. Evid. 801(d), 803, 804.

All evidence must be relevant to be admissible. Under Rule 401, admissible evidence is relevant if "it has any tendency to make a

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

3

fact more or less probable than it would be without the evidence" and "the fact is of consequence." Fed. R. Evid. 401. The Second Circuit has described this as a "very low standard." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). Courts can, however, exclude relevant evidence where the probative value of the evidence "is *substantially outweighed* by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). Probative value in this context is evaluated in light of evidentiary alternatives. *Old Chief v. United States*, 519 U.S. 172, 184 (1997). "'Unfair prejudice' within [this] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Notes on Fed. R. Evid. 403. District courts have broad discretion in conducting a Rule 403 balancing test. *See United States v. Bermudez*, 529 F.3d 158, 161-62 (2d Cir. 2008).

### A. Protected Speech Preceding September 2016

The Defendant asserts that any First Amendment protected speech uttered more than sixty days before the 2016 election should be precluded from use at trial. (Def. Mot. at 8.) This court does not deny that constitutionally protected political speech may, at times, be excluded under an assessment of "whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs. *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008). And the court acknowledges the need for a careful balancing of probative value and prejudicial potential in the context of a Rule 403 objection. Fed. R. Evid. 403. The court doubts that significant amounts of political speech predating the charged conspiracy by many months or years would be relevant but will decide such matters on a case-by-case basis during trial. Nonetheless, the Defense's arbitrary and unsupported time cut off—

4

based on a bill that has never been enacted, (Def. Mot at 8), and that even if enacted would not create such an evidentiary bar, *see* Deceptive Practices and Voter Intimidation Prevention Act of 2005, S. 1975, 109th Cong. (2005)—is wholly unfounded. The Defendant's motion to preclude the Government's use of protected speech prior to September 2016 is therefore DENIED.

### B. Twitter's Reasons for Suspending the Ricky Vaughn Account

On or about October 5, 2016, Defendant Mackey's first Twitter account was suspended for "participating in targeted abuse," in violation of Twitter's rules. (Compl. ¶ 12.) Approximately three days later, one of Defendant Mackey's associates created a second account for Mackey to access and gave him control of the account. (Compl. ¶ 13.) The profile image on this account was the same picture that had been used in Defendant Mackey's first account. (*Id.*) Defendant Mackey's second Twitter account was added into preexisting direct message groups, of which he had been a member prior to the suspension, after Defendant Mackey confirmed via Facebook chat that this new account was in fact controlled by him. (*Id.*) Defendant Mackey's second account was suspended on November 2, 2016. (*Id.* ¶ 14.) He created a third account on November 3, 2016, which he used to participate in pre-existing direct message groups until that account's suspension on November 15, 2016. (*Id.*) The reasoning for the final suspension is not at issue, as the charged conduct had already transpired when that suspension occurred.

The Defendant argues that Twitter's reasons for suspending his accounts are either inadmissible hearsay or unduly prejudicial under Rules 401 and 403. (Def. Mot. at 12.) In contrast, the Government asserts that it has legitimate reasons—that are either non-hearsay or covered by an exclusion to the hearsay rule— for introducing certain types of statements about two of Defendant Mackey's Twitter suspensions, and that the probative nature and

5

relevancy of those statements outweigh any potential prejudicial effect. (Gov't Opp. (Dkt. 67) at 11-12.)

### 1. The Defendant's October 5, 2016 Twitter Suspension

The parties agree that the *reason* for Defendant Mackey's first suspension is irrelevant to the issue at hand, (Def. Mot. at 12; Gov't Opp. at 11), and the court will therefore not address this issue.

It is less clear, however, whether the parties are in agreement as to whether the *fact* of Defendant Mackey's first suspension is relevant and admissible. The court finds that the *fact* that the Defendant was suspended from Twitter on October 5, 2016 and did not return to Twitter until one of his associates assisted him in creating a second account approximately three days later, (Compl. ¶ 13), is relevant given the need for the jury to understand Defendant Mackey's absence from certain conversations. Statements to this effect would also not be unduly prejudicial, because the probative value of explaining the timeline of events and assisting the jury in piecing together when the Defendant was and was not present in online chatrooms substantially outweighs any potential prejudicial effect. Defendant Mackey's own statements attesting to his suspensions could be properly introduced by the Government as party-opponent statements. *See* Fed. R. Evid. 801(d)(2)(A). Statements by his co-conspirators, or even by Twitter, about the fact of Defendant Mackey's first suspension may be admitted as needed to contextualize the Defendant's own statements.[2] *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) ("Where a statement is deemed admissible as an admission by a party-opponent,

---

[2] The court intends to speak further on the topic of alleged co-conspirator statements in future rulings on motions *in limine* and at trial. Any rulings herein involving alleged co-conspirator statements will be subject to modification based on the courts later statements.

6

under Rule 801(d)(2), the surrounding statements providing essential context may also be considered."); *see also* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction . . . of any other part . . . that in fairness ought to be considered at the same time.").

### 2. The Defendant's November 2, 2016 Twitter Suspension

According to the parties, Twitter's stated reason for Defendant Mackey's second suspension was that he posted memes that were "intended to deceive." (Def. Mot. at 12; Gov't Opp. at 11.) Admission of this reason would, according to the Defendant, be extremely prejudicial given that the Defendant's intent in posting certain tweets is central to the prosecution, and knowledge of this statement could influence the jury's thoughts on this issue. (*Id.*) The Government counters that statements about the reasoning for Defendant Mackey's November 2, 2016 Twitter suspension are admissible, not for the truth of the matter asserted, but because they shed light on how Defendant Mackey and his co-conspirators understood and responded to the suspension, thereby going to their intent. (Gov't Opp. at 11-12.)

An out of-court statement offered to demonstrate its effect on a witness' state of mind is not hearsay. *See United States v. Detrick*, 865 F.2d 17, 21 (2d Cir. 1988). *See also United States v. Dupree*, 706 F.3d 131 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c) advisory committee's note.) ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. Thus, a statement to show its effect on the listener is not hearsay.") The court must address two questions to determine the admissibility of such statements: 1) "whether the non-hearsay purpose by which the evidence is sought to be justified is relevant;" and 2) "whether the probative value of this evidence

7

for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from" impermissible use of the statement. *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994). "The greater the likelihood of prejudice resulting from the jury's misuse of the statement, the greater the justification needed to introduce the "background" evidence for its non-hearsay uses." *Id.*

As to the first question, the Second Circuit has used a four-part inquiry to determine the relevance of background or state of mind evidence. First, "does the background or state of mind evidence bear upon the defendant's guilt?"; second, "[i]f so, how important is it to the jury's understanding of the issues?"; third, "[c]an the needed explanation" of state of mind be accurately conveyed by "other less prejudicial evidence or by instructions?;" and fourth, "[h]as the adversary engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice[?]" *United States v. Grecco*, 728 F. App'x 32, 35 (2d Cir. 2018) (Summary Order) (quoting *Reyes*, 18 F.3d at 70). Here, the way in which the Defendant understood Twitter to have perceived his previous tweets is sufficiently related to his *mens rea* for the charged conduct that it may bear upon his guilt and is likely at least somewhat important to the jury's understanding of the issues.

As to the second question, the court acknowledges that there is some risk of prejudice to the jury from introduction of this evidence. However, this court is also not aware of other less prejudicial evidence available to serve this purpose. *See Old Chief*, 519 U.S. at 184. The Government's preliminary witness list suggests that, for statements made by Twitter itself, a representative of the declarant may well testify to the same effect as the out-of-court statement and be available for cross-examination. *See Reyes*, 18 F.3d at 71; (Government Witness List (Dkt. 78).) And here, the court believes that a clear and explicit limiting instruction will sufficiently counteract any undue prejudice that may

8

arise from the admission of statements regarding the reasons the Defendant's second Twitter suspension. Upon a Defense request to do so, the court will thus instruct the jury to consider statements regarding the reason that the Defendant was suspended from Twitter in early November 2016 only insofar as they bear on the Defendant's state of mind. The jury will be reminded that as Twitter is a private company, neither its internal rules nor its administration of such are in any way indicative of whether the conduct at issue was legal. Thus, jurors must not accept these statements for their truth, but rather must focus on how the Defendant and his co-conspirator's reactions to them bears on his state of mind. Taking into consideration the proposed limiting instruction, the court does not believe the probative value of this evidence is outweighed by its potential for prejudice.

In sum, the Government will be permitted to introduce evidence regarding the fact that the Defendant was suspended from Twitter first in early October 2016 and again in early November 2016, each time rejoining Twitter with a new account a few days later. The Government will also be permitted to introduce statements regarding how Twitter's reasons for the suspension in early November 2016 was understood by the Defendant and his co-conspirators. The government will not be permitted to introduce evidence regarding Twitter's reasons for suspending the Defendant from Twitter in early October 2016.

### C. Conclusions of MIT Media Lab about the Ricky Vaughn Account's Popularity

The Defendant seeks to preclude the MIT Media Lab's findings about the relative popularity of the Ricky Vaughn Twitter account as inadmissible hearsay and because it is irrelevant and unduly prejudicial pursuant to Rules 401 and 403. (Def. Mot. at 12-13.) In response, the Government argues that the

9

"[D]efendant's own statement about the MIT Media Lab's findings are" admissible as relevant statements of an opposing party under Fed. R. Evid. 801(d)(2)(A). (Gov't Opp. at 12-14.)

A defendant's out-of-court statements are admissible if offered against them. Fed R. Evid. 801(d)(2)(A); *see also United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002). While statements of defendants can, under this rule, be admitted for the truth of the matter asserted, it is also true that "the mere utterance of a statement, without regard to its truth, may indicate circumstantially the state of mind . . . of the declarant and is not hearsay." *Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005). Statements made by a defendant on social media or as part of a defendant's social media profile, are, if the court finds that the profile or post in question was created by the defendant, admissible both for the truth of the matter asserted under the party opponent statement hearsay exclusion and for evidence that the statement was uttered, as non-hearsay that goes to the defendant's state of mind. *See* Fed. R. Evid. 901(a); *see, e.g., United States v. Vayner*, 769 F.3d 125, 132 (2d Cir. 2014). In addition, at least one court in this district has found that "conversations about documents that have not been produced by the government" are admissible "[b]ased on established law regarding the admissibility of an opposing party's out-of-court statements." *United States v. Watts*, 934 F. Supp. 2d 451, 466 (E.D.N.Y. 2013). And "statements of others can be admitted to provide necessary context to the defendant's statements." *United States v. Estevez*, No. 16-CR-307-2 (CM), 2017 WL 700775, at *4 (S.D.N.Y. Feb. 16, 2017). All documents offered for the truth of matters asserted must also be authenticated and admitted into evidence. Fed. R. Evid. 901(a).

As the Government states in its opposition, the Defendant repeatedly referenced his ranking on the MIT Media Lab election influencer list–in direct message groups, through his tweets,

10

and on his Twitter bio. (Gov't Opp. at 13-14.) The Defendant even linked to the relevant medium.com article on Twitter. (*Id.* at 14.) Pursuant to Rule 801(d)(2)(A), and also when admitted for non-hearsay purposes, the Defendant's own statements about his MIT Media Lab ranking and the MIT Media Lab list, are admissible. Furthermore, these statements, as they can also be used to show his own beliefs and state of mind regarding his ability to reach voters on Twitter, are highly relevant to the instant prosecution. This probative value also outweighs any potential prejudicial effects. Thus, the Defendant's statements regarding the MIT Media Lab are not barred as irrelevant or overly prejudicial.

The Government may also seek to introduce statements of others on this topic and will be free to do so if the statements are either "to provide necessary context to the [D]efendant's statements," *Estevez*, 2017 WL 700775 at *4, or for their effect on the Defendant as a listener. It similarly may attempt to introduce the MIT Media Lab's publications as evidence of the scope of the Defendant's online reach. If the Government seeks to do so, it must properly authenticate the publications and prove their relevance.

Accordingly, the court DENIES the Defendant's motion to preclude Defendant Mackey's statements regarding the MIT Media lab's rankings. The court RESERVES judgment on statements of others regarding these rankings. At trial, the court will rule on the admissibility of these statements based on the reasons for which they are introduced, and whether they have been properly authenticated. In the abundance of caution, the court recommends that if the Government intends to introduce publications by the MIT Media Lab, they arrange to call an appropriate witness to properly authenticate said publications.

### D. Identity of the Congressional Candidate Described in the Complaint

The Defendant seeks to preclude the introduction of the identity of the congressional candidate who named the Defendant as Ricky Vaughn, assuming that congressional candidate does not testify at trial. (Def. Mot. at 13.) "Whether or not Mr. Mackey puts his identity in issue at trial, the identity of the congressional candidate is irrelevant unless the government plans to call him as witness" to establish that the Defendant was the twitter user going by the moniker Ricky Vaughn. (*Id.*) The Government responds that it does not intend to seek to introduce evidence of the candidate's identity unless it calls the candidate as a witness. (Gov't Opp. at 15.) Based upon the Government's representations, the Defendant's request is DENIED without prejudice and with leave to renew if the Government seeks to introduce such evidence without calling the congressional candidate as a witness.

### E. *Brady* Material

The Defendant also makes an application for an order directing the Government to produce additional potentially exculpatory discovery materials pursuant to Fed. R. Crim. P. 5(f) and *Brady*. (Def. Mot. at 3-5.) In its opposition to the Defendant's motion, the Government states that it "is aware of, has complied with, and will continue to comply with those obligations." (Gov't Opp. at 2.) Specifically, the Defendant first expresses concern that the Government may not have sufficiently produced investigative reports of Agent Rees, as purportedly required by their obligations under Fed. R. Crim. P. 5(f) and *Brady*. (Def. Mot. at 4.) The Defendant also lists several types of purportedly exculpatory evidence for which he seeks disclosure by the Government pursuant to Fed. R. Crim. P. 5(f) and *Brady*. (*Id.* at 4-5.) In turn, the Government asserts, without conceding that these reports or

types of evidence were within their *Brady* obligations, that it disclosed any potentially responsive reports "in an abundance of caution" on February 13, 2023. (Gov't Opp. at 2.)

"The Second Circuit has held that *Brady* . . . disclosures need not be made immediately upon request by a defendant." *United States v. Rodriguez*, No. 19-CR-779 (AKH), 2020 WL 5819503 at *10 (S.D.N.Y Sept. 30, 2020) (citing *United States v. Coppa*, 267 F.3d 132, 142-46 (2d Cir. 2001)). "Rather, such material must be made available with enough time for its effective use by the defense at trial or a plea proceeding. Whether such disclosures are made in time for effective use will depend on the materiality of the evidence at-issue and the circumstances of the case. In sum, there is no *Brady* . . . violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial or at a plea proceeding." *Id.*

In accordance with that directive, "[t]he courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to *Brady* where the Government has made [] good faith representations" that have complied with disclosure requirements. *United States v. Shkreli*, No. 15-CR-637 (KAM), 2016 WL 8711065, at *2 (E.D.N.Y. Dec. 16, 2016) (collecting cases); *see also United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015); *United States v. Vaughan*, No. 10-CR-233 (CM), 2010 WL 3025648, at *2 (S.D.N.Y. July 27, 2010); *United States v. Underwood*, No. 04-CR-424 (RWS), 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005); *United States v. RW Pro. Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 179 (E.D.N.Y. 2004). "Until proven otherwise, we accept the Government's unequivocal representations that it has complied with (and will continue to comply with) its disclosure obligations under" *Brady*. *United States v. Sterling*, No. 17-CR-490 (NRB), 2019 WL 2006393, at *2 (S.D.N.Y May 6, 2019).

At this stage, this court is satisfied by the Government's unequivocal "good faith representations," *Underwood*, 2005 WL 927012, at *1, that they have complied with and will continue to comply with *Brady*. Thus, Defendant Mackey's application for an order directing immediate disclosure is DENIED.

### F. Vaccinated Jury

The Defendant's motion in opposition to the court empaneling a fully vaccinated jury was rendered moot by the court's February 1, 2023 text order stating that although jurors will be expected to wear masks when in close proximity with other jurors, in both the jury box and the jury deliberation room, the court will not seek to impanel a fully vaccinated jury. The Defendant's motion is therefore DENIED.

## IV. CONCLUSION

For the reasons discussed herein, certain of the Defendant's motions *in limine* are GRANTED, certain of the Defendant's motions *in limine* are DENIED, and judgment is RESERVED on yet others. Judgment is RESERVED on all of the Government's motions *in limine* at this time.

SO ORDERED.

Dated: Brooklyn, New York
March 10, 2023

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

14