

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EDP/WJG/FTB | *271 Cadman Plaza East* |
| F. #2018R02250 | *Brooklyn, New York 11201* |

March 13, 2023

<u>By ECF and Email</u>

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

    Re: <u>United States v. Douglass Mackey</u>
       <u>Criminal Docket No. 21-080 (NGG)</u>

Dear Judge Garaufis:

  The government respectfully submits this letter in response to the defendant's motions <u>in limine</u>, which were filed on March 11, 2023.  (ECF No. 90).  For the reasons stated below, the government respectfully submits that the Court should reserve judgment on the defendant's first motion concerning the limits of possible cross-examination of the defendant, should he elect to testify in his own defense; deny the defendant's second motion seeking to preclude evidence of the defendant's anonymity at the time of the alleged criminal conduct; and deny the defendant's third motion seeking to preclude the testimony of Special Agent Dvorsky.  In addition, the government respectfully submits that the Court should preclude the proffered testimony of the defendant's expert witness, Professor George Hawley.

I. <u>The Defendant's Political Views, Including Potentially Inflammatory Statements, Are Relevant to the Charged Conduct</u>

  As argued by the government in its previous filings, certain statements, including otherwise innocent (though potentially inflammatory) political comments and observations, made by the defendant in the run-up to the 2016 presidential election are squarely relevant to the jury's evaluation of the defendant's intent in disseminating the deceptive images that are the subject of the indictment.  <u>See</u> Feb. 24, 2023 Gov't Opp'n to Def. Motions <u>in limine</u>, ECF No. 67, at 16-17 & n. 5; Feb. 28, 2023, Gov't Reply Br., ECF No. 69, at 6-7, 7-8.  In particular, statements by the defendant expressing his political preference for then-candidate Donald Trump, his dislike for Trump's opponent, Hillary Clinton, and his observations that the turnout, or lack thereof, of certain demographic groups

was likely the key to the election are all relevant insofar as they bear on the defendant's motive for disseminating the images that he did.[1] Other statements – including the defendant's assessment of the credulity of certain racial groups that the defendant himself identified as a key voting block for his political opponents[2] – are also relevant to the defendant's motive and intent insofar as they support the inference that the defendant believed that the deceptive images were likely to be effective in actually thwarting votes that mattered to the election's outcome.

As the government has argued, other statements of the defendant expressing hostility towards certain groups and ideas may or may not be relevant depending on the defense presented at trial. As the defense acknowledged, the government has agreed, based on consultations with the defense, not to use certain tweets and direct-messages in its case-in-chief. However, certain of these statements that the government agreed to set aside may become admissible—to the extent that they are not already admissible—if the defendant were to claim – either in argument or testimony – that the deceptive images were intended only as satire, or a prank, or a mindless forwarding of the ideas of others. The government certainly agrees that offering statements of the defendant merely to show his holding disfavored political views that were wholly divorced from the alleged crime would be improper. But in a case where deeply held political belief supplies the motive for the crime, the zone of relevance for prior statements is necessarily expanded; and, if necessary, the Court can clarify the function of any evidence it admits with appropriate limiting instructions.[3]

---

[1] Notably, the defense in its March 11, 2023 filing claims that it is beyond credible dispute that "different demographic groups tend to vote for different political parties at different rates" and that political advocates "aim to increase or depress turnout of these groups for political advantage – without animus," notwithstanding the defense's earlier argument that the defendant's statement that the "key" to winning Pennsylvania was to "drive up turnout with non-college whites, and limit black turnout" was too inflammatory to be admitted under Rule 403.

[2] For example, on September 2, 2016, the defendant tweeted that "[t]he only thing standing in Trump's path is the black voters who have been made wards of the state in exchange for their votes." Although the government has agreed to redact the second half of that statement (beginning with "who have been made . . ."), along with several other similar derogatory statements in other pieces of evidence, the defendant's comments here – as elsewhere – about the importance of the black vote to his political opponents are a necessary backdrop for the crime he committed.

[3] On March 13, 2023, the defendant filed an addendum letter noting that it wishes to preclude the government from admitting, either in its case in chief or in the context of a potential cross examination of the defendant, certain statements he made about women and voting, including, but not limited to, his statements that certain women should not be permitted to vote and that the Nineteenth Amendment to the Constitution should be repealed.

II.     The Defendant's Anonymity at the Time of the Alleged Criminal Conduct is Relevant and Admissible

The defense moves to preclude evidence that the defendant was using an online moniker that rendered him anonymous at the time that he distributed the deceptive images. The defense argues that the evidence has limited probative value because the defendant set up the online moniker well before engaging in the charged conduct and has a First Amendment right to offer political commentary without identifying himself. The government's position is that the fact that the defendant was anonymous at the time he distributed the deceptive images is a fact that is relevant to the jury's assessment of his intent. The evidence is not unduly prejudicial, and the defense is free to argue to the jury that the defendant had non-criminal reasons for not using his real identity.

The government does not intend to elicit from the identified witnesses testimony concerning the defendant's political positions or beliefs. Instead, the government intends to elicit merely a factual recitation of the chain of events that led to the identification of the defendant as the user of the relevant accounts. There is every indication that the defendant intends to portray himself as a victim of political persecution, who has been unfairly singled out for pushing unpopular views. As such, the narrative of how investigators came to know the defendant's identity and the various precautions the defendant took to remain anonymous long after the alleged criminal conduct provide important context and background information regarding the origins and development of the government's case.

The defendant has offered and agreed to stipulate to that he was "Ricky Vaughn" – a fact that the government would have easily proven at trial. The defendant's decision to admit this fact, perhaps for strategic purposes, does not then empower the defendant to bar unrelated evidence that he proceeded anonymously for years, so as to leave the decidedly false impression that the defendant publicly stood behind his the distribution of the deceptive images. Accordingly, the government submits that the anticipated testimony concerning his anonymity is relevant and not unduly prejudicial.

---

The government strongly opposes these motions. The defendant is charged with fraudulently attempting to trick potential voters of presidential candidate Hillary Clinton out of casting an effective ballot. Given the nature and context of the deceptive materials distributed by the defendant, the fact that the defendant has gone on record stating that he thinks women should not be voting is surely relevant to the defendant's intent. Federal Rule of Evidence 403 bars evidence where the probative value is <u>substantially</u> outweighed by <u>unfair</u> prejudice. Such evidence may be prejudicial, but it is hardly unfairly so, given how clearly it bears on the defendant's intent in trying to disenfranchise certain voters.

3

### III. The Proffered Testimony of Special Agent Dvorsky is Admissible

As discussed with defense counsel, the government is calling Special Agent Dvorsky to testify as to when the government learned that the defendant was the user of the accounts that distributed the deceptive images and the initial investigative steps that were taken in the wake of that revelation. The chronology matters. As noted above, to the extent the defendant claims or suggests that the prosecution was somehow politically motivated, the fact that the government first identified the defendant in 2018 and began its investigation at that point is relevant in that regard. The government does not intend to elicit from Special Agent Dvorsky testimony that the defendant offered to cooperate with the FBI, but never followed through on the offer. Rather, to the extent that Agent Dvorsky will communicate the defendant's statements at all, her testimony will be limited to the defendant's telling her that he worked with Paul Nehlen.[4] Accordingly, the limited testimony the government does intend to elicit is simply not prejudicial and does not warrant preclusion.

### IV. The Expert Testimony Offered By The Defendant Should Be Precluded

As the government previously argued in its motion to preclude the testimony of Professor George Hawley (ECF No. 85), the proffered testimony is irrelevant and improper. The defendant opposed the government's motion in a filing dated March 11, 2023. (ECF No. 89). The defendant argues, essentially, that because the government is often allowed to present expert testimony to explain the intricate and unique workings of organized crime families, drug trafficking organizations, and labor groups in unrelated cases, the defendant should be permitted to admit expert testimony about the use of social media by "political conservatives" in this case. See Def. Opposition to Gov.'s Motion, ECF No. 89, at 1 (citing United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993), involving expert testimony about the particular structure, rules, and specific leaders of members of certain mafia families; and United States v. Mulder, 273 F.3d 91 (2d Cir. 2001), involving expert testimony regarding unique and specific coalitions involved in labor activities and their particular leaders). The defendant is comparing apples and oranges.

The testimony of a Federal Bureau of Investigation ("FBI") agent concerning the structure and operations of a particular mafia family, or a member of the police department concerning the leaders of a unique labor organization, is simply not comparable to Professor Hawley's offer to opine on the intent of a "substantial number" of a generic and undefined group – "political conservatives" – when they use social media. How that amorphous group of people use the internet is not relevant to this case, and the proposed testimony will not assist the jury in understanding the evidence. First, political conservatives

---

[4] To the extent that the defendant wishes to bar Special Agent Dvorsky's testimony concerning her brief conversation with the defendant because he wishes to leave the impression – and perhaps draw the inference – that the defendant would readily have defended his actions if he had ever been approached by authorities, that impression is surely improper in light of the facts.

in the United States could number in the tens if not hundreds of millions and include everyone from Alex Jones to former President George W. Bush. Professor Hawley could not possibly offer an opinion about the mental state of such a large and diverse group of people. His offer of an opinion on the intent of a "substantial number" of them is simply too vague and likely to confuse the jury.

Second, unlike the experts in the cases cited by the defendant, Professor Hawley does not intend to offer, nor would the jury need, any unique education about the hierarchy, structure, or activities of this undefined and likely irrelevant group of "political conservatives." The defendant is not alleged to be a part of any group about which the jury would need specialized knowledge to understand. Professor Hawley also does not offer any technical information about the operation of Twitter or common parlance of its users. The jury will receive evidence of the defendant's intent in the form of his own statements on Twitter and the actions and statements of his co-conspirators, and the jurors will be able to determine for themselves whether he possessed the intent necessary to find him guilty. Finally, the defendant's reference to the agent who signed the Complaint in this matter is irrelevant. That agent has not been offered as an expert. As stated in the government's motion, the defendant's expert is simply not relevant, would not assist the jury, and should be precluded from testifying at trial.

Furthermore, were Professor Hawley to be permitted to testify, it would have the ironic effect of undermining the defendant's own arguments in his motions in limine in which he seeks to preclude evidence of his client's racist, misogynist, and other inflammatory statements, views, and beliefs.[5] See Def. Motions in limine, ECF No. 90, at 1. A review of Professor Hawley's curriculum vitae reflects that a substantial number of his published works and speeches are on the topic of the "alt-right," as opposed to "political conservatives." Relatedly, the defendant has referred to himself as a member of the alt-right. To the extent that the alt-right harbors racist and other ideologies that are relevant to the allegations in this case, the government should be able to explore those topics with the defendant and Professor Hawley. Indeed, Professor Hawley has offered the perspective "that the Alt-Right is the latest iteration of the White nationalist movement, and as such remains on the radical fringe of politics, even if it briefly enjoyed more success than most of its recent ideological predecessors." Jack Thompson and George Hawley, "Does the Alt-Right Still Matter? An Examination of Alt-Right Influence Between 2016 and 2018," Nations and Nationalism (2021). The defendant appears to be injecting precisely the sort of evidence that

---

[5] For the reasons noted above and in the government's earlier submissions, the government submits that given the nature of the crime, a significant portion of the defendant's statements on politics, race and other issues are relevant toward a determination of his intent. In these instances, however, the government is seeking to prove its case by presenting evidence of the defendant's own intent, not the intent of the broad community with whom he has allied himself. The defendant's request that the defendant's own intent should be excluded, but that evidence of "political conservatives" as a whole should be admitted, borders on the non-sensical.

5

he hopes to preclude the government from admitting. Professor Hawley's testimony should be precluded, but if it is allowed, the government should be allowed to explore the topic of the alt-right's views on race, as well as Professor Hawley's opinion as to whether the defendant is a member of that group.

## Conclusion

For the reasons stated above, the government respectfully submits that the Court should reserve decision on the defendant's first motion and deny the other two.

Respectfully submitted,

BREON PEACE
United States Attorney

COREY R. AMUNDSON
Chief, Criminal Division
Public Integrity Section

By:  /s/
Erik D. Paulsen
F. Turner Buford
Assistant U.S. Attorneys
(718) 254-7000

William J. Gullotta
Trial Attorney
(202) 514-0047

cc:  Andrew J. Frisch, Esq. (by ECF and Email)