UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                    21-CR-80(RER)
UNITED STATES OF AMERICA,
                                    United States Courthouse
                                    Brooklyn, New York

         -against-                  March 14, 2023
                                    9:30 a.m.
DOUGLASS MACKEY,

         Defendant.
------------------------------x

         TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
            BEFORE THE HONORABLE RAMON E. REYES, JR.
                  UNITED STATES MAGISTRATE JUDGE
APPEARANCES

For the Government:       UNITED STATES ATTORNEY'S OFFICE
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                          BY:  ERIK DAVID PAULSEN, ESQ.
                               F. TURNER BUFORD, ESQ.
                               - and -
                          U.S. DEPARTMENT OF JUSTICE CRIMINAL
                          1331 F Street NW - Suite 300
                          Washington, DC 20004
                          BY:  WILLIAM J. GULLOTTA, ESQ.
                          Assistant United States Attorneys

For the Defendant:        LAW OFFICES OF ANDREW J. FRISCH, PLLC
                          40 Fulton Street - 17th Floor
                          New York, New York 10038
                          BY:  ANDREW JAMES FRISCH, ESQ.

Also Present:             SHIVANI PARSHAD, PARALEGAL SPECIALIST
                          ELISABETH GRANBERG, AGENT
                          EMILY TANNENBAUM, STUDENT

Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                          Phone:  718-613-2330
                          Fax:    718-804-2712
                          Email:  LindaDan226@gmail.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

PROCEEDINGS                                        177

1              (In open court; Jury present.)

2              THE COURT:  Okay.  All right, so we need to discuss

3      a couple of things.

4              As I understand you are aware, Judge Garaufis has

5      scheduled a telephone conference at 3:15 today to discuss the

6      issue of the adjournment of the trial and whatever else, as

7      far as the issues with respect to Mr. Hawley are concerned.

8      We will, of course, take a break during the jury selection to

9      let you go speak with him.

10             I have had conversations with him through his law

11     clerk, and we discussed a couple of things.

12             First, he is inclined to -- he is contemplating

13     adjourning the trial until March the 20th and setting aside

14     that week and the next week, which is not a big change from

15     the existing schedule, but it is a change, and that would

16     necessitate questioning each of the jurors who have qualified

17     already to see if it presents a problem.

18             So I intend to bring each of the jurors in who have

19     been qualified already and ask them if that would be a

20     problem, one by one.  We'll do that first, first off.

21             I suspect that with many of them it's not going to

22     be an issue, in fact, with one of them it's probably a better

23     schedule because she had travel plans this weekend and she

24     wanted to be done by 4:00 on Friday.  So it's not an issue for

25     her.  So that's that.

PROCEEDINGS                          178

1           If for whatever reason Judge Garaufis switches

2      things to -- you know, adjourns the trial for a couple of

3      weeks or whatever, I think we lose this panel completely.

4      They'll send everybody home and whenever the trial is we've

5      got to start again from scratch.

6           But you'll deal with him with that.  We have to

7      press forward and try to get as many jurors qualified as we

8      can.

9           I also asked Judge Garaufis if he was amenable to

10     lowering the number of alternates, and he said, yes.  So he

11     asked that we try to get six, but that if we got only four,

12     that would be sufficient.

13          So my goal is today to try to get to 36 qualified

14     jurors, which would be enough for four.  And if we do that,

15     then we go with that.

16          I want to avoid, if at all possible, bringing people

17     back tomorrow.  Because who knows what's going to happen with

18     the weather.  We've got folks coming in from the Island.  It's

19     going to be worse out there than it is here in the City.  I

20     want to avoid the selection tomorrow, if we can.  If that

21     means we go down to four alternates, so be it.  If we're lucky

22     enough we'll get 40 today, we'll do that, and we'll get the

23     six.

24          Two issues with respect to the panel and how to go

25     forward.  Yes, yes, I guess two issues.

1          First, there are a number of jurors who have spoken

2   to Miriam about issues, prospective jurors who have spoken to

3   Miriam about issues and some have expressed legitimate

4   concerns.  One Juror, Number 176, has prepaid travel starting

5   tomorrow.

6          I don't know what the full travel plans are, it may

7   be that, you know, be back by the 20th, who knows.  But

8   another has child care issues.  And most of them are in the

9   high numbers.

10          My thought would be to those who have expressed

11   significant issues that need to leave like by 2:00 today, just

12   dismissing them, and the others hold just on to them until

13   they come up.

14          But this is related to another thing that I'm going

15   to suggest.

16          There are a number of prospective jurors who

17   indicated no issues with anything.  They didn't answer or hold

18   their numbers up.

19          Is there any objection to bringing them in first to

20   ask the case specific and pedigree questions?  And then once

21   that list is exhausted, move on to the people who have

22   expressed or raised their number to any number of questions

23   that we asked.

24          I mean there's no magic to this list and order, it's

25   randomly generated.  So I don't know that going out of order

PROCEEDINGS                                     180

1   is prejudicial to anyone.  And it just seems that if we take

2   care of the people who have no issues first, it will move more

3   quickly and we may get to the requisite number of prospective

4   jurors we need to pick.

5           MR. PAULSEN:  Yes, Your Honor, we noticed that up on

6   the next stretch of 30 there's a large number of individuals

7   who didn't flag any issues, so we don't have an objection with

8   proceeding in that way.

9           THE COURT:  I count one, two, three, four, five,

10  six, seven, eight, nine -- nine within the next 30 minutes.

11  It's not enough but -- and then after that there are more.

12          I don't think we'll get to the full panel that way,

13  but we'll have a good idea how many more we need after that.

14          Mr. Frisch, do you have a problem with that?

15          MR. FRISCH:  I don't know yet.  I have to give it a

16  second.

17          Can I sit?

18          THE COURT:  Yes, you can sit.

19          MR. FRISCH:  So let me think about it.  Without

20  sharing what I'm thinking, let me have a moment to think about

21  it and talk to folks here before I state a position.

22          But while I'm thinking about it, I just want to flag

23  another issue for the Court.

24          This morning there's an article online, which I just

25  saw, which is titled "'Alt-Right' Disinformation King Faces".

PROCEEDINGS                    181

1          And I'm not going to get into what I think of the

2    article, whether it's true or not, we're going to have a trial

3    for that.

4          It's written by the gentleman who's in the audience

5    today and who was here yesterday and is associated, as I

6    understand it, with Mr. O'Brien, who was the subject of a

7    letter that I submitted to the Court last night.

8          I don't want Your Honor to call attention to the

9    article to the jurors or call attention to anything in the

10   media, but I would ask the Court, which Your Honor will

11   probably do any how in a subtle and, you know, matter of fact,

12   nonchalant way, to remind folks:  Don't read any media that

13   you may or may not see about this case, just to reinforce that

14   to the extent somebody might forget that important piece of

15   advice.

16         With regard to the other issue, I just want to take

17   a second, you know, without burdening the Court, if the Court

18   will permit take five minutes and talk to Mr. Mackey and

19   Ms. Tannenbaum about whether or not there's some impact on the

20   randomness of the selection, if we do one set of jurors before

21   another set of jurors, depending on who may or may not have

22   issues.

23         I recognize this is not an exact science, this

24   process.  And so I always kind of feel the best thing to do is

25   not upset the karma, so to speak.  I also understand the

PROCEEDINGS                    182

1    Court's interest and Judge Garaufis' interesting in getting

2    this done, especially with the impending possible weather

3    problems later today.  So if I could have just a few minutes

4    to talk about it quietly among ourselves and think it through,

5    I'd appreciate it.

6               THE COURT:  Okay, that's fine.

7               On the first issue you've raised, what I will do

8    with the ten to find out if they have a problem with the

9    change in dates, is I will ask them, Since yesterday, have you

10   heard, read or seen any reports about this case; if so, what

11   did you see?  So take care of them.

12              And for the whole, I guess I could ask that of each

13   of the others that come in and we can find out.

14              MR. FRISCH:  Yes, and again --

15              THE COURT:  An innocuous way of doing it.

16              MR. FRISCH:  Exactly.

17              THE COURT:  Okay, that's not a problem.

18              All right, why don't you take some time to think and

19   talk.  And I'm going to stay here.  I'm not going to go away.

20   So don't mind me.

21              MR. PAULSEN:  Your Honor, if I can flag one

22   additional thing.

23              We were surprised to see the contemplated move to

24   Monday, because it doesn't quite accommodate the defendant's

25   request.  But at the same time, we're quite aware we will have

PROCEEDINGS                                    183

1    some scheduling problems with some witnesses, should the trial

2    move in that manner.

3           Does Your Honor think it makes sense for us to try

4    to reach out to Judge Garaufis sooner than 3:15 to try to get

5    some clarity, or did you gather whether that was truly the

6    earliest?

7           THE COURT:  I think that it makes sense, certainly

8    from my selfish perspective, and the perspective of our panel,

9    if this ain't happening, let's -- let's cut it now.

10          The problem, though, is that Judge Garaufis is down

11   in Washington at meetings of the Judicial Conference, and 3:00

12   is the earliest that he's out of his meetings.

13          I mean you can -- I don't know if he is the chair of

14   whatever committee he's meeting with or a member, but I would

15   suspect it's going to be difficult to get anything before

16   then.  He's a very prompt person, but he's also very busy.

17          MR. PAULSEN:  I have to say, given the quantity of

18   orders he's issued, I'm stunned that he's not here.

19          THE COURT:  He's a good remote worker.

20          MR. PAULSEN:  While Mr. Frisch is reaching out, and

21   while we have a few minutes, I may just reach out to chambers

22   and let them know that there may be a problem, and so if there

23   is any opportunity to meet earlier, I'll just let them know

24   that would be our wish, but with the expectation that 3 may be

25   the earliest.

PROCEEDINGS                      184

1        THE COURT:  All right, why don't you do that.  And

2   just understand something.  That if it is -- if it is put off

3   two weeks, it's going to be very difficult to use this panel.

4        MR. PAULSEN:  Understood.

5        THE COURT:  And it will be very difficult to get

6   another panel for two weeks from now, unless sufficient number

7   of jurors have already been sent out notices for selections on

8   other cases and those cases are no longer alive.  So it may be

9   that you need to put it off four weeks or six weeks.

10       MR. PAULSEN:  I understand, Your Honor.  I mean, our

11  hope would be we can keep Thursday because of our specific

12  scheduling issues, but I will address that with the Court.

13       THE COURT:  Okay.

14       MR. PAULSEN:  Thank you, Your Honor.

15       MR. FRISCH:  And one last thing, just so I

16  understand.  The proposal is that we start, apart from the 10

17  or 12 who we saw yesterday, the idea is to talk first to

18  jurors who have not flagged an issue, see where we are at the

19  end of that process, and if necessary then go to those jurors

20  who have flagged an issue; is that the --

21       THE COURT:  That's the proposal, right.

22       I just thought that that would expedite things, or

23  move things along a little more quickly.

24       MR. FRISCH:  Is it okay if we step out into the hall

25  and talk about it?

PROCEEDINGS                              185

1        THE COURT:  Absolutely.  Absolutely.

2        (A recess was taken at 10:04 a.m.)

3        THE COURT:  Ready?

4        MR. FRISCH:  Thank you for allowing us to take a few

5    minutes.

6        Here are my thoughts.  As much as I appreciate the

7    Court's interest in efficiency and alacrity, I don't think

8    it's a good idea.

9        I think the distinction, based on the information we

10   have, is somewhat meaningless.  We don't know what's on the

11   minds of these jurors, who did or did not have issues or say

12   they had issues.

13       There are so many variables in what the issue could

14   be.  It could be nothing.  It could be something.  It could be

15   that people who think they do not have issues actually have

16   issues.  And there's just too many variables.

17       Even standing out in the hall, completely to think

18   it through and know what we might be getting ourselves into

19   which proceeding that in way.  I also don't know that it would

20   be that great a savings of time, because this is inherently a

21   cumbersome and time-consuming process.

22       So even if we save time, and I'm not sure that we

23   ultimately would, I'm not sure we're saving that much time to

24   make it worth the while.

25       As I said before, you know, having done this a few

PROCEEDINGS                          186

1    times before, Your Honor obviously has as well, this is not a

2    science, but I'm really reluctant to upset the karma.

3           If this is the order we have, I don't want to mess

4    with it.  And I certainly don't want to mess with it based on

5    what it seems to me, given the state of our knowledge right

6    now, kind of an arbitrary variable.  We really don't know.

7           And so my gut tells me that we should -- two things,

8    and then I'll stop.  Thank you for letting me ramble on.  That

9    we should stick with the order, number one.  And number two, I

10   think it's a black box and I think we shouldn't go there.

11          MR. PAULSEN:  Your Honor, we're fine with that.  I

12   think it's probably best for us just to get started.

13          THE COURT:  Okay, I think you're right.

14          All right, we'll stick with the order.  And we'll

15   stick with the March 20th through the 31st?  I think that's

16   what Judge Garaufis' law clerk said that --

17          MR. PAULSEN:  Your Honor, just given that the

18   government will, at 3:15, I think, ask that we keep the trial

19   as scheduled, which we just would appreciate if you can make

20   clear that it could still start on Thursday, because that's

21   something at least we're at least going to ask for.

22          THE COURT:  Okay.

23          All right why don't you bring in Ms. Marcus, juror

24   Number 1.

25          MR. PAULSEN:  And, Your Honor, for the purposes of

1    today's *voir dire*, Mr. Gullotta is going to speak for the

2    government.

3              THE COURT:  Okay.

4              (Prospective juror enters the courtroom.)

5              THE COURT:  Good morning, Ms. Marcus.

6              THE PROSPECTIVE JUROR:  Good morning.

7              THE COURT:  Yesterday you expressed some concerns

8    about scheduling in the ceremonial courtroom, and I wanted to

9    speak with you with the parties about a potential development

10   in the case.

11             Judge Garaufis is contemplating changing the trial

12   from starting on this Thursday to starting on Monday the 20th

13   and going until no later than Friday, the 31st, I believe it

14   is.  So it will be no more than a two-week trial starting on

15   the 20th.

16             If that were to happen, it would take care of the

17   concern that you raised with me about your travel plans this

18   Friday.

19             But would it present any additional problems for you

20   other than -- other than your required hours for your

21   internship and your work, the childcare work issue that you

22   had?

23             THE PROSPECTIVE JUROR:  Well, I mean it would pose

24   hardship on the child that I care for because his parents need

25   to go to work and it would be hard.  He's not even two yet and

1    they would have to find someone who is not much notice and I

2    am their -- the child's like second caregiver when the parents

3    go to work.  So it's kind of a hardship on them to not have me

4    here these days.  I'm usually with him Mondays, Tuesdays and

5    Wednesdays.

6          THE COURT:  Okay.  Other than that, no?  No issues?

7          THE PROSPECTIVE JUROR:  Well, if I also had to miss

8    like -- I know you're saying it would be like --

9          THE COURT:  Two Thursdays and Fridays, potentially.

10   More likely just one, though --

11         THE PROSPECTIVE JUROR:  Yeah, that will be --

12         THE COURT:  -- when do you your internship hours.

13         THE PROSPECTIVE JUROR:  It would be 36 hours that I

14   would be missing, and I'd have to -- I'm hoping to start grad

15   school in like the end of August, and I have to meet August

16   graduation.  And if I don't have my hours, I can't go to

17   graduation in August and I don't get my degree and can't start

18   grad school in like five days later.  I have to -- need these

19   hours, the 36 hours is a lot of hours to miss.

20         THE COURT:  I understand.  I get it.

21         Okay, thank you.

22         (Prospective juror exits the courtroom.)

23         THE COURT:  If you could bring in Mr. Guidetti,

24   Juror Number 3.

25         MR. FRISCH:  Your Honor, before the juror walks in,

1    just to remind Your Honor to ask the jurors about media.  I

2    don't know when you want to do that.  I wouldn't want to call

3    her back.

4              THE COURT:  Thank you.  I'm sorry.

5              (Prospective juror enters the courtroom.)

6              THE COURT:  Good morning Mr. Guidetti.

7              THE PROSPECTIVE JUROR:  Good morning, Your Honor.

8              THE COURT:  Since yesterday, have you read, heard,

9    seen anything about this case in the media?

10             THE PROSPECTIVE JUROR:  No.  Got home rather late,

11   ate something, and went to bed.  That was it.

12             THE COURT:  Okay.  Judge Garaufis is considering to

13   adjusting the trial schedule to start on March 20th, Monday,

14   March 20th, and go until the latest Friday, March 31st.

15             If that schedule were to be changed, I know it would

16   solve your problem with the client meeting.

17             THE PROSPECTIVE JUROR:  It would, yes.

18             THE COURT:  But would it present any other

19   scheduling issues for you?

20             THE PROSPECTIVE JUROR:  So do you think it would go

21   for the full two weeks then, 20th, the 25th and then the

22   following week?

23             THE COURT:  Probably not.

24             THE PROSPECTIVE JUROR:  Okay.

25             THE COURT:  But possibly.

1            THE PROSPECTIVE JUROR:  Okay.

2            I'd say it would be better for me schedule-wise so

3    that I could attend the meeting on Thursday and Friday.

4            But like I said, somebody else can go into my place,

5    it's not a prepaid thing.

6            THE COURT:  Hopefully we'll know some time today

7    what it will be.

8            THE PROSPECTIVE JUROR:  Okay.

9            THE COURT:  And if it changes from what I just told

10   you to something else, we'll have another conversation.

11           THE PROSPECTIVE JUROR:  All right.

12           THE COURT:  Okay, thank you.

13           THE PROSPECTIVE JUROR:  Very good.

14           (Prospective juror exits the courtroom.)

15           THE COURT:  If we could have Mr. Wan, Number 5.

16           (Prospective juror enters the courtroom.)

17           THE COURT:  Good morning, Mr. Wan.

18           THE PROSPECTIVE JUROR:  Hi.  Good morning, Your

19   Honor.

20           THE COURT:  Since yesterday, have you seen, heard,

21   or read anything about this case in the media?

22           THE PROSPECTIVE JUROR:  No.

23           THE COURT:  Judge Garaufis is considering adjusting

24   the trial schedule.  So the trial would start on Monday,

25   March 20th, and last until Friday, March 31st, at the very

1   latest.

2          If that were to happen, would that present a problem

3   for you?

4          THE PROSPECTIVE JUROR:  Not...

5          THE COURT:  No.

6          THE PROSPECTIVE JUROR:  Not exactly.

7          THE COURT:  Okay.  You would be able to attend that

8   trial then if it were on those dates?

9          THE PROSPECTIVE JUROR:  Yes.  But summertime might

10  end early?

11         THE COURT:  It most likely will end before the 31st,

12  but I cannot guarantee that, so...

13         THE PROSPECTIVE JUROR:  Time frame is about two

14  weeks?

15         THE COURT:  Yes.

16         THE PROSPECTIVE JUROR:  Okay.

17         THE COURT:  Two weeks at the worst, more likely a

18  week and a half, but it you could --

19         THE PROSPECTIVE JUROR:  Some adjustment with my

20  life.

21         THE COURT:  All right.

22         Okay.  You'll know by the end of today what it's

23  going to be, but we wanted to make sure that you didn't have,

24  you know, plane tickets to Cabo San Lucas on the 28th and you

25  wanted to keep those.  And you don't so you're good.

1           Thank you Mr. Wan.

2           THE PROSPECTIVE JUROR:  That's it?

3           THE COURT:  Yes.

4           (Prospective juror exits the courtroom.)

5           (Prospective juror enters the courtroom.)

6           THE COURT:  Good morning, Mr. Block, Number 8, Juror

7    Number 8.

8           THE PROSPECTIVE JUROR:  Good morning.

9           THE COURT:  Mr. Block, since yesterday, have you

10   seen, heard or read anything about this case in the media?

11          THE PROSPECTIVE JUROR:  I intentionally avoided all

12   media.

13          THE COURT:  Good.

14          Judge Garaufis is considering adjusting the trial

15   schedule.  So the trial would start on Monday, March 20th, and

16   last until, at the very latest, Friday, March 31st.

17          If he were to adjust the schedule to that schedule,

18   would that present a significant hardship for you?

19          THE PROSPECTIVE JUROR:  More so for my students, not

20   me.  In looking over their work and what I've been giving

21   them, half of them are doing it.  So we've learned from the

22   pandemic with a body in the classroom we don't get the success

23   rate for our students.

24          So I do believe, though, so it's a hardship on them,

25   not on myself or my conscious.

1          THE COURT:  All right.  All right.  Thank you.

2          THE PROSPECTIVE JUROR:  That's it?

3          THE COURT:  Yes.

4          (Prospective juror exits the courtroom.)

5          THE COURT:  If we could have Julia Santana, Juror

6   Number 9.

7          (Prospective juror enters the courtroom.)

8          THE COURT:  Good morning, Ms. Santana.

9          THE PROSPECTIVE JUROR:  Good morning.  How are you?

10          THE COURT:  I'm doing pretty well.

11          Since yesterday, have you seen, heard or read

12   anything about this case in the media?

13          THE PROSPECTIVE JUROR:  No, sir.

14          THE COURT:  Judge Garaufis is considering adjusting

15   the trial schedule.  So the trial would start on Monday,

16   March 20th, and last until Friday, March 31st, at the very

17   latest, more likely earlier in that week it would end.

18          If he were to adjust the trial to those dates, would

19   that present a significant hardship for you?

20          THE PROSPECTIVE JUROR:  No, I just have to arrange

21   an appointment.  That's all.

22          THE COURT:  And it's something that you can

23   rearrange.

24          THE PROSPECTIVE JUROR:  Oh, yes, I can call my

25   doctor.

1              THE COURT:  Okay.

2              All right.  Thank you.

3              (Prospective juror exits the courtroom.)

4              (Prospective juror enters the courtroom.)

5              THE COURT:  Lisset Puello, Juror Number 13.  Good

6    morning.

7              THE PROSPECTIVE JUROR:  Good morning.

8              THE COURT:  Since yesterday, have you seen, heard or

9    read anything about this case in the media?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  Judge Garaufis is considering adjusting

12   the trial schedule.  So the trial would start on Monday,

13   March 20th, and last until Friday, March 31st, at the very

14   latest, more likely, though, it would end earlier that week.

15             If he were to change the trial to those dates, would

16   that present a significant hardship for you?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  Thank you.

19             (Prospective juror exits the courtroom.)

20             (Prospective juror enters the courtroom.)

21             THE COURT:  Tishmattie Gopal, Juror Number 14.  Good

22   morning.

23             THE PROSPECTIVE JUROR:  Good morning.

24             THE COURT:  Since yesterday, have you seen, heard or

25   read anything about this case in the media?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  What did you see?

3          THE PROSPECTIVE JUROR:  I saw an article online

4    about it.  I didn't read it, though.  I opened it, but I did

5    not read it.

6          THE COURT:  Do you remember the title of the article

7    or what -- where it was from or anything like that?

8          THE PROSPECTIVE JUROR:  I can't remember.  I don't

9    think I can remember.  I think it came from a government

10   website.  I'm not too, sure.

11         THE COURT:  Okay.  I'm going to caution you, you did

12   the right thing, you didn't read it.  Continue to do that.

13         If you see anything in the media, it pops up on your

14   phone that looks like it's related to this case, don't read

15   it.  It's not evidence.  You're not to do any internet

16   research about this, just let -- if you are picked to serve on

17   this jury, the evidence comes in at trial.

18         Judge Garaufis is considering adjusting the trial

19   dates and moving the trial to begin on Monday, March 20th, and

20   conclude no later than Friday, March 31st.

21         If he were to move the trial to those dates, would

22   that present a significant hardship for you?

23         THE PROSPECTIVE JUROR:  I don't think so.  So far,

24   when I think back, I don't have any scheduled for those days.

25   Because you guys don't do anything on Saturdays and Sundays,

1    just Monday through Friday?

2              THE COURT:  Just Monday through Friday.

3              THE PROSPECTIVE JUROR:  I don't think I have any

4    plans that have to be moved.  But if something would come up,

5    I would have to let you all know.

6              THE COURT:  Yes, before you are selected.

7              So if you -- certainly if you're selected to serve

8    on this jury, you can't schedule something for that period of

9    time.  They don't accommodate breaks like that to allow one

10   juror to be absent at any given point.

11             So we're going to keep you in this pool for now.

12   I'll leave the door completely open to you, but something --

13   if you remember, oh, yeah, I have plane tickets on, you know,

14   Thursday, I guess that would be the 30th, then you got to let

15   us know about that.

16             THE PROSPECTIVE JUROR:  Okay.

17             THE COURT:  All right.  But you got to do like

18   sooner rather than later.  Don't go and get tickets, because

19   we won't be happy with that.  All right?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Any questions that the lawyers suggest

22   for further questioning about Ms. Gopal's viewing a, or at

23   least having an article come up on her feed?

24             MR. GULLOTTA:  Yes, I guess, Your Honor, just to ask

25   if there's anything about having seen that article that

1    affects her ability to be an unbiased juror?

2              THE COURT:  Okay.

3              Ms. Gopal, is there anything with you seeing that

4    article and not having read it that would affect your ability

5    to be fair and impartial in this case?

6              THE PROSPECTIVE JUROR:  I don't think so, because I

7    saw the name, so I was aware already.

8              I know you said -- when I saw that, I knew and I

9    didn't read it.  So I can't recall any information from it.

10             THE COURT:  So you can still be fair and impartial

11   in this case?

12             THE PROSPECTIVE JUROR:  Yeah, because all I saw was

13   the name, I didn't read it.

14             THE COURT:  Okay.  Thank you.

15             (Prospective juror exits the courtroom.)

16             THE COURT:  If you will ask Mr. McDermott, Number

17   15, to come in.

18             (Prospective juror enters the courtroom.)

19             THE COURT:  Charles McDermott, Juror Number 15.

20   Good morning.

21             THE PROSPECTIVE JUROR:  Good morning.  How are you?

22             THE COURT:  Good.

23             Since yesterday, have you seen, heard or read

24   anything in the media about this case?

25             THE PROSPECTIVE JUROR:  No.

1           THE COURT:  Judge Garaufis is considering adjusting

2    the trial dates in the case.  So the trial would start on

3    Monday, March 20th, and last until Friday, March 31st, at the

4    very latest, but more likely earlier that week.

5           If he were to adjust the trial accordingly, would

6    that present a significant problem for you?

7           Do you have any prepaid travel plans, anything

8    beyond what you already told us?

9           THE PROSPECTIVE JUROR:  No, with work I would just

10   have to let them know.  But they're aware.  They're already

11   aware that I'm involved in this process, but I would just have

12   to inform them of the potential duration.

13          THE COURT:  All right.  Thank you, Mr. McDermott.

14          (Prospective juror exits the courtroom.)

15          (Prospective juror enters the courtroom.)

16          THE COURT:  Valery Rodolico, Juror Number 22.  Good

17   morning.

18          THE PROSPECTIVE JUROR:  Good morning.

19          THE COURT:  Since yesterday, have you seen, heard or

20   read anything about this case in the media?

21          THE PROSPECTIVE JUROR:  No.

22          THE COURT:  Judge Garaufis is considering adjusting

23   the trial schedule.  So the trial would start on Monday,

24   March 20th, and conclude no later than Friday, March 31st.

25          If he were to adjust the trial to those dates, would

1   that present a significant hardship for you?

2             THE PROSPECTIVE JUROR:  No.

3             THE COURT:  Thank you.

4             (Prospective juror exits the courtroom.)

5             (Prospective juror enters the courtroom.)

6             THE COURT:  Good morning.  Joseph Kopitz, Juror

7   Number 23.

8             THE PROSPECTIVE JUROR:  Good morning.

9             THE COURT:  I say that for the court reporter's

10  benefit.

11            Mr. Kopitz, since yesterday, have you seen, heard,

12  or read anything in the media concerning this case?

13            THE PROSPECTIVE JUROR:  I have not.

14            THE COURT:  Judge Garaufis is considering adjusting

15  the trial schedule.  So the trial would start on Monday,

16  March 20th, and end no later than Friday, March 31st, but more

17  likely it would end earlier in that week.

18            If he were to adjust the trial to that schedule,

19  would that present a significant hardship for you?

20            THE PROSPECTIVE JUROR:  It would not.  It would be

21  easier for me.

22            Can I ask a question?

23            THE COURT:  Sure.

24            THE PROSPECTIVE JUROR:  If it started on Monday,

25  does that mean that this Thursday and Friday I would not have

1    to come in, if I was selected?

2              THE COURT:  Yes.

3              THE PROSPECTIVE JUROR:  Okay.

4              THE COURT:  I only hesitate because -- I can almost

5    guarantee, yes.  There would be nothing on Thursday and

6    Friday.  But he may not move the trial.  That's still being

7    discussed.

8              If he does move the trial, he won't be coming in

9    Thursday or Friday.  This jury selection is going to be over

10   hopefully today, if not tomorrow.

11             So, yeah, you'd have your Thursday and Friday free.

12             THE PROSPECTIVE JUROR:  Well, the reason I say that

13   is because I've got a landscape architect coming over Thursday

14   morning at 9.  And even if it's just to being introduced, my

15   partner can take care of everything else, and I can be here by

16   9:30 is okay, but I'd rather have more time.  And Friday I've

17   a dentist appointment that can be easily be moved, if I need

18   to; if I don't need to.

19             THE COURT:  Yes, I think you did tell us about the

20   landscape architecture.  Yes, architect, yesterday.

21             All right.  That will be great.

22             All right.  I'll send you back into the other room

23   and we're going to talk to some of your colleagues.

24             All right?  Thank you.

25             THE PROSPECTIVE JUROR:  Okay.

1          (Prospective juror exits the courtroom.)

2          MR. FRISCH:  May I, Judge?

3          THE COURT:  Yes.

4          MR. FRISCH:  With regard to Juror Number 1, in light

5    of the positive answer regarding media with Juror Number 14, I

6    would ask that she be called back in to be asked that

7    question.

8          And second, because of what she discussed, Juror

9    Number 1, about her schedule and what appeared her anxiety

10   about being away from her commitments, I'd challenge her for

11   cause.

12         MR. GULLOTTA:  I don't think that she's expressed a

13   sufficient amount of anxiety to be challenged for cause.  I

14   think she's concerned about it, but she said -- she didn't ask

15   to be released or anything like that, I think she's still

16   qualified juror.

17         THE COURT:  I'm going to hold that one in the

18   hopper, Mr. Frisch, and not make a ruling at this point.

19         Gennady Rebinin, Juror Number 24, held up his number

20   for Questions 12 and 19.

21         MR. PAULSEN:  Your Honor, I did not call, we

22   discussed internally, I wanted to be sure that we had witness

23   unavailability, I didn't want to speak out of turn, so we're

24   trying to figure that out.  So hopefully I'll know more and

25   I'll reach out to chambers.

1          Frankly, Your Honor, though, I was somewhat

2   persuaded by your comment that it's unlikely we would get a

3   hearing before the Court before then.

4          (Prospective juror enters the courtroom.)

5          THE COURT:  Gennady Rebinin?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Juror Number 24.  Good morning.

8          THE PROSPECTIVE JUROR:  Good morning.

9          THE COURT:  Mr. Rebinin, you indicated that you

10  served on a jury before.

11         THE PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Can you tell me when that was?  Where it

13  was?  What type of case?  Things like that?

14         THE PROSPECTIVE JUROR:  It was a 10, 12 years ago.

15  In the court in downtown Brooklyn.

16         THE COURT:  Okay.  Was it a criminal case or a civil

17  case?

18         THE PROSPECTIVE JUROR:  It was several cases.

19  Couple weeks, it was many cases.

20         THE COURT:  Were you -- was it a grand jury?

21         THE PROSPECTIVE JUROR:  I'm not sure, maybe.

22         It was several cases.  It was one by one.

23         THE COURT:  And were you asked to vote on whether to

24  issue indictments in criminal cases?

25         THE PROSPECTIVE JUROR:  We were the jury saying,

1    yes, guilty or no.  Something like this.

2               (Continued on the following page.)

JURY SELECTION                     204

1              THE COURT:  It sounds like there were several cases

2      that you heard.

3              THE PROSPECTIVE JUROR:  Yes, several cases.  The

4      deputy, attorney deputy.

5              THE COURT:  The Assistant District Attorney

6      presented cases to you?

7              THE PROSPECTIVE JUROR:  Presented cases, yes.

8              THE COURT:  That sounds like a grand jury where you

9      were asked to determine whether an indictment should be issued

10     and charges should be brought against --

11             THE PROSPECTIVE JUROR:  Yes.

12             THE COURT:  -- someone.  And is that the only time

13     you served on a jury?

14             THE PROSPECTIVE JUROR:  Only time.

15             THE COURT:  Okay.  And I take it you did issue some

16     indictments?

17             THE PROSPECTIVE JUROR:  I don't remember.  Probably.

18             THE COURT:  You also indicated that you or a family

19     member or close friend has a relationship or friendship with a

20     law enforcement officer?

21             THE PROSPECTIVE JUROR:  That's right.  Yes, my son

22     serve in New York Police Department.

23             THE COURT:  How long has he been on the NYPD?

24             THE PROSPECTIVE JUROR:  About 20 years or something

25     like that.

1          THE COURT:  Would that affect your ability to be

2    fair and impartial in this case?

3          THE PROSPECTIVE JUROR:  I don't think so.

4          THE COURT:  The trial -- since yesterday,

5    Mr. Rebinin, have you seen, heard or read anything in the

6    media about this case?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  Judge Garaufis has -- currently, the

9    trial is scheduled to start on Thursday and last until the

10   28th of March, but Judge Garaufis is considering adjusting the

11   trial schedule so that it would start on Monday the 20th and

12   last until Friday, March 31st at the very latest.

13         Assuming -- let's take the whole period.  If you

14   would have to serve on a jury from this Thursday, March 16th,

15   until March 31st, would that present a significant hardship

16   for you?

17         THE PROSPECTIVE JUROR:  No.

18         THE COURT:  Have you, a family member or close

19   friend ever been charged with a crime, convicted of a crime or

20   been the subject of a criminal investigation?

21         THE PROSPECTIVE JUROR:  No.

22         THE COURT:  Have you or any member of your family or

23   close friends ever been a witness to a crime?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Have you, a family member or close

1    friend ever been a witness in a grand jury investigation or

2    been questioned in any matter by law enforcement officers?

3            THE PROSPECTIVE JUROR:  No.

4            THE COURT:  Have you or any member of your family or

5    close friends been the victim of a crime?

6            THE PROSPECTIVE JUROR:  No.

7            THE COURT:  Have you, a family member or close

8    friend ever been a party to a legal action or dispute against

9    the United States or any of its agencies or employees?

10           THE PROSPECTIVE JUROR:  No.

11           THE COURT:  This case has received some media

12   attention.  Have you ever read, heard or seen anything in the

13   media about this case or about the defendant Douglass Mackey

14   a/k/a Ricky Vaughn?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  This case involves various individuals

17   including the defendant Douglass Mackey who had strong

18   political preferences during the 2016 Presidential election

19   campaign including individuals who supported President Donald

20   Trump and individuals who supported Presidential candidate

21   Hillary Clinton.

22           Do you have strong feelings or opinions related to

23   the 2016 Presidential Election Campaign or to the two

24   candidates during that campaign such that it would overcome

25   your duty to judge the facts in this case fairly and

JURY SELECTION                                    207

1    impartially?

2              THE PROSPECTIVE JUROR:  I don't think so, no.

3              THE COURT:  Do you have any experience with what you

4    perceived to be deliberately false or misleading information

5    on the internet or social media?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  At trial, you may hear some language

8    that you may find to be offensive.  You should not assess that

9    evidence based on whether or not it is offensive but, rather,

10   on whether that evidence tends to prove or disprove the

11   elements of the crime.

12             If you found some evidence to be offensive, would

13   you be able to set aside your feelings and objectively hear

14   and consider the evidence presented and follow the Court's

15   instructions on the law?

16             THE PROSPECTIVE JUROR:  Yes.

17             THE COURT:  Mr. Rebinin, you live in Brooklyn?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  How long?

20             THE PROSPECTIVE JUROR:  Twenty, 25 years.

21             THE COURT:  Do you own or do you rent your home?

22             THE PROSPECTIVE JUROR:  Rent, rent.

23             THE COURT:  Do you live with anyone?

24             THE PROSPECTIVE JUROR:  Yes, with my wife.

25             THE COURT:  What does your wife do for a living?

1           THE PROSPECTIVE JUROR:  She's retired.

2           THE COURT:  What did she do when she was working?

3           THE PROSPECTIVE JUROR:  She was a sonograph tech,

4   ultrasound tech.

5           THE COURT:  Thank you.  And do you have any

6   children?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  Do they live with you?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  They're grown?

11          THE PROSPECTIVE JUROR:  Grown.

12          THE COURT:  Okay.  What do your children do for a

13  living?

14          THE PROSPECTIVE JUROR:  As I said, my son is working

15  for --

16          THE COURT:  You already told us, yes.

17          THE PROSPECTIVE JUROR:  And daughter, she's studying

18  at Binghamton College.

19          THE COURT:  Are you working?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  What do you do for a living?

22          THE PROSPECTIVE JUROR:  I have a small business,

23  mechanical, auto business.

24          THE COURT:  What is the highest level of education

25  you completed?

JURY SELECTION                    209

1          THE PROSPECTIVE JUROR:  Master's degree.

2          THE COURT:  Master's degree?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  In what discipline?

5          THE PROSPECTIVE JUROR:  I completed in former Soviet

6   Union, Master's degree was in sport, sport activity.

7          THE COURT:  Supports education?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Have you ever served in the military?

10         THE PROSPECTIVE JUROR:  No.

11         THE COURT:  Where do you get your news from,

12   newspapers, radio, television, internet, social media, where?

13         THE PROSPECTIVE JUROR:  All of them.

14         THE COURT:  Are there any particular, like on TV, do

15   you watch any particular news stations?

16         THE PROSPECTIVE JUROR:  Yes.  I'm listening

17   1010 WINS on the radio, different, different stations.  On the

18   internet, I, I have no time for social media.  When I'm

19   driving, I'm listening to the radio.

20         THE COURT:  Radio?

21         THE PROSPECTIVE JUROR:  Most.

22         THE COURT:  So you don't use the internet or social

23   media much?

24         THE PROSPECTIVE JUROR:  Very, very little.

25         THE COURT:  Do you have a Facebook account or a

1   Twitter account or an Instagram or anything like that?

2              THE PROSPECTIVE JUROR:  No, neither of them.

3              THE COURT:  Have you -- are you concerned at all

4   about the reliability of information that you find on the

5   internet and social media?

6              THE PROSPECTIVE JUROR:  Concern?  Sorry, I missed

7   it.

8              THE COURT:  Yes.  Are you concerned at all about the

9   reliability of information that you may see on social media or

10  the internet?

11             THE PROSPECTIVE JUROR:  No, not much.

12             THE COURT:  Have you ever been involved in voter

13  education or voter registration or any Get Out the Vote

14  efforts?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Do you have any hobbies?

17             THE PROSPECTIVE JUROR:   Sport.

18             THE COURT:  Are there any non-news TV shows or radio

19  programs that you regularly watch or listen to?

20             THE PROSPECTIVE JUROR:  I like movies, I watch

21  movies.  Shows, no, I'm not doing much shows.

22             THE COURT:  Is there any reason why you cannot be

23  fair and impartial in this case?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  Is there anything about this case that

1   would cause you to favor one side over the other?

2             THE PROSPECTIVE JUROR:  No.

3             THE COURT:  Will you be able to set aside any

4   sympathies or biases you may have for any of the parties in

5   this case and render an impartial verdict based solely on the

6   evidence presented in court and the instructions on the law

7   that the judge gives you?

8             THE PROSPECTIVE JUROR:  Yes.

9             THE COURT:  Any additional questions for

10  Mr. Rebinin?

11            MR. GULLOTTA:  Not from the government, no.

12            MR. FRISCH:  Not from Mr. Mackey, no, Judge.

13            THE COURT:  Okay.  Mr. Rebinin, if you would, if you

14  have your juror number with you, you can take it back and

15  they're going to take you into another courtroom.  Thank you.

16            (Prospective juror leaves.)

17            THE COURT:  Our next juror, Jackie Mak, Number 25,

18  appears not to have raised his card.

19            (Prospective juror enters.)

20            THE COURT:  Thank you, Mr. Mak.

21            THE PROSPECTIVE JUROR:  Hi.

22            THE COURT:  If I'm not mistaken, Mr. Mak, you did

23  not raise your juror number yesterday in the big room.

24            THE PROSPECTIVE JUROR:  No, I did not.

25            THE COURT:  Okay.  Mr. Mak, the trial schedule is

JURY SELECTION                      212

1    somewhat unclear right now.  Judge Garaufis is considering

2    moving it to a little bit later to start perhaps on the 20th

3    of March which is Monday and conclude on the 31st of March,

4    Friday, at the very latest.  Originally, it was supposed to

5    start on the 17th, this Thursday, and go until the 28th.

6            Let's assume that whole period, the 17th of March

7    through the 31st at the very latest, if the trial were to be

8    held sometime within there, would that present a significant

9    hardship for you?

10           THE PROSPECTIVE JUROR:  Yes.

11           THE COURT:  Tell me why.

12           THE PROSPECTIVE JUROR:  It would put me away from

13   work and I need to work to pay my bills.

14           THE COURT:  What do you do for a living?

15           THE PROSPECTIVE JUROR:  I'm a freelancer so I do

16   photography but right now, I'm contracted with a company,

17   Stetson Worldwide.  I'm contracted as an archivist and I work

18   Monday to Fridays and that's mainly what helps pay my bills.

19           THE COURT:  Where do you live?  You live in

20   Brooklyn?

21           THE PROSPECTIVE JUROR:  Yes, I'm in Brooklyn.

22           THE COURT:  Do you live with anyone else?

23           THE PROSPECTIVE JUROR:  Yes, I live with my parents.

24           THE COURT:  What do they do for a living?

25           THE PROSPECTIVE JUROR:  My dad is retired and my

JURY SELECTION                                213

1    mother, she's like a home care for --

2              THE COURT:  Home health aide?

3              THE PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Anyone else live with you?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  What is the highest level of education

7    you received?

8              THE PROSPECTIVE JUROR:  I have a BFA, Bachelor of

9    Fine Arts.

10             THE COURT:  And not married, no children?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Have you ever served in the military?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Where do you get your news from,

15   newspapers, radio, television, internet, social media,

16   podcasts?

17             THE PROSPECTIVE JUROR:  Mainly social media now.

18             THE COURT:  What social media platforms do you use

19   and how frequently?

20             THE PROSPECTIVE JUROR:  I guess Instagram and

21   Twitter.

22             THE COURT:  Do you have a Facebook account?

23             THE PROSPECTIVE JUROR:  Not active.

24             THE COURT:  All right.  How often are you on

25   Instagram and Twitter?

JURY SELECTION                214

1          THE PROSPECTIVE JUROR:  I guess every day, more so

2     Instagram since that's how I show my work.

3          THE COURT:  Are you concerned about the reliability

4     of the information that you find on the internet and social

5     media?

6          THE PROSPECTIVE JUROR:  I'm sorry.  Can you repeat

7     that?

8          THE COURT:  Yes.  Are you concerned about the

9     reliability of information that you find on the internet and

10    social media?

11         THE PROSPECTIVE JUROR:  How so?  What do you mean by

12    reliability?

13         THE COURT:  Concern that it's not accurate

14    information, it's false, it's misleading, things like that.

15         THE PROSPECTIVE JUROR:  Yes, I know some of the

16    stuff is false but you just kind of have to filter is out on

17    your own.

18         THE COURT:  So it doesn't really concern you much?

19    I'm not saying that it should.  I'm just asking.

20         THE PROSPECTIVE JUROR:  I guess not.  I mean, yes,

21    it's bad but...

22         THE COURT:  But you learn how to filter it out, the

23    false stuff?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Fair enough.  Have you ever been

1    involved in voter education or voter registration or Get Out

2    the Vote efforts?

3               THE PROSPECTIVE JUROR:  Get Out the Vote efforts?

4               THE COURT:  Yes, like picking people up to take them

5    to vote, registering people to vote.  There are groups and

6    organizations that do that and they're usually volunteer,

7    those types of efforts.  No?

8               THE PROSPECTIVE JUROR:  I'm not familiar with it.

9               THE COURT:  Do you have any hobbies other than

10   photography maybe?

11              THE PROSPECTIVE JUROR:  Photography, videography,

12   basketball.

13              THE COURT:  Okay.  What television shows or radio

14   programs, if any, do you regularly watch or listen to?

15              THE PROSPECTIVE JUROR:  I like to watch Knicks

16   games.

17              THE COURT:  Did you see the game against the Lakers

18   they had recently?

19              THE PROSPECTIVE JUROR:  Yes, I did.

20              THE COURT:  Good game, right?

21              THE PROSPECTIVE JUROR:  A very close game.

22              THE COURT:  Let me ask you a couple more questions.

23              Have you, a family member or close friend ever been

24   charged with a crime, convicted of a crime or been the subject

25   of a criminal investigation?

JURY SELECTION                    216

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  Have you or any member of your family or

3     close friends ever been a witness to a crime?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Have you, a family member or close

6     friend ever been a witness in a grand jury investigation or

7     been questioned in any matter by law enforcement officers?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Have you or any member of your family or

10    close friends been the victim of a crime?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Have you, a family member or close

13    friend ever been a party to a legal action or had a dispute

14    against the United States or any of its agencies or employees?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  This case has received some degree of

17    media attention.  Have you read, heard or seen anything in the

18    media about this case or about the defendant Douglass Mackey,

19    a/k/a Ricky Vaughn?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  This case involves individuals including

22    the defendant, Douglass Mackey, who had strong political

23    preferences during the 2016 Presidential Election Campaign,

24    including individuals who supported President Donald Trump and

25    individuals who supported Presidential candidate Hillary

JURY SELECTION                                217

1    Clinton.

2             Do you have strong feelings or opinions related to

3    the 2016 Presidential Election Campaign or to the two

4    candidates during that campaign such that it would overcome

5    your duty to judge the facts in this case impartially and

6    fairly?

7             THE PROSPECTIVE JUROR:  I don't really care about

8    that campaign.  I'm sorry.

9             THE COURT:  Okay.  Do you have any experience with

10   what you perceived to be deliberately false or misleading

11   information on the internet or on social media?

12            THE PROSPECTIVE JUROR:  Sorry.  Could you repeat

13   that?

14            THE COURT:  Sure.  Do you have any experience with

15   what you perceived to be deliberately false or misleading

16   information on the internet or social media?

17            THE PROSPECTIVE JUROR:  I wouldn't say any

18   experience.

19            THE COURT:  Okay.  At trial, you may hear some

20   language that you may find to be offensive.  You shouldn't

21   assess that evidence based on whether you find it to be

22   offensive or not but, rather, on whether that evidence tends

23   to prove or disprove the elements of the crime.

24            If you found some of the evidence offensive, would

25   you be able to set aside your feelings about it and

1   objectively hear and consider the evidence and follow the

2   court's instructions on the law?

3        THE PROSPECTIVE JUROR:  If I found it offensive?

4        THE COURT:  Yes.

5        THE PROSPECTIVE JUROR:  I'm not sure.  I don't know

6   how to answer that.

7        THE COURT:  If you found particular words in the

8   evidence that were offensive words, would you be able to put

9   aside the fact that it's offensive and objectively look at it

10  and say, okay, does this evidence prove or disprove the

11  elements of this crime which is what the jurors are sworn to

12  do?  They're sworn to hear the evidence, consider it

13  objectively and see if the evidence establishes the elements

14  of the crime and overcomes the presumption of innocence.

15       THE PROSPECTIVE JUROR:  I've never been put in that

16  scenario so I'm not sure how I would answer that.  Sorry.

17       THE COURT:  That's okay.  Do you -- any followup for

18  Mr. Mak?

19       MR. GULLOTTA:  Nothing from the government.

20       MR. FRISCH:  Can I say it from here?  It's not going

21  to be controversial.

22       THE COURT:  Go ahead.

23       MR. FRISCH:  I'm just concerned about his work

24  schedule and his being away from his freelance work and his

25  ability to pay his bills.  That's the only thing I would

JURY SELECTION                           219

 1    follow up on.

 2              THE COURT:  Mr. Mak, do your parents charge you

 3    rent?

 4              THE PROSPECTIVE JUROR:  No, they do not charge me

 5    rent.

 6              THE COURT:  Do you have student loans that you're

 7    paying back?

 8              THE PROSPECTIVE JUROR:  Unfortunately, I do.

 9              THE COURT:  Okay.  This contract that you have with,

10    is it Stetson?

11              THE PROSPECTIVE JUROR:  Yes.

12              THE COURT:  The hat?

13              THE PROSPECTIVE JUROR:  Yes, the hat.

14              THE COURT:  You work Monday through Friday for them.

15    Do you go into an office or --

16              THE PROSPECTIVE JUROR:  Yes.

17              THE COURT:  And it's their office?  It's their

18    place?

19              THE PROSPECTIVE JUROR:  Yes, correct.

20              THE COURT:  And are you paid by the hour or are you

21    just paid a set salary?

22              THE PROSPECTIVE JUROR:  I'm paid by the hour.

23              THE COURT:  Okay.  All right.  If you were serving

24    on this jury, are you going to be preoccupied about thinking

25    about the money that you're losing each hour that you're

JURY SELECTION                    220

1   sitting on the jury?

2              THE PROSPECTIVE JUROR:  Pretty much.

3              THE COURT:  All right.  Okay.  I'll excuse you from

4   serving on the jury, Mr. Mak.  You can go to the Central Jury

5   Room and they'll give you further instructions.

6              THE PROSPECTIVE JUROR:  Thank you.

7              (Prospective juror excused.)

8              THE COURT:  McKinley J. Seyda, Juror Number 26, only

9   answered affirmatively to question number 12.

10             (Prospective juror enters.)

11             THE COURT:  Mr. Seyda?

12             THE PROSPECTIVE JUROR:  How are you?

13             THE COURT:  Good morning.  Did I pronounce that

14   correctly?

15             THE PROSPECTIVE JUROR:  Yes, you did.

16             THE COURT:  You indicated that you served on a jury

17   before?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Can you tell me what it was about, where

20   it was?

21             THE PROSPECTIVE JUROR:  It was in Supreme Court.  It

22   was a medical malpractice lawsuit, a case of a patient against

23   a doctor.

24             THE COURT:  Did you reach a verdict?

25             THE PROSPECTIVE JUROR:  We reached a verdict of

1    guilty.

2              THE COURT:  Okay.  You found for the plaintiff?

3              THE PROSPECTIVE JUROR:  We found for the plaintiff,

4    yes.

5              THE COURT:  Okay.  All right.

6              THE PROSPECTIVE JUROR:  It was a civil lawsuit.

7              THE COURT:  Since last night, have you, or ever,

8    have you seen, heard or read anything on the internet, social

9    media, media, more broadly, newspapers, TV, anything about

10   this case?

11             THE PROSPECTIVE JUROR:  No, I haven't honestly.

12             THE COURT:  Have you, a family member or close

13   friend ever been charged with a crime, convicted of a crime or

14   been the subject of a criminal investigation?

15             THE PROSPECTIVE JUROR:  Not at all, no.

16             THE COURT:  Have you or any member of your family or

17   close friends ever been a witness to a crime?

18             THE PROSPECTIVE JUROR:  Not that I know of, no.

19             THE COURT:  Have you, a family member or close

20   friend ever been a witness in a grand jury investigation or

21   been questioned in any manner by law enforcement officers?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Have you, a member of your family or

24   close friends ever been the victim of a crime?

25             THE PROSPECTIVE JUROR:  No.

JURY SELECTION                                222

1          THE COURT:  Have you, a member of your family or

2     close friends ever been a party to a legal action or had a

3     dispute against the United States or any of its agencies or

4     employees?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  I already asked you this but I'll ask

7     again because it's on my list of questions.  Have you ever

8     read anything or seen anything or heard anything about this

9     case before?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  Okay.  This case involves individuals

12     including the defendant, Douglass Mackey, who had strong

13     political preferences during the 2016 Presidential election

14     campaign including individuals who supported President Donald

15     Trump and individuals who supported Presidential candidate

16     Hillary Clinton.

17          Do you have strong feelings or opinions related to

18     the 2016 Presidential election campaign or to the two

19     candidates during that campaign such that it would overcome

20     your duty to judge this case fairly and impartially?

21          THE PROSPECTIVE JUROR:  I don't think so, no.

22          THE COURT:  Do you have any experience with what you

23     perceive to be deliberately false or misleading information on

24     the internet or social media?

25          THE PROSPECTIVE JUROR:  Can you, can you repeat that

JURY SELECTION                                      223

1    or rephrase it?

2              THE COURT:  A lot of people ask for that question to

3    be rephrased.  It's kind of long.

4              Do you have any experience with what you perceived

5    to be deliberately false or misleading information on the

6    internet or social media?

7              THE PROSPECTIVE JUROR:  I guess, yes, those things

8    you see on Facebook and Twitter that in my mind could be

9    deliberately misleading, but that's my mind and not whether

10   they are or not.

11             THE COURT:  Would you be able to or would your

12   experiences seeing such information affect your ability to be

13   fair and impartial in this case?

14             THE PROSPECTIVE JUROR:  I don't think so.

15             THE COURT:  At trial, you may hear some language

16   that you may find to be offensive.  You shouldn't assess that

17   based on whether you find it to be offensive or not.  You

18   should assess the evidence to find if it proves or disproves

19   the elements of the crime.

20             If you found some evidence to be offensive, would

21   you be able to set aside your feelings about it and

22   objectively hear and consider and follow the Court's

23   instructions on the law?

24             THE PROSPECTIVE JUROR:  I think so.

25             THE COURT:  You live in Bay Shore?

JURY SELECTION                                    224

```
1                 THE PROSPECTIVE JUROR:  Yes.

2                 THE COURT:  How long have you lived there?

3                 THE PROSPECTIVE JUROR:  In that house, 17 years.

4                 THE COURT:  Prior to that, did you live someplace

5      else in Bay Shore?

6                 THE PROSPECTIVE JUROR:  I lived in Commack, but I've

7      lived in the general area for 35 years.

8                 THE COURT:  Do you rent or do you own your home?

9                 THE PROSPECTIVE JUROR:  I own.

10                THE COURT:  Do you live with anyone?

11                THE PROSPECTIVE JUROR:  My wife and four kids.

12                THE COURT:  How old are your kids?

13                THE PROSPECTIVE JUROR:  Fourteen, 13, 12 and 10.

14                THE COURT:  What does your wife do for a living?

15                THE PROSPECTIVE JUROR:  Teacher's assistant.

16                THE COURT:  What do you do for a living?

17                THE PROSPECTIVE JUROR:  I'm a manager of a building

18     supply company.

19                THE COURT:  What's the highest level of education

20     you received or you completed?

21                THE PROSPECTIVE JUROR:  Well, I completed my

22     Associate's degree at Suffolk Community College.  I also have

23     two years at Stony Brook University toward a degree there.

24                THE COURT:  Have you ever served in the military?

25                THE PROSPECTIVE JUROR:  No.
```

JURY SELECTION                                    225

1          THE COURT:  Where do you get your news from,

2   newspapers, radio, television, internet, social media,

3   podcasts or other sources?

4          THE PROSPECTIVE JUROR:  Social media sometimes but I

5   try to avoid the news how it's been lately.  It's so jaded

6   lately.  There's no middle ground for news.  So local news and

7   my wife and kids.

8          THE COURT:  On those rare occasions that you do seek

9   out news from the TV, radio or anything, are there any

10  particular channels or stations that you go to?

11         THE PROSPECTIVE JUROR:  Channel 12 News is our local

12  station so mostly there so I can see the current times.

13  Sometimes Twitter because I can kind of pick and choose what

14  you want to listen to or see so you don't have to see or hear

15  everything.

16         THE COURT:  Other than Twitter, are there any social

17  media platforms that you frequent?

18         THE PROSPECTIVE JUROR:  Facebook and Instagram to

19  share stuff about my family and kids and their life so those

20  two.

21         THE COURT:  What is your frequency of social media

22  use, daily, weekly, monthly?

23         THE PROSPECTIVE JUROR:  I'd say daily.

24         THE COURT:  Are you concerned at all about the

25  reliability of information that you find on the internet and

JURY SELECTION                                      226

1    social media?

2              THE PROSPECTIVE JUROR:  Yes.  Yes.  I mean you

3    can't, I don't think you can trust everything you see on it

4    because like I say, things lean one way or the other.

5              THE COURT:  This case involves allegations of

6    distributing false and misleading information on social media

7    and the internet.  Given your feelings, your concern about the

8    reliability of information that you find on those, on those

9    sources and internet and social media, can you be fair and

10   impartial in this case?

11             THE PROSPECTIVE JUROR:  I think so.

12             THE COURT:  Have you ever been involved in voter

13   education or registration or any Get Out the Vote efforts?

14             THE PROSPECTIVE JUROR:  No.

15             THE COURT:  Do you have any hobbies?

16             THE PROSPECTIVE JUROR:  Sports, camping and hiking,

17   kayaking.

18             THE COURT:  Other than or maybe in addition to news

19   programs, are there any television shows or radio programs

20   that you regularly watch or listen to?

21             THE PROSPECTIVE JUROR:  ESPN, the basic regular

22   sports morning shows.  Other than that, "American Idol" with

23   the kids but with four kids and a job, it's tough to watch any

24   shows now.  I used to watch a lot more before the four kids.

25             THE COURT:  Is there any reason why you cannot be

JURY SELECTION                    227

1    fair and impartial in this case?

2            THE PROSPECTIVE JUROR:  I don't think so.  I think I

3    can be fair.

4            THE COURT:  Is there anything about this case that

5    would cause you to favor one side over the other?

6            THE PROSPECTIVE JUROR:  I don't see any.

7            THE COURT:  Will you be able to set aside any

8    sympathies or biases you may have for any of the parties in

9    this case and render an impartial verdict based solely on the

10   evidence presented in court and the law as given to you by

11   Judge Garaufis?

12           THE PROSPECTIVE JUROR:  I think so.

13           THE COURT:  Any followup questions for Mr. Seyda?

14           MR. GULLOTTA:  Not from the government.  Thank you.

15           MR. FRISCH:  No, Judge.  Thank you.

16           THE COURT:  All right.  Mr. Seyda, they are going to

17   escort you into another courtroom and you'll wait --

18           THE PROSPECTIVE JUROR:  Okay.

19           THE COURT:  -- at least for the lunch break because

20   we're going to go after lunch.

21           THE PROSPECTIVE JUROR:  That is quite all right.

22   It's an hour and a half to get here so I'm here now.

23           THE COURT:  Thank you.

24           THE PROSPECTIVE JUROR:  Thank you.

25           (Prospective juror exits.)

JURY SELECTION                                    228

1          MR. FRISCH:  Judge, can we take a really quick

2   bathroom break?

3          THE COURT:  Sure.  Just whenever you need it, let me

4   know.

5          MR. FRISCH:  Okay.  Thank you, Judge.

6          (Recess taken.)

7          (Continued on next page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  My count is 12 qualified.

2          (Prospective juror enters.)

3          THE COURT:  Good morning.  Alyssa Miller, Juror No.

4   27, welcome.  Ms. Miller, if I am not mistaken, you say you

5   have close friends or relatives who are lawyers, work for

6   lawyers or work for a judge or in a courthouse and you or a

7   family member, close friend worked for or applied for

8   employment in law enforcement?

9          THE PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Can you tell me about both of those

11   things, please?

12          THE PROSPECTIVE JUROR:  Yes, of course.  I was in a

13   relationship with someone in law enforcement.  I have an uncle

14   who is retired now but he was in law enforcement and about

15   three close friends in NYPD.  I have a close friend who is a

16   lawyer and I have a close friend whose father is a lawyer who

17   I see regularly.

18          THE COURT:  A couple of follow up things with that.

19   You may have learned through your relationships with these

20   people a little bit or a lot a bit about the law, maybe, and

21   that's okay, but in this case you have to apply the law that

22   the judge gives to you at the end of the case.  He'll tell you

23   what the legal standards are that apply to this case and you

24   have to apply that whether you agree with it or not, whether

25   you've learned something different from someone else.  The

1    question is, can you could that; can you take the law from

2    Judge Garaufis and apply it to the facts that you find as a

3    juror?

4              THE PROSPECTIVE JUROR:  I would find it hard not to

5    side with -- since my relationship with --

6              THE COURT:  That is the second -- that's the second

7    question.  If Judge Garaufis tells you the law is X, can you

8    apply X even if you learned from your friend that he thinks

9    the law is different?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  So you would go with what your friend

12   said and not with what Judge Garaufis said?

13             THE PROSPECTIVE JUROR:  I find it hard not to listen

14   to my friend, so -- I'm not confident that I wouldn't be able

15   to.

16             THE COURT:  The second question I think you started

17   to answer is, given your relationships with these people who

18   may be in law enforcement, can you be fair and impartial in

19   this case?

20             THE PROSPECTIVE JUROR:  I don't think so, no.

21             THE COURT:  Okay, Ms. Miller, I will excuse you.

22   You can go to the Central Jury Room and they'll give you more

23   instructions.  Thank you.

24             (Prospective juror exits.)

25             (Prospective juror enters.)

1          THE COURT:  Good morning, Julia Klepadlo, Juror No.

2     28.  Good morning.  Ms. Klepadlo, you indicated that you have

3     prepaid vacation plans or confirmed medical appointments over

4     the next two weeks?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Can you tell me about that, please?

7          THE PROSPECTIVE JUROR:  On Thursday I'm leaving to

8     go to Montana.  I can give you a copy of my tickets.

9          THE COURT:  When?

10         PROSPECTIVE JUROR:  Until this Sunday.

11         THE COURT:  So you'll be back Sun?

12         THE PROSPECTIVE JUROR:  Yeah.

13         THE COURT:  The trial -- I told you before will the

14    trial was going to start on the 17th and go to the 28th.

15    Judge Garaufis is considering adjusting the trial schedule to

16    start on the 20th and go to the 31st at the latest, but most

17    likely earlier that week.  If that were the schedule that

18    would not conflict with your travel plans.

19         THE PROSPECTIVE JUROR:  No.

20         THE COURT:  Would it -- other than the travel plans,

21    does the trial schedule present a genuine hardship for you,

22    any other reason?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Are you going skiing?

25         THE PROSPECTIVE JUROR:  Yes.

1          THE COURT:  You indicated also that you have taken,

2     you either have a background in or have taken courses in the

3     law.  Can you tell me about that?

4          THE PROSPECTIVE JUROR:  I've only taken business law

5     because I'm a business major so that's the only background

6     that I have, yeah.

7          THE COURT:  Whenever someone indicates that they

8     have some background in the law I ask a couple of questions.

9     One of them is probably not pertinent to you because your

10    background is not in the criminal law and this case is about

11    criminal law, but you may have learned something about the law

12    that -- and that's great, but you have to judge this case

13    based on the law that's given to you by Judge Garaufis and if

14    the law that he gives you conflicts with something you may

15    have learned you have to apply his law and not what you

16    learned in a class or from a friend or in your research.  Can

17    you apply the law that Judge Garaufis gives you?

18         THE PROSPECTIVE JUROR:  I think that my previous

19    knowledge might contradict with that.

20         THE COURT:  Let's say it does.  Can you put aside

21    your previous knowledge and apply the law that he gives you

22    because he is the judge, he is the one who is the arbiter of

23    what the applicable law is in this case?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Can you do that?

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  And you indicated that you have also

3     close friends and relatives who are lawyers or worked for

4     lawyers or worked for a judge or in a courthouse.  Tell me

5     about that.

6            THE PROSPECTIVE JUROR:  One of my close friends is a

7     paralegal, so.

8            THE COURT:  Do you know what firm or for whom she

9     works, or he?

10           THE PROSPECTIVE JUROR:  I don't know exactly, I just

11    know it's a smaller firm in lower Manhattan.

12           THE COURT:  Do you know what type of law they

13    practice?

14           THE PROSPECTIVE JUROR:  Injury, I'm not too sure but

15    I think it's injury.

16           THE COURT:  Okay.  Personal injury.  Other than that

17    person, anyone else?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  You indicated also that you a family

20    member, a close friend has or relationships or close

21    friendships with federal or local law enforcement officers.

22    Can you tell me a little bit about that?

23           THE PROSPECTIVE JUROR:  I have a couple of family

24    members in NYPD.

25           THE COURT:  Currently?

JURY SELECTION                                        234

1                THE PROSPECTIVE JUROR:  Yeah.

2                THE COURT:  Are you close with them.

3                THE PROSPECTIVE JUROR:  Yeah, fairly close.

4                THE COURT:  Your relationships with these family

5    members who are in the NYPD, will that affect your ability to

6    be fair and impartial in this case?

7                THE PROSPECTIVE JUROR:  I don't think so.

8                THE COURT:  Have you, a family member or close

9    friend ever been charged with a crime, convicted of a crime or

10   been the subject of a criminal investigation?

11               THE PROSPECTIVE JUROR:  No.

12               THE COURT:  Have you or any member of your family or

13   close friends ever been a witness to a crime?

14               THE PROSPECTIVE JUROR:  I don't think so.

15               THE COURT:  Have you, a family member or close

16   friend ever been a witness in a grand jury investigation or

17   been questioned in any matter by law enforcement officers.

18               THE PROSPECTIVE JUROR:  No.

19               THE COURT:  Have you or any member of your family or

20   close friends ever been the victim of a crime.

21               THE PROSPECTIVE JUROR:  Robbery.

22               THE COURT:  Yourself or someone else?

23               THE PROSPECTIVE JUROR:  A close friend.

24               THE COURT:  Will that affect your ability to be fair

25   and impartial?  This case does not involve robbery.

JURY SELECTION                                    235

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Have you a family member or close friend

3   ever been a party to a legal action against or dispute with

4   the United States Government, its agencies or employees?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Now this case has received some degree

7   of media attention.  Have you read, heard or seen anything in

8   the media about this case or about the defendant, Douglas

9   Mackey otherwise known as Ricky Vaughn?

10          THE PROSPECTIVE JUROR:  No.

11          THE COURT:  This case involves various individuals

12  including the defendant Douglas Mackey who had strong

13  political preferences during the 2016 presidential election

14  campaign including individuals who supported President Donald

15  Trump and individuals who supported presidential candidate

16  Hilary Clinton.

17          Do you have strong feelings or opinions related to

18  the 2016 presidential election campaign or to the two

19  cadidates during that campaign such that it would overcome

20  your duty to judge the facts in this case impartially and

21  fairly?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  How so?  Tell me.

24          THE PROSPECTIVE JUROR:  I have a strong political

25  belief on one side and I think that would make me biased in

1    terms of the case since it's in terms of the election of 2016.

2            THE COURT:  You wouldn't be able to put aside your

3    sympathies or biases for either side and be a fair and

4    impartial juror in this case?

5            THE PROSPECTIVE JUROR:  I could try my best but I do

6    have a bias against a current political party.

7            THE COURT:  I appreciate your honesty Ms. Klepadlo;

8    I sincerely do.  We have to be sure that jurors can do more

9    than try; that they think they can be fair and impartial and

10   if you're telling me you're not sure then I don't think this

11   is the right case for you to sit on.

12           THE PROSPECTIVE JUROR:  Okay.

13           THE COURT:  Are you more than "I can try" or or not?

14           THE PROSPECTIVE JUROR:  I just wanted to let you

15   know I have a personal bias, but it's just going to be in the

16   back of my head.

17           THE COURT:  Notwithstanding that bias if the

18   Government would present evidence that didn't convince you

19   beyond a reasonable doubt that Mr. Mackey committed this

20   crime, would you be able to render a not-guilty verdict?

21           THE PROSPECTIVE JUROR:  If --

22           THE COURT:  The Government has the burden of proof

23   to prove beyond a reasonable doubt that Mr. Mackey  committed

24   every element of the crime charged.  If you sat on this case

25   and looked at the evidence and were not convinced beyond a

1    reasonable doubt that Mr. Mackey committed each element of the

2    crime, would you have any hesitance to render a not-guilty

3    verdict?

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Okay.  Flip it over.  If the Government

6    presents evidence that satisfies you as a juror beyond a

7    reasonable doubt that Mr. Mackey committed every element of

8    the crime, would you have any hesitance to return a verdict of

9    guilty?

10             THE PROSPECTIVE JUROR:  In that case, no.

11             THE COURT:  So that's the -- that's what I'm getting

12   at with -- on and you told us you have this bias you didn't

13   tell us which way and that's good, but in what I just

14   presented to you, you seem to be able to overcome any bias

15   that you have and look at the evidence in the case and if it

16   satisfies the burden of proof, great; you find someone guilty.

17   If it doesn't satisfy the burden of proof, you find them not

18   guilty.  You are focusing on the evidence and the law and not

19   on your bias.  Can you do that?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Okay.  Now, at trial you're going to

22   hear -- you may hear some language that you may find to be

23   offensive and in assessing evidence you shouldn't assess it

24   based on whether or not it's offensive but rather on whether

25   that evidence, however offensive it may be, tends to prove or

1   disprove the elements of the crime.  If you found some

2   elements to be offensive, would you be able to set aside your

3   feelings of offensiveness and objectively judge it based on

4   that evidence and whether it satisfies the burden of proof or

5   not?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  You live in Maspeth, yes?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  How long?

10             THE PROSPECTIVE JUROR:  23 years, 22 years.

11             THE COURT:  Do you own or do you rent?

12             THE PROSPECTIVE JUROR:  I live with my parents.

13             THE COURT:  What do your parents do for a living?

14             THE PROSPECTIVE JUROR:  My dad is a construction

15   worker and my mom works at the hospital.

16             THE COURT:  Does anyone else live with you?

17             THE PROSPECTIVE JUROR:  No?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  What do you do for a living?

20             THE PROSPECTIVE JUROR:  I recently graduated and

21   started a job at a consulting firm.

22             THE COURT:  What do they consult about?

23             THE PROSPECTIVE JUROR:  Well, this --

24             THE COURT:  What do you do with them specifically?

25             THE PROSPECTIVE JUROR:  I'm currently on a project

JURY SELECTION                    239

1    with trade settlements with Bank of America.

2              THE COURT:  And what's -- what's the highest level

3    of education that you received, is it Bachelor's?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Have you ever served in the military?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Where do you get your news from;

8    newspapers, radio, television, internet, social media

9    podcasts, what?

10             THE PROSPECTIVE JUROR:  Podcasts and social media.

11             THE COURT:  Tell me about your internet and social

12   media use; what platforms do you use, how do you use them and

13   how frequently?

14             THE PROSPECTIVE JUROR:  I try to limit my social

15   media use.  I only go on TikTok half an hour a day and then I

16   listen to podcasts.  Sometimes YouTube.

17             THE COURT:  Do you have Twitter, Instagram or

18   Facebook?

19             PROSPECTIVE JUROR:  Twitter.

20             THE COURT:  Do you use that frequently?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Daily?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Are you concerned at all about the

25   reliability of information that you find on the internet and

1    social media?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Given that this case involves

4    allegations of misleading and false information on social

5    media, will you be able to fairly and impartially consider the

6    evidence?

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  Have you ever been involved in voter

9    education or voter registration or the get out and vote

10   effort?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Do you have any hobbies?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Tell me.

15             PROSPECTIVE JUROR:  Snowboarding.

16             THE COURT:  Other than snowboarding, other ways you

17   spend your leisure time?

18             THE PROSPECTIVE JUROR:  I have a lot of

19   entrepreneurship aspirations, I would say.  I like to learn

20   about the stock market.

21             THE COURT:  What television shows or radio programs

22   do you regularly watch or listen to?

23             THE PROSPECTIVE JUROR:  None.

24             THE COURT:  Is there any reason that you can't be

25   fair and impartial in this case?

1          THE PROSPECTIVE JUROR:  No.

2          THE COURT:  Is there anything in this case that

3    would cause you to favor one said or the other?

4          THE PROSPECTIVE JUROR:  No.

5          THE COURT:  Will you be able to set aside any

6    sympathies or biases you may have for any of the parties in

7    this case and render an impartial verdict based solely on the

8    evidence presented in court and the instructions as given to

9    you by Judge Garaufis?

10         THE PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Any sidebars or follow-up questions.

12         MR. GULLOTTA:  Your Honor, I apologize if I just

13   missed this but I don't know if we asked question number 36.

14   Otherwise, the Government has no followup.

15         THE COURT:  You are right, Mr. Gullotta.

16         Ms. Klepadlo, do you have any experience with what

17   you perceive to be deliberately false or misleading

18   information on the internet or on social media?

19         THE PROSPECTIVE JUROR:  Do I have experience with

20   it?  Yes.

21         THE COURT:  Would your experiences with such

22   information affect your ability to be fair and impartial in

23   this case?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Just briefly tell me about your -- the

JURY SELECTION                    242

1    experience where you perceived that there was deliberately

2    false or misleading information on the internet or social

3    media?

4                PROSPECTIVE JUROR:  I don't know specifically, but I

5    think on a daily basis I see it every day on social media.

6                THE COURT:  False and misleading information?

7                THE PROSPECTIVE JUROR:  Yes.

8                THE COURT:  But that's not going to affect your

9    ability to be fair and impartial in this case?

10               THE PROSPECTIVE JUROR:  No.

11               THE COURT:  Mr. Frisch?

12               MR. FRISCH:  May we approach.

13               THE COURT:  Okay.

14               (Continued on the next page.)

15               (Sidebar conference.)

16

17

18

19

20

21

22

23

24

25

1          (The following occurred at sidebar.)

2          MR. GULLOTTA:  I don't think you asked the media

3    question, but I may have missed it.

4          MR. FRISCH:  She said she list he evens to podcasts.

5          THE COURT:  I'll ask it.

6          MR. FRISCH:  First I would put the two things

7    together and ask her about false and misleading things on the

8    internet in connection with the 2016 election and then --

9          MR. GULLOTTA:  You're asking if she's seen it or if

10   the case contains it?

11         MR. FRISCH:  If the case contains it and then

12   depending on the answer to that question I would reask the

13   question you asked earlier that elicited the answer from her

14   about her strong bias.  Just see if she would now give a

15   different answer.

16         THE COURT:  I want to be clear on what it is you're

17   asking.  Do you want me to ask her whether she has seen false

18   and misleading --

19         MR. FRISCH:  No, this case is about false and

20   misleading information in connection with the 2016

21   presidential election.  Having heard me tell you that that's

22   what the case is about, do you think you would be able to be

23   fair and impartial in assessing that evidence.

24         THE COURT:  Okay.  And that 's it?

25         MR. FRISCH:  Depending on her answer , then let me

1  go back to the question I asked you before, can you be fair

2  and impartial based on our conversation that you would be

3  biased given that this case involves the 2016 presidential

4  election.

5           MR. GULLOTTA:  She didn't say she would be biased.

6  She said she would be fair and impartial.  The followup

7  questions brought that out of her.  She definitely reflected

8  political bias the beginning, but I think she said she can set

9  it aside.

10          MR. FRISCH:  She said she had a strong political

11 bias and the judge asked her some general questions to which

12 she gave good juror answers.  All I'm suggesting is we go back

13 and tie the two things together and see what her answer is

14 now.

15          THE COURT:  Okay.

16          (End of sidebar conference.)

17          (Continued on the next page.)

18

19

20

21

22

23

24

25

JURY SELECTION                                245

1          THE COURT:  Ms. Klepadlo, when did you become

2   eligible to vote in -- was it prior to the 2016 election or

3   after?

4          THE PROSPECTIVE JUROR:  After.

5          THE COURT:  You mentioned that you -- well, this

6   case involves allegedly false and misleading information on

7   the internet or social media concerning the 2016 presidential

8   election campaign.  Knowing that and knowing that you have

9   what you said to be strong beliefs about the -- whether -- I

10  don't know if it's the two candidates during that election

11  campaign or the election campaign itself, but knowing that you

12  have strong beliefs about that, can you put aside whatever

13  beliefs you may have and be fair and impartial in judging the

14  evidence presented in court?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And just to be clear, you have not seen

17  in the media, social media, the internet anything about this

18  case before today?

19         THE PROSPECTIVE JUROR:  Not about this specific

20  defendant, no.

21         THE COURT:  Have you seen things about allegedly

22  false and misleading information in relation to that

23  presidential campaign not involving this defendant?

24         THE PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Seeing those something themes things in

1   the media is that going to affect your ability to be fair and

2   impartial?

3            THE PROSPECTIVE JUROR:  No.

4            THE COURT:  Anything else.

5            MR. GULLOTTA:  No, Your Honor.

6            MR. FRISCH:  I have one question.  Can I ask it from

7   here?

8            THE COURT:  Sure.

9            MR. FRISCH:  Can we ask the prospective juror what

10  it is that she saw.

11           THE COURT:  Do you recall, Ms. Klepadlo, what it is

12  that you saw about allegedly false and misleading information

13  related to the 2016 presidential campaign?

14           THE PROSPECTIVE JUROR:  I saw numerous articles

15  written about voter fraud.  I don't know if they were true or

16  not, but that's what I have seen on social media.

17           THE COURT:  You are able to put that aside.  And you

18  are able to listen to the evidence objectively impartially and

19  listen to Judge Garaufis' instructions and apply the law to

20  the facts as you find them and render a verdict that is

21  impartial and unbiased?

22           THE PROSPECTIVE JUROR:  Yes.

23           THE COURT:  Thank you, Ms. Klepadlo, you can -- they

24  will take you into another courtroom and we're going to

25  continue the process with some of your colleagues.  We're

1    going to probably break at 12:30 for lunch.  Thank you.

2              (Prospective juror exits.)

3              MR. FRISCH:  Before the next juror comes in, can I

4    be heard on an application?

5              THE COURT:  Sure.

6              MR. FRISCH:  We don't know if this juror read about

7    this case.  She may not recognize the name of the defendant or

8    his Twitter avatar, but she may have read about this case.  We

9    don't know.  On the record as it stands given that facts I

10   challenge her for cause, on that fact alone I challenge her

11   for cause.  If the Court is not inclined to grant that

12   application and at the risk of calling her back, I want to

13   know more about what kind of voter fraud she may have read

14   about because she may have read about this case and the

15   concern is when she is in the jury box and she hears the

16   parties open, it may trigger a recollection where she thinks

17   oh, that's what I've read about, I read about this case and in

18   light of what she described as her strong biases that would be

19   in the back of her mind, we could have a problem.

20             MR. GULLOTTA:  I would just add, Your Honor, that

21   she was asked pretty directly if she knew anything about this

22   case or anything about the conduct alleged in the case as you

23   described it.  She said no each time.  We can call her back

24   and get more details about the voter fraud articles that she

25   saw but she didn't say anything to say that she knew any of

1    the details that are alleged in the case.  Otherwise, I think

2    she's qualified.

3          We do have to get through this process.  If we keep

4    calling people in over and over again we're never going to get

5    there, but if it's important we can bring her in and ask her

6    what she saw.

7          THE COURT:  All right.  Bring her back, please.  Of

8    course this was an election that she didn't vote in.

9          (Prospective juror enters.)

10         THE COURT:  Thank you for coming back, Ms. Klepadlo.

11   Do you recall anything in specific about the articles that you

12   saw about voter fraud in the 2016 election?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  So you couldn't tell whether -- tell me

15   whether they related to or could you tell me whether they

16   related to the presidential election or some other election in

17   2016, any specifics about what fraud was alleged or found?

18         THE PROSPECTIVE JUROR:  I'm pretty sure it was mail

19   fraud for the presidential election.

20         THE COURT:  Do you recall if any specific names were

21   mentioned about people who were engaging in that alleged mail

22   fraud or anything like that?

23         THE PROSPECTIVE JUROR:  I don't recall.

24         THE COURT:  Do you recall whether -- all right, so

25   you don't recall.  Nothing in particular beyond there were

JURY SELECTION                    249

 1  allegations of mail fraud in relation to the 2016 presidential

 2  elections?

 3            THE PROSPECTIVE JUROR:  Yeah, nothing else.

 4            THE COURT:  How long ago was it that you remember

 5  seeing these articles?

 6            THE PROSPECTIVE JUROR:  Back in 2016 and then they

 7  came up again during the next election as well.

 8            THE COURT:  And of course you didn't vote in the

 9  2016 election, did you?

10            THE PROSPECTIVE JUROR:  No.

11            THE COURT:  Did you vote in the subsequent election?

12            THE PROSPECTIVE JUROR:  No.

13            THE COURT:  Thank you, Ms. Klepadlo.

14            (Prospective juror exits.)

15            THE COURT:  Let's bring in Stephen Methot.  He

16  raised his name to 10 and 17 if I'm not mistaken.

17            (Prospective juror enters.)

18            THE COURT:  Hello, is it Methot?

19            THE PROSPECTIVE JUROR:  Yes.

20            THE COURT:  You indicated that you have prepaid

21  vacation plans or confirmed medical appointments that cannot

22  be moved over the next two weeks?

23            PROSPECTIVE JUROR:  Yes, that's right.  It's

24  basically the very last day was a Thursday the 27th.  Was that

25  the last day of that --

JURY SELECTION                    250

1           THE COURT:  Where are you going?

2           THE PROSPECTIVE JUROR:  I'll be in Florida.

3           THE COURT:  Okay.

4           THE PROSPECTIVE JUROR:  That's the day I'm supposed

5    to leave, so.

6           THE COURT:  And you're flying?

7           THE PROSPECTIVE JUROR:  Yeah, I'd rather not cancel

8    the trip personally, but if I have to.

9           THE COURT:  The 20th is a Monday so the 27th would

10   be the following Monday.  You're sure it's the 27th.

11          PROSPECTIVE JUROR:  I'm supposed to fly to Florida

12   the last day of this month.  That's my plan as it stands right

13   now.

14          THE COURT:  That would be the 30th.

15          PROSPECTIVE JUROR:  So that would be, like, two

16   weeks which is what they explained to us at the beginning,

17   right.

18          THE COURT:  What we explained in the beginning was

19   it would be the 16th through the 28th at the very latest.

20          THE PROSPECTIVE JUROR:  Well --

21          THE COURT:  Which you would be okay with that if

22   you're leaving on the 30th, but the Judge is considering

23   adjusting the trial schedule to go from the 20th to the 31st

24   at the latest although it's likely it would end before the

25   31st but we don't know for sure and it may put you in

1    jeopardy.

2            THE PROSPECTIVE JUROR:  I understand.

3            THE COURT:  So, Mr. Methot, I'm going to take you at

4    your word, you were sworn to tell the truth, the whole truth

5    and I'm sure you have tickets to go to Florida on the 30th and

6    it's too close to call so you're excused.

7            THE PROSPECTIVE JUROR:  Thank you, Your Honor.

8            (Prospective juror exits.)

9            THE COURT:  Mymy Tran, number 30 only answered yes

10   to question 9, difficulty reading or understanding English.

11   We are up to 13 qualified jurors.

12           (Prospective juror enters.)

13           THE COURT:  Good afternoon, Ms. Tran.

14           PROSPECTIVE JUROR:  Good afternoon.

15           THE COURT:  Ms. Tran, you indicated that you have

16   difficulty reading or understanding English.

17           THE PROSPECTIVE JUROR:  A little bit because when I

18   watch TV, I need to turn on the caption and to understand

19   better, yeah.

20           THE COURT:  How long have you been in the United

21   States?

22           THE PROSPECTIVE JUROR:  Over 30 years.

23           THE COURT:  What do you do for a living?

24           THE PROSPECTIVE JUROR:  I used to be -- at the

25   beginning I was a bookkeeper and I was promoted to be the

1    controller.  After 20 years, I think when I was --

2             THE COURT:  Are you still working?

3             THE PROSPECTIVE JUROR:  No.

4             THE COURT:  You retired?

5             THE PROSPECTIVE JUROR:  I retired six years ago.

6             THE COURT:  What do you do to keep busy now that

7    you've retired?

8             THE PROSPECTIVE JUROR:  Playing mahjong.

9             THE COURT:  Ms. Tran, in my experience, most jurors

10   who express some difficulty reading or understanding English.

11   It's not that they don't have sufficient skills or proficiency

12   in English, it's more so a matter of confidence and that when

13   they are selected to serve as jurors they're fine, they do

14   fine.

15            THE PROSPECTIVE JUROR:  Oh, really?  Because

16   yesterday when you were saying -- at the court, over there,

17   some I understand, some I don't.  So I'm -- I don't have

18   confidence as you said.

19            THE COURT:  I think you will be fine in this case.

20   I don't believe that there is too much technical jargon or

21   things that you would not understand.  So I'm going to ask you

22   to bear with us during this process.

23            THE PROSPECTIVE JUROR:  Sure.

24            THE COURT:  So, the trial is going to start sometime

25   between March 16th, this Thursday, and conclude no later than

1    March 31st.

2                THE PROSPECTIVE JUROR:  Oh, okay.

3                THE COURT:  Would it present a genuine hardship for

4    you to serve on the jury during that period of time?

5                THE PROSPECTIVE JUROR:  No.  Just that I'm traveling

6    from Long Island, that's it.

7                THE COURT:  You live in West Hempstead?

8                THE PROSPECTIVE JUROR:  Correct.

9                THE COURT:  Our jury pool where we get jurors from

10   stretches from Suffolk County all the way on Long Island to

11   Richmond County in Staten Island and people can be asked to go

12   from one end all the way to the other to serve on jury duty.

13   That's just the nature of it and there's nothing we can do

14   about it.  So I think it might be an inconvenience.  It's

15   never convenient to serve on jury duty, but I'm going to ask

16   you to bear with us.

17               Have you, a family member or close friend ever been

18   charged with a crime, convicted of a crime or been the subject

19   of a criminal investigation?

20               THE PROSPECTIVE JUROR:  No.

21               THE COURT:  Have you or any member of your family or

22   close friends ever been a witness to a crime?

23               THE PROSPECTIVE JUROR:  No.

24               THE COURT:  Have you, a family member or/close

25   friend ever been a witness in a grand jury investigation or

JURY SELECTION                                  254

1    been questioned in any matter by law enforcement officers?

2              THE PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you or any member of your family or

4    close friends been the victim of a crime?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Have you, a family member or a close

7    friend ever been a party of a legal action or dispute against

8    the United States or any of its agencies or employees?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  This case has received some media

11   attention.  Have you read heard or seen anything about this

12   case in the media before or about the defendant Douglas Mackey

13   otherwise known as Ricky Vaughn?

14             THE PROSPECTIVE JUROR:  To be honest, I don't turn

15   on the TV at all.

16             THE COURT:  What about the internet or social media?

17             THE PROSPECTIVE JUROR:  I just watch YouTube and all

18   of those things are Hong Kong news and everything so I don't

19   listen and watch TV that often.

20             THE COURT:  Okay.  And, so you haven't heard about

21   this case before?

22             THE PROSPECTIVE JUROR:  No, yeah.

23             THE COURT:  Okay.  This case involves various

24   individuals including the defendant Douglas Mackey who had

25   strong political preferences during the 2016 presidential

JURY SELECTION                                    255

1    selection campaign, including individuals who supported

2    President Donald Trump and individuals who supported

3    presidential candidate Hilary Clinton.  Do you have any strong

4    feelings or opinions related to the 2016 presidential election

5    campaign or the two candidates during that campaign such that

6    it would overcome your duty to be fair and impartial in this

7    case?

8              THE PROSPECTIVE JUROR:  No, not at all.  Do you have

9    any experience with what you perceived to be deliberately

10   false or misleading information on the internet or on social

11   media.

12

13             (Continued on the following page.)

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  At trial you may hear some language that

2    you may find to be offensive.

3          You should not assess that evidence based on whether

4    it's offensive or not, but based on whether that evidence

5    tends to prove or disprove the elements of the crime.

6          If you find some evidence to be offensive, would you

7    be able to put aside your feelings about it and objectively

8    hear and decide the case based on the evidence and the law

9    from Judge Garaufis?

10          THE PROSPECTIVE JUROR:  Yeah.

11          THE COURT:  You live in West Hempstead?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  How long?

14          THE PROSPECTIVE JUROR:  Over 30 years.  Yes.

15          THE COURT:  Do you own or do you rent your home?

16          THE PROSPECTIVE JUROR:  We owned it, yeah.

17          THE COURT:  And since it's "we," I take it you live

18    with someone?

19          THE PROSPECTIVE JUROR:  My husband.  Yes.

20          THE COURT:  What does your husband do for a living?

21          THE PROSPECTIVE JUROR:  He's an insurance agent,

22    life insurance and investment, yes.

23          THE COURT:  Is he still working?

24          THE PROSPECTIVE JUROR:  No, semiretired.

25          THE COURT:  Semiretired, all right.

1                 And you've already told us you were a bookkeeper and

2     then comptroller.

3                 THE PROSPECTIVE JUROR:  Yes.

4                 THE COURT:  Do you have any kids?

5                 THE PROSPECTIVE JUROR:  I have two children, yes.

6                 THE COURT:  How old are they?

7                 THE PROSPECTIVE JUROR:  One is 31, and my daughter

8     is going to be 37 soon.

9                 THE COURT:  What do they do for a living?

10                THE PROSPECTIVE JUROR:  My son he is a software

11    engineer for AT&T.

12                And my daughter, she's working for marketing.  Set

13    up conference, something like that.

14                THE COURT:  What the highest level of education that

15    you completed?

16                THE PROSPECTIVE JUROR:  Me?

17                THE COURT:  Yes.

18                THE PROSPECTIVE JUROR:  Only high school.

19                THE COURT:  Have you ever served in the military?

20                THE PROSPECTIVE JUROR:  No, never.

21                THE COURT:  Where do you get your news from?

22    Newspapers?  Radio?  TV?  Internet?  Social media?  Podcasts?

23    What?

24                THE PROSPECTIVE JUROR:  Most of the time I watch

25    YouTube.  And sometimes we watch Hong Kong news.  From

1   YouTube, we can turn to the TV and see it, yeah.

2           I seldom watch news at all.

3           THE COURT:  Do you, other than YouTube, do you use

4   the internet or social media for anything?

5           THE PROSPECTIVE JUROR:  No.

6           THE COURT:  Are you concerned at all about the

7   reliability of information that you find on the internet and

8   social media?

9           THE PROSPECTIVE JUROR:  I was told they are not real

10  most of them, so...

11          THE COURT:  And you don't watch them any way?

12          THE PROSPECTIVE JUROR:  I don't watch it, no.

13          THE COURT:  Have you ever been involved in voter

14  education or registration or any "get out the vote" efforts?

15          I'll ask that again.

16          Have you ever been involved in any voter education

17  or voter registration or "get out the vote" efforts?

18          THE PROSPECTIVE JUROR:  I don't get this.

19          You and mean I go to vote?

20          THE COURT:  No, you go to -- you help people

21  register to vote.

22          THE PROSPECTIVE JUROR:  Oh, no.

23          THE COURT:  You go and you take them from their

24  homes to the poling place so they can vote.

25          THE PROSPECTIVE JUROR:  I haven't been doing things

JURY SELECTION                                        259

1    like that.

2               THE COURT:  Do you have any hobbies?

3               THE PROSPECTIVE JUROR:  Watching TV.  Watching

4    YouTube.  And playing mahjong.  And gardening.

5               THE COURT:  Are there any television shows or radio

6    programs that you regularly watch or listen to?

7               THE PROSPECTIVE JUROR:  I watch the Chinese one.

8               They are telling stories about missing children.

9    Missing women in China.  So I'm interested in those series.

10   But they are real.  They are not drama.  They are real

11   stories.

12              THE COURT:  And you see that on -- through YouTube?

13              THE PROSPECTIVE JUROR:  Yes, almost every day.

14              THE COURT:  Is there any reason why you cannot be

15   fair and impartial in this case?

16              THE PROSPECTIVE JUROR:  At this -- I have to listen

17   to the whole thing.  I don't judge whatever.

18              THE COURT:  Okay.  And you will listen to the

19   evidence and be fair and impartial when it comes time to

20   consider it?

21              THE PROSPECTIVE JUROR:  Yes.

22              THE COURT:  Is there anything about this case that

23   would cause you to favor one side over the other?

24              THE PROSPECTIVE JUROR:  No.

25              THE COURT:  Will you be able to set aside any

1    sympathies or biases you have for any of the parties in this

2    case and render an impartial verdict -- just listen to the

3    question.

4           Will you be able to set aside any sympathies or

5    biases you may have for one side or the other and render an

6    impartial verdict based solely on the evidence that's

7    presented in court, and the law that's given to you by the

8    district judge?

9           THE PROSPECTIVE JUROR:  Yes, I will do that.

10          THE COURT:  Okay.  Any follow up for Ms. Tran?

11          MR. PAULSEN:  No, thank you, Your Honor.

12          MR. FRISCH:  No, Judge.

13          THE COURT:  All right, Ms. Tran, thank you so much.

14   They're going to take you into another courtroom and you'll

15   wait for a little bit.  Okay?

16          THE PROSPECTIVE JUROR:  Okay, sure.  Thank you.

17          (Prospective juror exits the courtroom.)

18          (Prospective juror enters the courtroom.)

19          THE COURT:  Good afternoon, Jesse Zender, Juror

20   Number 31.  How you doing?

21          THE PROSPECTIVE JUROR:  Good.  How are you?

22          THE COURT:  Pretty good.

23          I believe Mr. Zender raised his juror number for

24   Questions 12, 17, 18 and 19.

25          Mr. Zender, you indicated that you've served on a

1    jury before.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  When?  Where?  What?

4              THE PROSPECTIVE JUROR:  When I was living in the

5    City for a shoplifting case.

6              THE COURT:  And it was in Manhattan?

7              THE PROSPECTIVE JUROR:  Yes.

8              THE COURT:  And you rendered a verdict?  Don't tell

9    me what it is, but you rendered a verdict in the case?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  How long was that?

12             THE PROSPECTIVE JUROR:  Ten years ago.

13             THE COURT:  Then that's the only time you were on a

14   jury?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  You also indicated that you have close

17   friends or relatives who are lawyers, work for lawyers, work

18   for a judge in the courthouse.

19             That you have, you know, the same group of people

20   who either applied for or worked in law enforcement.  And that

21   you have close relationships with current people who are in

22   law enforcement.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Can you tell me about all of that?

25             THE PROSPECTIVE JUROR:  Sure.

1             My father in-law is an attorney.  My uncle was in

2    the ATF.  I've friends that are ex-NYPD who are now police

3    officers on Long Island.  That's really the extent of it.

4             THE COURT:  A couple of questions about that.

5             You may have learned from these folks a little bit

6    about the law, or maybe a lot of bit about the law over the

7    years.

8             But you're going to have to put aside what you

9    learned from them and take instructions on the law from

10   Judge Garaufis he is the one who decides what law applies to

11   this particular case.  You'd have to utilize that law whether

12   you disagree with it, think it's different, you got to take

13   that law.

14            Can you do that?

15            THE PROSPECTIVE JUROR:  Yeah.

16            THE COURT:  Second question.  Given your

17   relationships with folks in law enforcement, is that going to

18   affect your ability to be fair and impartial in this case?

19            THE PROSPECTIVE JUROR:  I don't know.  I mean I

20   am -- I didn't raise my handle in the courtroom, but the more

21   that I thought about it, I am somewhat familiar with the case

22   just from, you know, reading newspapers, stuff that's on

23   Twitter.  So I mean I am somewhat familiar with...

24            THE COURT:  That's a different issue, and we'll talk

25   about that.

1              But just dealing with your relationships with folks

2    in law enforcement.

3              Will that affect your ability to be fair and

4    impartial in this case?

5              Let's say it was a robbery case.

6              THE PROSPECTIVE JUROR:  I don't think so.  I don't

7    think it would.

8              THE COURT:  All right.

9              So do you recall in specific what you read or saw on

10   Twitter about this case?

11             THE PROSPECTIVE JUROR:  I just know that there was

12   an individual on Twitter posting stuff about telling different

13   groups of people to -- instead of actually going to in person

14   to vote, to text in to vote.

15             THE COURT:  Okay.  And do you recall whether that --

16   those Twitter reports referenced the defendant Douglass

17   Mackey.

18             THE PROSPECTIVE JUROR:  I believe it did.

19             THE COURT:  Well, that affect your ability to be

20   fair and impartial in this case?

21             THE PROSPECTIVE JUROR:  Possibly.

22             You know, it seems to be a bit of a political aspect

23   of this, and I don't know if -- if I will be able to cross

24   party lines.  One way or the other.  Just being honest with

25   you.  It's kind of how I feel.

1          THE COURT:  Well, if the government were to present

2    evidence to you that convinced you beyond a reasonable doubt

3    that Mr. Mackey disseminated false or misleading information

4    through the social media or the internet, such that it

5    constituted all of the elements of the crime that

6    Judge Garaufis will instruct you on, would you be able to

7    return a verdict of guilty?

8          THE PROSPECTIVE JUROR:  I mean if the evidence said

9    that, I suppose, or if it said that he was innocent, said that

10   he was innocent.

11         THE COURT:  So you would be able to disregard then

12   what you may have seen on Twitter about -- allegations about

13   Mr. Mackey doing whatever was alleged to have been done and

14   focus on what the government puts into evidence and what

15   Mr. Mackey may put into evidence, that's accepted into

16   evidence in court, and consider all of that and judge the

17   case?

18         THE PROSPECTIVE JUROR:  Kind of sitting in front of

19   you here, it's easy to say, yes.  But when it kind of comes

20   down to it, you know, it's hard to hard to tell.

21         THE COURT:  Well, Mr. Zender, we need jurors who --

22   I appreciate your candor telling me it's hard, as you sit here

23   to tell, but we need jurors who are confident that they can.

24   Heard anything about the case before.  Have any particular

25   biases they can put all of that aside and say, no, just the

PROCEEDINGS                                      265

1    facts what's proven in court, and I will be able to render a

2    fair and impartial verdict.

3            And if you're telling me you're not sure that you

4    can do that, then you're probably not the right juror for this

5    case.

6            THE PROSPECTIVE JUROR:  Unfortunately.  Trying on

7    honest with you.

8            THE COURT:  You were sworn, so I hope you're being

9    honest with me.

10           THE PROSPECTIVE JUROR:  I am.

11           THE COURT:  And it is what is it is.  Look, if

12   you're not sure, you're not sure.  That's fine.

13           Unless there's an objection from either of the

14   parties, I'm going to excuse Mr. Zender.

15           MR. GULLOTTA:  No objection, Your Honor.

16           MR. FRISCH:  No objection.

17           THE COURT:  Okay, you're excused, Mr. Zender.

18           THE PROSPECTIVE JUROR:  Thank you.

19           (Prospective juror exits the courtroom.)

20           THE COURT:  Okay, I think we should break for lunch

21   and come back at 1:30.  And prepare to be doing this tomorrow.

22   Because we're going to have, I don't know how long it's going

23   to take.

24           (Discussion was had off the record.)

25           THE COURT:  The case specific questions, can we --

PROCEEDINGS                                266

1          MR. GULLOTTA:  To the big group and just maybe go

2    through some of this with the large group, and we can identify

3    whatever the issues are, or perhaps it sounds like I didn't

4    land on what you were thinking about and maybe there's a way

5    to condense the questions a little bit and get through it

6    faster.

7          We're open to all suggestions, and if we can spend

8    the lunch break and work.

9          THE COURT:  Well, we actually can use the ceremonial

10   courtroom now because I think naturalizations is over.

11         I had a thought of condensing the prior criminal

12   involvement.  Those questions, are they all necessary, number

13   one.

14         And I'm amenable, if there's no objection from

15   Mr. Mackey to -- we can go -- we can take the, what is the

16   four case-specific questions, bring everyone into the

17   ceremonial courtroom, ask them those, see who holds up their

18   notes, and then when we go through the individual questions,

19   those who have issues we can follow up on.  We can do it that

20   way.

21         I just thought originally I didn't want people in

22   the case-specific questions to see someone else put up their

23   sign and said oh, yeah, me, too.

24         MR. GULLOTTA:  Or feel reluctant to put up a sign.

25   I get it.  I'm trying to think it through here on the fly and

PROCEEDINGS                                     267

1    I don't know if do we need that many?  We can bring them back

2    in here one by one.

3              THE COURT:  To some degree there may be a few people

4    who don't put -- who don't put up their notes so we don't have

5    to ask them that question privately.

6              MR. FRISCH:  I think there's, as much as we all want

7    to move more quickly, I think that -- I think we should just

8    stick with what we're doing.  Because I think we move back and

9    forth then it's just going to -- it's not going to expedite

10   things.

11             THE COURT:  All right, why don't we break for lunch.

12             There's a juror, Juror Number 101, would like to be

13   excused -- actually she asked to leave early today because her

14   son has his first confession and she wants to go with him.

15             He's not getting into the booth with him, but I mean

16   that's -- it's a big thing.  And I'm inclined to let her go.

17   We can just let her go for today and have her come back

18   tomorrow, although we may not get to 101 today.

19             THE COURTROOM DEPUTY:  She wanted to leave whatever

20   time we go for lunch.

21             THE COURT:  Any objection to letting her go?

22             MR. FRISCH:  No, Your Honor.

23             MR. PAULSEN:  No, Your Honor.

24             THE COURT:  Okay, you can tell her she's excused.

25   And the others I want to keep.

PROCEEDINGS                          268

1          What about Juror Number 167 who has two kids, the

2    young kids, how old are the kids?

3          THE COURTROOM DEPUTY:  I didn't find out how old,

4    but they're minors, they are not school age.  They're just

5    child care issues and she asked yesterday and today for

6    someone to watch them.

7          THE COURT:  Any objection to letting Juror

8    Number 167 go?  She has child care issues with two minor

9    children.

10          MR. FRISCH:  No.

11          MR. GULLOTTA:  No, Your Honor.

12          THE COURT:  She's excused.  Tell her privately.

13          And then the hardship.  No.  Self-employed.  No.

14    The others are just going to have to bear with us.

15          So we'll break for lunch.  Consider, though -- I

16    mean it might save a few minutes per juror if we condense or

17    dispose of some of the prior criminal involvement questions.

18    If we save like a couple minutes per person that adds up, but

19    I still think we're doing this tomorrow.

20          MR. GULLOTTA:  I think so.

21          MR. PAULSEN:  Your Honor, at this rate I think it's

22    coming close to 5 p.m. tomorrow.  We're not making that much

23    progress still.

24          THE COURT:  So it is, what it is.

25          (A recess was taken at 12:36 p.m.)

1              A F T E R N O O N   S E S S I O N

2              (Time noted:  1:35 p.m.)

3              (In open court; Prospective Jury not present.)

4              THE COURT:  Let me speak with the parties.

5              So we have received a request from Juror Number 28,

6    Ms. Klepadlo, to be excused just for today at 2 p.m. to attend

7    to a work commitment.  Just today and she'll return tomorrow

8    for the remainder of the selection.

9              In light of the, I wouldn't say fact but likelihood,

10   high likelihood that we will not be done today with getting

11   our 36 or 40 prospective jurors, I have no problem with

12   letting her go, to attend to her work commitment with an

13   admonition before she leaves that, you know, with the usual in

14   particular, you know, stay off of the interwebs.

15             Does anybody have a problem with that?

16             MR. BUFORD:  No objection from the government, Your

17   Honor.

18             MR. FRISCH:  No.

19             THE COURT:  Can you ask Ms. Klepadlo to come in?

20             (Prospective juror enters the courtroom.)

21             THE COURT:  Good afternoon, Ms. Klepadlo.

22             THE PROSPECTIVE JUROR:  Good afternoon.

23             THE COURT:  We received your request, and I've got a

24   couple of questions.

25             Number one, did you discuss it with any of the other

1    prospective jurors?

2              THE PROSPECTIVE JUROR:  Me leaving?

3              THE COURT:  Yes.

4              THE PROSPECTIVE JUROR:  No.

5              THE COURT:  Okay.  And you will attend to this work

6    commitment today, you need to leave at 2, because it's been

7    moved up, from what I hear, and you will return tomorrow for

8    the remainder of the jury selection, yes?

9              THE PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Okay.  We will allow that to happen.

11             I want to warn you against speaking with anyone

12   about this case, prospective jurors, anyone.  Your family, you

13   can tell them you've been in a selection process.  Leave it as

14   innocuous as that.

15             And certainly don't do any internet research,

16   anything like that.  Don't look on media, social media, what

17   have you for anything about this case.

18             If you see something, if it comes up on your feed or

19   whatever they call it, don't open it.  Don't read it.  Ignore

20   it.

21             If you see the parties, the attorneys, tomorrow in

22   the hall or anything, don't talk to them.  They will not talk

23   to you.  They are not allowed to have any interaction with you

24   outside the courtroom.

25             And if anyone approaches you about this case, you

1    need to bring that to our attention immediately.  Okay?

2              THE PROSPECTIVE JUROR:  All right.

3              THE COURT:  All right, so we'll see you tomorrow

4    then.

5              THE PROSPECTIVE JUROR:  Thank you.

6              What time tomorrow?

7              THE COURT:  Come at we started -- 9:30.  Be in the

8    central jury room no later than 9:30.

9              THE PROSPECTIVE JUROR:  Okay, thank you.

10             THE COURT:  Actually, let's make it 9:15.

11             THE PROSPECTIVE JUROR:  All right.

12             THE COURT:  I want to try to get a little earlier

13   start tomorrow.

14             THE PROSPECTIVE JUROR:  Thank you.

15             THE COURT:  Thank you.

16             (Prospective juror exits the courtroom.)

17             THE COURT:  Are we ready to begin?

18             MR. BUFORD:  Your Honor, we have one suggestion for

19   everyone's consideration for the sake of efficiency.

20             Would the Court potentially consider possibly

21   bringing in maybe ten jurors into this room, having one juror

22   sort of get the full set of questions, and then that way

23   everyone else in the room will have heard all of the

24   questions, and that might enable the Court to do a briefer

25   version of the questions with any subsequent jurors to see if

1    they have any positive answers to them.

2             And obviously if anyone has a reason that they had

3    would like to speak privately about, for example, experience

4    with the criminal justice system we could have a sidebar with

5    that particular juror.

6             THE COURT:  What do you think, Mr. Frisch?

7             MR. FRISCH:  I oppose it.  I think this process is

8    slow, but it's effective.  And it's just the nature of the

9    beast.

10            THE COURT:  I tend to agree with Mr. Frisch.  And

11   the whole purpose for asking -- for isolating prospective

12   jurors and asking them these questions is so that their

13   responses don't infect anyone else.  Infect is probably too

14   strong of a word.  Influence anyone else.  And to cut down on

15   the need for repeated sidebars, because that has its own time

16   element involved.

17            So we're going to continue the way we're going and

18   I'm go to try to.

19            MR. PAULSEN:  Understood, Your Honor.

20            THE COURT:  So James Mooney is Juror Number 32, he's

21   next.  And he only responded affirmatively to Questions 12 and

22   19, if I'm not mistaken.

23            (Prospective juror enters the courtroom.)

24            THE COURT:  Good afternoon, Mr. Mooney.

25            THE PROSPECTIVE JUROR:  Good afternoon.

1          THE COURT:  You responded that you have had prior

2    jury or grand jury service; is that correct?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Can you tell me about that?  Where it

5    was?  When?  What kind of case?

6          THE PROSPECTIVE JUROR:  It was maybe 20 years ago.

7    I've been serving since in the 1970s.

8          We got on a criminal case.

9          THE COURT:  Do you remember what type of criminal

10   case?

11         THE PROSPECTIVE JUROR:  It had to do with theft

12   inside an auto.

13         THE COURT:  And that was in here in Brooklyn?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  And did you reach a verdict in that

16   case?

17         THE PROSPECTIVE JUROR:  Yes, we did.

18         THE COURT:  Is there anything about that experience

19   that would affect your ability to be fair and impartial in

20   this case?

21         THE PROSPECTIVE JUROR:  I don't think so.

22         THE COURT:  You also indicated that you have a

23   relationship -- you or a family member or close friend has a

24   relationship or friendship with people in federal or local law

25   enforcement.

1            THE PROSPECTIVE JUROR:  Yes.

2            THE COURT:  Can you tell me about that?

3            THE PROSPECTIVE JUROR:  In my family, I have a lot

4    of police officers and stuff.  Past and present.  I just

5    attended the wake and the funeral of a 22-year-old officer

6    that committed suicide last week, relationship there with

7    that.

8            And just throughout my family police, people that,

9    you know, we talk about the job a lot and everything.  Just I

10   have that presence around me.

11           THE COURT:  Okay.  You are not an officer or a

12   retired officer?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Okay.  Well, two things about that.

15           During your relationships with these folks you may

16   have heard or learned something about what the law is.  And

17   that's all well and good, but in this case, were you to sit as

18   a juror, the law comes from Judge Garaufis.  He's the one who

19   will tell what you the law is that applies to this case.

20           And you have to apply that law, whether you agree

21   with it or not, whether you think it's what it should be or it

22   should be something else, or whether you learned something

23   about the law from one of your friends or family members.

24   Judge Garaufis is -- the law that he gives you controls.

25           If you were selected, could you do that?  Apply his

1   law?

2            THE PROSPECTIVE JUROR:  I would have to, yes.

3            THE COURT:  Okay.

4            The second thing about that issue.

5            Is there anything about your relationships with

6   these folks in law enforcement that would affect your ability

7   to be fair and impartial in this case?

8            THE PROSPECTIVE JUROR:  No.

9            THE COURT:  So the trial was -- still is, currently

10  set to begin on Thursday the 17th -- the 16th, I'm sorry,

11  Thursday the 16th, and last until the 28th, at the very

12  latest.  We'll know later today whether the judge is going to

13  move the trial a little bit so it starts on the 20th and ends

14  on the 31st.

15           Either way, if it starts on the 16th and ends on the

16  28th, it starts on the 20th ends on the 31st, would it be a

17  genuine hardship for you to serve on the jury?

18           THE PROSPECTIVE JUROR:  No.

19           THE COURT:  Have you, a family member or close

20  friend ever been charged with a crime, convicted of a crime or

21  been the subject of a criminal investigation?

22           THE PROSPECTIVE JUROR:  Yes.

23           THE COURT:  Can you tell me about that?

24           THE PROSPECTIVE JUROR:  I had a nephew that got in

25  some trouble with gambling.  And the FBI picked him up and he

1   got in trouble with it.  Him and a couple of friends or

2   buddies.

3               THE COURT:  They were running a card game or

4   something like that?

5               THE PROSPECTIVE JUROR:  More or less like booking.

6               THE COURT:  Okay.  Did that result in him being

7   convicted of something?

8               THE PROSPECTIVE JUROR:  No.

9               THE COURT:  Is there anything about that that would

10  affect your ability to be -- that experience that he had and,

11  you know, you had through him that would affect your ability

12  to be fair and impartial?

13              THE PROSPECTIVE JUROR:  No.

14              THE COURT:  Anything else?

15              THE PROSPECTIVE JUROR:  That's about it.

16              THE COURT:  You or any family member or close

17  friends ever been a witness to a crime?

18              THE PROSPECTIVE JUROR:  I haven't been a witness to

19  a crime, no.

20              THE COURT:  You don't know of any other members of

21  family that may have been?

22              THE PROSPECTIVE JUROR:  Not offhand, I can't think

23  of any.

24              THE COURT:  Have you, a family member or close

25  friend ever been a witness in a grand jury investigation or

1    been questioned in any matter by law enforcement, other than

2    what you told us about your nephew?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  What about victim of a crime?

5              THE PROSPECTIVE JUROR:  I haven't been, no.

6              THE COURT:  Any family members that you know of?

7              THE PROSPECTIVE JUROR:  Not that I know of.

8              THE COURT:  Anyone in your family, yourself, close

9    friends ever been a party to a lawsuit or legal action against

10   the United States or its agencies or employees?

11             THE PROSPECTIVE JUROR:  No.

12             THE COURT:  Now this case has received some media

13   attention.

14             Have you heard, read, seen anything in the media

15   about this case before or about the defendant Douglass Mackey,

16   otherwise known as Ricky Vaughn?

17             THE PROSPECTIVE JUROR:  No, I haven't.

18             THE COURT:  This case involves individuals,

19   including the defendant Douglass Mackey who had strong

20   political preferences during the 2016 presidential election

21   campaign, including individuals who supported President Donald

22   Trump and individuals who supported presidential candidate

23   Hillary Clinton.

24             Do you have strong feelings or opinions about the

25   2016 presidential election campaign or those two candidates,

1    such up that it would overcome your duty to judge the facts in

2    this case fairly and impartially?

3            THE PROSPECTIVE JUROR:  No.

4            THE COURT:  Do you have any experience with what you

5    perceive to be deliberately false or misleading information on

6    the internet or social media?

7            THE PROSPECTIVE JUROR:  No.

8            THE COURT:  At trial, you may hear some language

9    that you find to be offensive.  You shouldn't assess that

10   evidence based on whether you find it to be offensive or not,

11   but rather on whether that evidence tends to prove or disprove

12   the elements of the crime.

13           If you found some of the evidence offensive, would

14   you be able to put aside your feelings about it and view it

15   objectively and consider it in light of the instructions on

16   the law that you get from Judge Garaufis?

17           THE PROSPECTIVE JUROR:  Yes.

18           THE COURT:  You live in Brooklyn, sir?

19           THE PROSPECTIVE JUROR:  Yes.

20           THE COURT:  How long?

21           THE PROSPECTIVE JUROR:  All my life.

22           THE COURT:  Do you own or do you rent?

23           THE PROSPECTIVE JUROR:  I own.

24           THE COURT:  You live with anyone?

25           THE PROSPECTIVE JUROR:  No.

1           THE COURT:  Have a spouse, children?

2           THE PROSPECTIVE JUROR:  I'm divorced.  One child.

3           THE COURT:  How old?

4           THE PROSPECTIVE JUROR:  Thirty-five.

5           THE COURT:  What does your child do for a living?

6           THE PROSPECTIVE JUROR:  She's a psychologist in the

7    schools.

8           THE COURT:  And what about your ex-spouse, what did

9    she do for a living?

10          THE PROSPECTIVE JUROR:  She works for a bank.

11   JPMorgan.

12          THE COURT:  What do you do for a living?

13          THE PROSPECTIVE JUROR:  I'm a retired custodian

14   engineer for the board of -- the Department of Education.

15          THE COURT:  I still call it the Board of Education.

16          What the highest level of education you've

17   completed?

18          THE PROSPECTIVE JUROR:  High school.

19          THE COURT:  Have you ever served in the military?

20          THE PROSPECTIVE JUROR:  No.

21          THE COURT:  How did you get your news?  From

22   newspapers?  Radio?  Television?  Internet?  Social media?

23   Podcasts?

24          THE PROSPECTIVE JUROR:  Yeah, the basic, newspapers,

25   television.

1          THE COURT:  What newspapers do you reads?

2          THE PROSPECTIVE JUROR:  The Post.  The News.

3          THE COURT:  And what about TV?  Are there any

4    particular networks that you get your news from?

5          THE PROSPECTIVE JUROR:  Channel 7, and basically

6    some of the cable.  Just regular news.

7          THE COURT:  CNN, MSNBC?

8          THE PROSPECTIVE JUROR:  Yeah, all of that.

9          THE COURT:  Are you -- do you use the internet or

10   social media?

11         THE PROSPECTIVE JUROR:  No, not really.

12         THE COURT:  Do you have a Facebook or a Twitter or

13   Instagram account?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Are you concerned at all about the

16   reliability of the information that you find on the internet

17   or social media?

18         THE PROSPECTIVE JUROR:  No, I don't.

19         THE COURT:  Because you don't use it, right?

20         Have you ever been involved in voter education or

21   registration efforts or other -- any other "get out the vote"

22   efforts?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  Do you have any hobbies?

25         THE PROSPECTIVE JUROR:  Excuse me?

1          THE COURT:  Any hobbies?  How do you spend your

2     leisure time?

3          THE PROSPECTIVE JUROR:  Just watching sports,

4     basically.

5          THE COURT:  Are there any television shows or radio

6     programs that you regularly watch or listen to?

7          THE PROSPECTIVE JUROR:  Basically I watch sports and

8     news.

9          THE COURT:  On the channels that you mentioned

10    already?

11         THE PROSPECTIVE JUROR:  Uh-huh.

12         THE COURT:  Is there any reason why you can't be a

13    fair and impartial jury in this case?

14         THE PROSPECTIVE JUROR:  I don't think so.

15         THE COURT:  Is there anything about this case that

16    would you cause to you favor one side over the other?

17         THE PROSPECTIVE JUROR:  I don't think so.

18         THE COURT:  Will you able to set aside any

19    sympathies or biases you may have for any of the parties in

20    this case and render a fair and impartial verdict based solely

21    on the evidence presented in court, and the law as given to

22    you by Judge Garaufis?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Do we have any questions for Mr. Mooney?

25         MR. FRISCH:  No, Your Honor.

1          MR. GULLOTTA:  Not at this time.

2          THE COURT:  No, okay.

3          Mr. Mooney, thank you.  You're going to be taken

4    into the next courtroom.  Wait for a little while.  And we'll

5    to follow up later today.

6          THE PROSPECTIVE JUROR:  Okay.  Thank you.

7          (Prospective juror exits the courtroom.)

8          THE COURT:  Gentlemen and ladies, we have been

9    approached by Ms. Marcus for dispensation from the remainder

10   of today's proceedings, number one.  There's a 2:30 work

11   commitment.  I mean, she told us about her work, childcare,

12   she'd like to leave for the day and come back.

13         The problem with this is that, you know, we get the

14   next one, then the next one, then -- if they all come back

15   tomorrow, fine; if they don't, we're going to have problems.

16         Any objection to allowing Ms. Marcus to go take care

17   of this and come back tomorrow?

18         MR. GULLOTTA:  No, Your Honor.

19         MR. FRISCH:  Do you want to tell her?

20         THE COURT:  Yes.

21         (Prospective juror enters the courtroom.)

22         THE COURT:  Good afternoon, Ms. Marcus.

23         THE PROSPECTIVE JUROR:  Good afternoon.

24         THE COURT:  I understand that you've requested to

25   leave today to take care of a work commitment at 2:30?

1          THE PROSPECTIVE JUROR:  Yes, take care of a child.

2          THE COURT:  And you'd come back tomorrow for

3   remainder of the proceedings?

4          THE PROSPECTIVE JUROR:  My question is if I am like

5   since I'm going to be chosen to take care of a child, so I

6   mean I need to --

7          THE COURT:  If you are among -- it doesn't mean that

8   you were chosen, it means that you are among the pool of

9   either 36 or 40, people from which the jury will be chosen.

10  And that will be done after we get a group that withstands

11  challenges of 36 and maybe 40 people, and then the lawyers

12  will exercise their peremptory challenges and strike people,

13  and that will leave us with 12 jurors and either four or six

14  alternates.

15         And as I said yesterday, the odds are if you're

16  among the 40, there are better odds that you'll be stricken

17  then -- that you'll be chosen, because the number of people

18  chosen are less than the number of people stricken.  So your

19  odds are that.  But, again, there's no guarantee.

20         So I'm prepared to let you go take care of your

21  charge today, come back tomorrow.  That's not a problem.

22  We're going to start tomorrow at 9:15.  So you need to be in

23  the central jury room at 9:15.

24         Don't do any internet research on this case.  If you

25  see anything in your news feed or whatever it is they call it,

1    your Twitter pops up, don't read it.  Ignore it.

2              Don't talk to anybody about the case.  Just tell

3    them I'm not process of being selected to serve on a jury in a

4    criminal case.

5              If you see the lawyers outside or the parties

6    tomorrow in the hall, they're not going to talk to you.

7    Please don't talk to them.  Communications can only happen in

8    court.

9              And if anyone approaches you about this case, please

10   let us know tomorrow, okay?  All right.

11             THE PROSPECTIVE JUROR:  Can I just ask a question?

12   If I didn't leave early today would I still come back tomorrow

13   any way?

14             THE COURT:  Most likely, yes, because we're not

15   going -- it's taking slower than we had hoped, and we're not

16   going to get through the requisite number of people in the

17   pool from which we have to pick the jury until tomorrow.

18             So there will be proceedings tomorrow.

19             THE PROSPECTIVE JUROR:  So thank you for allowing me

20   the time to leave.  I appreciate it.  Thank you.

21             THE COURT:  Thanks.

22             (Prospective juror exits the courtroom.)

23             THE COURT:  Okay, Ms. Harriet Liu is Number 33.  She

24   has indicated affirmative responses to 18 and 19.

25             (Prospective juror enters the courtroom.)

1          THE COURT:  Good afternoon, Ms. Liu.

2          You indicated that you have either yourself, a

3     family member or close friends work for, been a member of

4     applied for employment with law enforcement.

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  And that you have -- or family members

7     or close friends have relationships with such folks.

8          Can you tell me about that, please?

9          THE PROSPECTIVE JUROR:  My first cousin is actually

10    a cop.  I mean, kind of like an acquaintance cousin because I

11    don't really talk to him, but it's more so my brothers who

12    speak to him.  But he's been a cop for quite a few years.

13         THE COURT:  NYPD?

14         THE PROSPECTIVE JUROR:  Yeah.

15         THE COURT:  Okay.  Has he ever spoken with you about

16    the law or, you know, what the law is on any given subject?

17         THE PROSPECTIVE JUROR:  No, we don't talk.

18         THE COURT:  All right.  And is that the -- that's

19    the only person in response to both Questions 18 and 19?

20         THE PROSPECTIVE JUROR:  My best friend's sister's a

21    cop.  But we don't talk about anything related to law.

22         THE COURT:  All right.  So in this case you're going

23    to get the law from Judge Garaufis.  He's going to instruct

24    you on what the elements of the crime, what the government has

25    to prove and all of that.  And you have to apply that, whether

1    you agree with it or not, whether you think it should be

2    different, whether you've learned something else from someone

3    else.

4                Can you do that?  Can you take the law from

5    Judge Garaufis and apply it to this case?

6                THE PROSPECTIVE JUROR:  Yes, I guess.

7                THE COURT:  Your duty bound, because you're going to

8    take an oath to do that, and the judge is the one who

9    instructs the jury on the law.

10                But you can't go do private research and talk to

11   other people and say what is the law on this?  You're not

12   permitted to do that.  It's the judge who tells you what it

13   is.

14                You can take his law, yes?

15                THE PROSPECTIVE JUROR:  Yes.

16                THE COURT:  Okay.  Your relationship or, I use that

17   term loosely, with your first cousin who's a cop and your best

18   friend's sister who's a cop, will that affect your ability to

19   be fair and impartial in this case?

20                THE PROSPECTIVE JUROR:  No.

21                THE COURT:  We're going to have the trial in this

22   case.  It may start on Thursday, the 16th.  Possibility it may

23   be pushed to the Monday the 20th.  And at the very latest it

24   would end on March 31st, depending upon the beginning of the

25   trial.  More likely it will be earlier than that.

1        Is there any reason why, if you were serving on this

2   jury for that period of time, it would cause you a genuine

3   hardship?

4        THE PROSPECTIVE JUROR:  No.

5        THE COURT:  Have you, a family member or close

6   friend ever been charged with a crime, convicted of a crime or

7   been the subject of a criminal investigation?

8        THE PROSPECTIVE JUROR:  I had a friend from high

9   school and she recently -- she was actually a cop.  I haven't

10  spoken to her since high school.  And my husband at one point

11  was still talking to her.  And I don't know if anybody knows,

12  but her name's Yvonne Wu (phonetic).  She was actually NYPD

13  cop also, but I think she got -- I'm pretty sure she got

14  charged because she shot her ex-girlfriend's lover or

15  something.

16       THE COURT:  Okay.

17       THE PROSPECTIVE JUROR:  But I haven't spoken to any

18  of them in quite a long time.

19       THE COURT:  All right.  Will that in any way affect

20  your ability to be fair and impartial in this case?

21       THE PROSPECTIVE JUROR:  No.

22       THE COURT:  Have you or any family member or close

23  friend ever been a witness to a crime?

24       THE PROSPECTIVE JUROR:  Not that I know of, no.

25       THE COURT:  Have you, a family member or close

1    friend ever been a witness in a grand jury investigation or

2    been questioned in any matter by a law enforcement officer?

3                THE PROSPECTIVE JUROR:  Not that I know of.

4                THE COURT:  Have you or any family member or close

5    friend been the victim of a crime?

6                THE PROSPECTIVE JUROR:  No.

7                THE COURT:  Have you or any family member or close

8    friend ever been a party to a legal action or dispute against

9    the United States or any of or its agencies or employees?

10               THE PROSPECTIVE JUROR:  No.

11               THE COURT:  Now, as I said before this case received

12   some media attention.

13               Have you read heard or seen anything in the media

14   about this case or about the defendant Douglass Mackey a/k/a

15   Ricky Vaughn?

16               THE PROSPECTIVE JUROR:  No, not until yesterday when

17   I Googled at home.

18               THE COURT:  You Googled at home?

19               THE PROSPECTIVE JUROR:  Yeah.

20               THE COURT:  What did you see?

21               THE PROSPECTIVE JUROR:  Because I'm not into

22   politics or anything so I was just like who is this person I

23   never heard of.  And it was just, I think, 4,300 people I

24   think he tried to scam them through text rather than voting in

25   person.  That's all I can remember.

1           THE COURT:  Did you make up any -- come to any

2    conclusions based on what you -- let me ask you this:  How

3    many reports or articles or whatever did you see?

4           THE PROSPECTIVE JUROR:  Just one.

5           THE COURT:  Other than this one Google search did

6    you do any other internet search?

7           THE PROSPECTIVE JUROR:  No.

8           THE COURT:  Did you come to any conclusions on your

9    own based on that research whether there was validity to the

10   allegations or there was not validity or anything?

11          THE PROSPECTIVE JUROR:  No, nothing.

12          THE COURT:  Do you remember the name of the article

13   that you saw or what -- or on what -- who wrote it or --

14          THE PROSPECTIVE JUROR:  I can't remember the article

15   was, but it was something about prosecuted, prosecution or

16   something like that.  That was it.

17          THE COURT:  Having seen that article can you ignore

18   it, put it out of your mind and if you were selected to serve

19   on this jury, reach a decision based solely on the evidence

20   presented in court and the law as given to you by Judge

21   Garaufis?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  No, this case involves various

24   individuals including Mr. Mackey who had strong political

25   preferences during the 2016 presidential campaign including

1    individuals who supported President Donald Trump and

2    individuals who supported presidential candidate Hilary

3    Clinton.

4              Do you have strong feelings or opinions related to

5    the 2016 presidential election campaign or to the two

6    candidates in that campaign such that it would overcome your

7    duty to judge the facts in this case impartially and fairly?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Did you vote in the 2016 election?

10             THE PROSPECTIVE JUROR:  I don't think I'm

11   registered.

12             THE COURT:  You were not old enough to vote then?

13             THE PROSPECTIVE JUROR:  I was.  I just chose not to

14   vote.  I'm not in politics, nothing.  I'm not interested in

15   any of those.

16             THE COURT:  Okay.  Do you have any experience with

17   what you perceive to be deliberately false or misleading

18   information on the internet or social media?

19             THE PROSPECTIVE JUROR:  Rephrase that question

20   again.

21             THE COURT:  Do you have any experience with what you

22   perceived to be deliberately false or misleading information

23   on the internet or on social media?

24             THE PROSPECTIVE JUROR:  No.

25             THE COURT:  At trial you may hear some language that

1    you may find to be offensive.  You should not assess the

2    evidence you hear based on whether you find it to be offensive

3    or not but rather whether the evidence tends to prove or

4    disapprove the elements of the crime.

5            If you found some evidence to be offensive, would

6    you be able to set aside your feelings about it and

7    objectively consider it and follow the court's instructions on

8    the law?

9            PROSPECTIVE JUROR:  Yeah.

10           THE COURT:  You live in Staten Island, Ms. Liu?

11           THE PROSPECTIVE JUROR:  Yes.

12           THE COURT:  And how long have you lived there?

13           THE PROSPECTIVE JUROR:  I mean, before COVID I was

14   on and off in Brooklyn with my parents and then I moved back

15   to Staten Island because I was, like -- my husband wanted to

16   see the dog also.  So officially in September I moved back

17   there and stayed there permanently since then.

18           THE COURT:  But aside from Staten Island you've

19   lived in Brooklyn?

20           THE PROSPECTIVE JUROR:  All of my life, yeah, in

21   Brooklyn.

22           THE COURT:  Your place in Staten Island, do you own

23   or rent?

24           THE PROSPECTIVE JUROR:  Owned.  My husband owns it.

25           THE COURT:  What does he do?

1            THE PROSPECTIVE JUROR:  He just started MTA as a

2    train operator.

3            THE COURT:  Do you have any children?

4            THE PROSPECTIVE JUROR:  No.

5            THE COURT:  And what do you do for a living?

6            THE PROSPECTIVE JUROR:  I recently left the Gap that

7    closed down in the mall in Staten Island and now I work at the

8    DMV.

9            THE COURT:  What is the highest level of education

10   you completed?

11           THE PROSPECTIVE JUROR:  My Bachelor's degree.

12           THE COURT:  Have you ever served in the military?

13           THE PROSPECTIVE JUROR:  No.

14           THE COURT:  Where do you get your news from,

15   newspapers, radio, TV, internet, social media, podcasts or

16   what?

17           THE PROSPECTIVE JUROR:  Mostly on the internet but I

18   don't really pay attention to the news.  If I am on some

19   browsing website and I'm interested I'll read it, but that's

20   pretty much it.

21           THE COURT:  Do you use -- other than what you've

22   already explained do you use the internet and social media?

23           THE PROSPECTIVE JUROR:  I do but I only use it to

24   browse a website YouTube, Google, TikTok.

25           THE COURT:  Do you have a Facebook or Twitter or

JURY SELECTION                 293

1    Instagram account?

2              THE PROSPECTIVE JUROR:  I used to have all three.  I

3    had to have a Twitter account because I needed it for college.

4    I had had Facebook, but I deactivated it awhile ago because it

5    takes up your life.

6              THE COURT:  And do you still use your -- you said

7    for college you got a Twitter account?

8              THE PROSPECTIVE JUROR:  Yeah, I had it for when I

9    was in college.

10             THE COURT:  I think the mic went out.  Hold on.

11             Go ahead.

12             THE PROSPECTIVE JUROR:  I had Twitter.  Probably the

13   last time I used it was 2014 or 2015.  The professor said we

14   needed to use a Twitter account just to, like, re- Tweet

15   articles regarding our major and also was part of, like, our

16   syllabus productivity percentage or something.  I forgot.  I

17   graduated a long time ago.

18             THE COURT:  But you no longer use it?

19             THE PROSPECTIVE JUROR:  No because I don't know how

20   to use it.

21             THE COURT:  Have you ever been concerned about the

22   reliability of information that you find on the internet or

23   social media?

24             THE PROSPECTIVE JUROR:  Sometimes yes and no.

25             THE COURT:  Will that affect your ability to be fair

1     and impartial in this case?

2                 THE PROSPECTIVE JUROR:  I would say no.

3                 THE COURT:  Have you ever been involved in voter

4     education or registration efforts or any get out the vote

5     efforts?

6                 THE PROSPECTIVE JUROR:  No.

7                 THE COURT:  Do you have any hobbies?

8                 THE PROSPECTIVE JUROR:  Stay at home with my dog and

9     watch TV.

10                THE COURT:  Well, what do you watch on TV regularly

11    or what do you listen to regularly on the radio, particular

12    shows or programs?

13                THE PROSPECTIVE JUROR:  I mainly just watch Korean

14    and Chinese stuff.  I don't listen to the radio.  My husband

15    does in the car.

16                THE COURT:  Okay.  The -- the Korean or Chinese

17    shows, are they news shows or are they just comedies and

18    dramas and non-news?

19                THE PROSPECTIVE JUROR:  It's just dramas, made up

20    fiction and stuff.

21                THE COURT:  Is there any reason why you cannot be

22    fair and impartial in rendering a verdict in this case?

23                THE PROSPECTIVE JUROR:  No.

24                THE COURT:  Is there anything in this case that

25    would cause you to favor one side over other?

JURY SELECTION                             295

1                THE PROSPECTIVE JUROR:  No.

2                THE COURT:  Will you be able to set aside any

3     sympathies or biases you have for any of the parties in this

4     case and render an impartial verdict.

5                THE PROSPECTIVE JUROR:  Say that again.

6                THE COURT:  Will you be able to set aside any

7     sympathies or biases that you may have for any of the parties

8     in this case and render an impartial verdict based solely on

9     the evidence presented in court and the law as given to you by

10    Judge Garaufis?

11               THE PROSPECTIVE JUROR:  Yes.

12               THE COURT:  I just want to be clear again about the

13    Google search you did for this case and the one thing that you

14    saw during that search.  Are you certain that that will not

15    affect your ability to be fair and impartial?

16               THE PROSPECTIVE JUROR:  Yes.

17               THE COURT:  Okay.  Any follow-up questions for

18    Ms. Liu?

19               MR. GULLOTTA:  No, Your Honor.

20               MR. FRISCH:  I do.

21               THE COURT:  Do you want to come up and talk?

22               MR. FRISCH:  Please.

23               (Continued on the next page.)

24               (Sidebar conference.)

25

                    SN        RPR        OCR

SIDEBAR CONFERENCE                    296

1           (The following occurred at sidebar.)

2           MR. FRISCH:  I think that a juror during jury

3   selection Googling a case and reading an article about it and

4   this particular article I think is -- it's not the one you

5   mentioned earlier, but it's a question about this prosecution

6   and I think that's per se disqualifying.  Whatever she says

7   about her certainty or lack of certainty I think she can't be

8   on the jury for doing that.

9           If Your Honor instructed her not to look things up,

10  she violated the Court's direction and that in and of itself

11  is disqualifying and if Your Honor didn't do that, probably

12  it's all of our bad for not realizing it and not calling it to

13  Your Honor's attention --

14          THE COURT:  I didn't.

15          MR. FRISCH:  Well, we shouldn't.

16          THE COURT:  I shouldn't.

17          MR. FRISCH:  It's all of our faults, but here we

18  are.  She did something she shouldn't have done.  She read

19  something about this prosecution.  I don't think she can be

20  resurrected.

21          THE COURT:  It's likely the DOJ's press release

22  because that's is the first thing that came up.  After you

23  mentioned this morning about this, I did a Google and the

24  first thing was the press release.

25          Do you have anything to say.

SIDEBAR CONFERENCE                    297

1          MR. GULLOTTA:  She doesn't demonstrate a bias.  I

2     think you asked adequate follow-up questions on how she would

3     handle the evidence if she were selected and I think her

4     answers were sufficient and I also don't recall an

5     instruction, maybe there was one that they not Google the

6     case, so I don't know that she, like, actually violated an

7     instruction from the Court.  She may have been curious and not

8     know that it was wrong.  I don't know.

9          We don't want anyone either on the jury that is

10    going to have a big preconception about the case.  It doesn't

11    seem like that's what she was articulating.  There are plenty

12    of cases that gain media attention so people will just know

13    about them and we have to ask the question will you be

14    influenced by that or can you separate what you have heard

15    about the case when you're at trial.  She seemed to answer

16    that question adequately.

17         All of that being said I don't think the Government

18    has a strong position on this.  If the Court is concerned in

19    the way that Mr. Frisch is concerned, so be it.  We can strike

20    her and move on, but that's just my evaluation to my responses

21    to the Court's questions.

22         MR. FRISCH:  I think it's a per se violation and she

23    can't be resurrected.  It's someone during the jury selection

24    Googling and reading the case.  I don't fault her for doing it

25    but she did it and that's it.

1          THE COURT:  I don't think it's a per se violation

2    because she was -- the jury was not instructed not to do that.

3    However, in light of the Government's -- it has really no

4    objection to striking her so out of an abundance of question,

5    I will.

6               MR. GULLOTTA:  Fair enough.

7               MR. FRISCH:  Thank you.

8

9               (End of sidebar conference.)

10              (Continued on the next page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*SN        RPR        OCR*

1          THE COURT:  Thank you, Ms. Liu.  I'm going to excuse

2   you from serving on this jury.  You can report to the Central

3   Jury Room and they will give you further instructions.  Do you

4   have your -- you don't have your juror card with you, the big

5   number that we gave you yesterday.

6          THE PROSPECTIVE JUROR:  I don't think I got that.

7          THE COURT:  It was the one in the Central Jury Room.

8          THE PROSPECTIVE JUROR:  I left that inside there.

9          THE COURT:  Okay.  You can go to the Central Jury

10  Room.  They'll let you know what to do.

11         THE PROSPECTIVE JUROR:  Thank you.

12         (Prospective juror exits.)

13         MR. FRISCH:  Can I make a suggestion before we go to

14  where we are.  It's probably -- if I had realized that that

15  instruction wasn't in there, I would have called it to your

16  attention but we're all human.  Might I propose that perhaps

17  just to avoid this happening again -- they're sitting there,

18  they're bored, they have their phones, that Your Honor go in

19  and just tell the jurors we appreciate your patience --

20         THE COURT:  They don't have their phones.

21         MR. FRISCH:  How did she Google it?

22         THE COURT:  She went home yesterday.

23         MR. FRISCH:  I was thinking because I have my phone

24  they must have their's, but I'm a lawyer, but, okay.

25         MR. GULLOTTA:  It makes sense to give it at the end

JURY SELECTION                    300

1    of the day though, Your Honor.

2              THE COURT:  I agree and all of the other charges

3    again.

4              (Prospective juror enters.)

5              THE COURT:  Good afternoon Ms. Bolarinwa.

6              THE PROSPECTIVE JUROR:  Good afternoon.

7              THE COURT:  Ms. Bolarinwa, the trial in this case is

8    going to start perhaps on Thursday and continue through

9    perhaps March 31st.

10             THE PROSPECTIVE JUROR:  Okay.

11             THE COURT:  They may adjust it a little bit so it

12   begins on Monday the 20th, we're not sure yet.  Is there any

13   reason why serving on the jury during that period of time

14   would cause you a genuine hardship?

15             THE PROSPECTIVE JUROR:  No.

16             THE COURT:  Have you, a family member or close

17   friend ever been charged with a crime, convicted of a crime or

18   been the subject of a criminal investigation?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  Have you or any member of your family or

21   close friends ever been a witness to a crime?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Have you, a family member or close

24   friend ever been a witness in a grand jury investigation or

25   been questioned in any matter by law enforcement officers?

1                THE PROSPECTIVE JUROR:  No.

2                THE COURT:  Have you or any member of your family or

3     close friends ever been the victim of a crime?

4                THE PROSPECTIVE JUROR:  No.

5                THE COURT:  Have you, a family member or close

6     friend ever been a party to a legal action or dispute against

7     the United States or any of its agencies or employees?

8                THE PROSPECTIVE JUROR:  No.

9                THE COURT:  Now, this case has received some degree

10    of media attention.  Have you read, heard or seen anything in

11    the media about this case or about the defendant Douglas

12    Mackey, otherwise known as Ricky Vaughn?

13               THE PROSPECTIVE JUROR:  No.

14               THE COURT:  This case involves various individuals

15    including the defendant Douglas Mackey who had strong

16    political preferences during the 2016 presidential election

17    campaign, including individuals who supported President Donald

18    Trump and also individuals who supported presidential

19    candidate Hilary Clinton.

20               Do you have strong opinions or feelings related to

21    the 2016 presidential election campaign or to the two

22    candidates in that campaign, such that it would overcome your

23    duty to judge the facts in this case impartially and fairly.

24               THE PROSPECTIVE JUROR:  No.

25               THE COURT:  Do you have any experience with what you

1   perceived to be deliberately false or misleading information

2   to the internet or on social media?

3            THE PROSPECTIVE JUROR:  No.

4            THE COURT:  Alt trial you may hear some language

5   that you find may be offensive.  You should not assess the

6   evidence you hear based on whether you find it to be offensive

7   or not, but rather on whether the evidence tends to prove the

8   elements of the crime or disprove them.

9            If you found some of the evidence to be offensive

10  would you be able to set aside your feelings about its

11  offensiveness and to objectively hear and consider that

12  evidence and the instructions to you given you by Judge

13  Garaufis.

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  You live in Brooklyn?

16           THE PROSPECTIVE JUROR:  Brooklyn, yes.

17           THE COURT:  How long?

18           THE PROSPECTIVE JUROR:  About 30 minutes to my

19  house.

20           THE COURT:  How long have you lived in Brooklyn?

21           THE PROSPECTIVE JUROR:  2011 to until now.

22           THE COURT:  Do you own the house or do you rent it?

23           THE PROSPECTIVE JUROR:  No, no, it's my daughter's

24  house.

25           THE COURT:  It's your daughter's house?

1                 THE PROSPECTIVE JUROR:  Yes.

2                 THE COURT:  Other than your daughter, who lives

3       there?

4                 THE PROSPECTIVE JUROR:  I live with my little

5       daughter.

6                 THE COURT:  And it's her house.

7                 THE PROSPECTIVE JUROR:  Yes, my daughter.

8                 THE COURT:  Do you own it or --

9                 THE PROSPECTIVE JUROR:  It's only two of us; myself

10      and my little daughter.

11                THE COURT:  Is it an apartment or house?

12                THE PROSPECTIVE JUROR:  It's a family house.

13                THE COURT:  And your daughter owns it?

14                THE PROSPECTIVE JUROR:  Yes.

15                THE COURT:  What does she do for a living?

16                THE PROSPECTIVE JUROR:  She's in college, the little

17      one, but the other one that own the house she works in

18      Maryland.

19                THE COURT:  She works in Maryland?

20                THE PROSPECTIVE JUROR:  She's a senior developer.

21                THE COURT:  She lives down there?

22                THE PROSPECTIVE JUROR:  She owns the house but I

23      live there with my little daughter.

24                THE COURT:  I got it.  Do you work?

25                THE PROSPECTIVE JUROR:  Yes.

1              THE COURT:  What do you do?

2              THE PROSPECTIVE JUROR:  Behavioral health.

3              THE COURT:  Okay.

4              THE PROSPECTIVE JUROR:  I work with psych patients.

5              THE COURT:  And what's the highest level of

6    education you received?

7              THE PROSPECTIVE JUROR:  Associates degree in

8    science.

9              THE COURT:  Have you ever served in the military.

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  Where do you get your news from,

12   newspapers, radio, TV, internet, social media, podcasts, what?

13             THE PROSPECTIVE JUROR:  I'm sorry, I don't read

14   news.  I just read my novels, go to my job, I come back and

15   take my book and start reading and that's it.

16             THE COURT:  That is all right.  Do you use the

17   internet for social media?

18             THE PROSPECTIVE JUROR:  I only use it for my job.

19             THE COURT:  You don't have a Twitter account or

20   Instagram or Facebook?

21             THE PROSPECTIVE JUROR:  I have Facebook, but I used

22   it three or four years ago because of the messages so I have

23   to block it.

24             THE COURT:  Are you concerned at all about the

25   reliability of the information that you find on the internet

JURY SELECTION                                    305

1    and social media?

2               THE PROSPECTIVE JUROR:  Yeah, that's why I block it

3    because of the messages that I received there.  So I don't

4    like it.  So I blocked Facebook so I don't look at Facebook.

5               THE COURT:  Have you ever been involved in voter

6    education, voter registration or any get out and vote efforts?

7               THE PROSPECTIVE JUROR:  No, no.

8               THE COURT:  Do you have any hobbies?

9               THE PROSPECTIVE JUROR:  Yeah, my hobbies is readings

10   novels  and playing with my kid.  That's my hobby.

11              THE COURT:  Do you watch any particular television

12   shows or listen to any particular radio programs on a regular

13   basis?

14              THE PROSPECTIVE JUROR:  Yeah the one I watch is

15   maybe like play movies.  I'm not so interested in those

16   type -- within 30 minutes I'm off.  So I really don't sit down

17   with the TV.

18              THE COURT:  Is there any reason why you cannot be

19   fair and impartial in this case?

20              THE PROSPECTIVE JUROR:  No.  I don't think so.

21              THE COURT:  Is there anything about this case that

22   would cause you to favor one side over the other?

23              THE PROSPECTIVE JUROR:  No, no.

24              THE COURT:  Have you been able to set aside any

25   sympathies or biases for any of the parties in this case and

1   render an impartial verdict based old Lee on the evidence

2   presented in court and the law as given to you by the judge?

3               THE PROSPECTIVE JUROR:  I can, yes.

4               THE COURT:  Yes?

5               PROSPECTIVE JUROR:  Yes.

6               THE COURT:  Okay.  Any questions for Ms. Bolarinwa?

7               MR. GULLOTTA:  No, Your Honor.

8               MR. FRISCH:  No, Your Honor.  Thank you.

9               THE COURT:  Thank you.  Ms. Bolarinwa, they're going

10  to take you into the next courtroom and you're going to wait a

11  little bit and we'll get back to you shortly, okay?

12              (Prospective juror exits.)

13              (Prospective juror enters.)

14              (Prospective juror enters.)

15              THE COURT:  Ms. Gyalnang, good afternoon.

16              THE PROSPECTIVE JUROR:  Good afternoon.

17              THE COURT:  You indicated that you have a background

18  or have taken courses in the law; is that correct?

19              THE PROSPECTIVE JUROR:  I mean, I did take one class

20  when I was in college, Law 101, so that's what was in my head.

21              THE COURT:  How long ago was that?

22              THE PROSPECTIVE JUROR:  I think more than 15 years

23  ago.

24              THE COURT:  Okay.  You may have learned something in

25  that class about criminal law, I don't know.  If you did,

1    that's fine, but in this case the law that you apply is the

2    law that comes from Judge Garaufis.  He will tell you what the

3    law is.  You will have to follow the law whether you agree

4    with it or not, whether you think it should be different,

5    whether you learned something different in your Law 101 class

6    in college could.  You do that?

7               THE PROSPECTIVE JUROR:  I could do that.

8               THE COURT:  The trial in the case is going to start

9    either on Thursday the 16th or Monday the 20th.  We're not

10   quite sure yet.  We'll know later today.  It's going to last

11   until either the 28th at the very latest or the 31st depending

12   on when it starts.  And it's likely going to end sooner than

13   either of these dates, but is there any reason why serving on

14   this jury for that period of time would cause you a genuine

15   hardship?

16              PROSPECTIVE JUROR:  Just in terms of -- I don't know

17   what a genuine hardship is, but I'm at a new job.  I'm here,

18   like, six months so it's kind of getting in the way of that.

19   I'm only been at my job for six months.

20              THE COURT:  We'll talk about what you do in a little

21   while, but I appreciate that.  We'll take that into account.

22              Have you, a family member or close friend ever been

23   charged with a crime, convicted of a crime, or been the

24   subject of a criminal investigation?

25              THE PROSPECTIVE JUROR:  No.

1          THE COURT:  Have you or any member of your family or

2    close friends ever been a witness to a crime?

3          THE PROSPECTIVE JUROR:  No.

4          THE COURT:  Have you, a family member or close

5    friend ever been a witness in a grand jury investigation or

6    been questioned in any matter by law enforcement officers?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  Have you or any member of your family or

9    close friends been the victim of a crime?

10          THE PROSPECTIVE JUROR:  You said family?

11          THE COURT:  You, a family member or close friend.

12          PROSPECTIVE JUROR:  I don't know if you would call

13    it a crime.  My family was robbed it was a home invasion.

14          THE COURT:  People were there?

15          THE PROSPECTIVE JUROR:  People came with guns and

16    stuff.  I wasn't there.  But it was in another country.

17          THE COURT:  This is your immediate family?

18          PROSPECTIVE JUROR:  Yes, it was a long time ago.

19          THE COURT:  Were you born at that point or --

20          THE PROSPECTIVE JUROR:  No, I was here.  My parents

21    were back home in another country and I didn't know it at the

22    time but I found out many years later.  They didn't tell me

23    because they didn't want to scare me.

24          THE COURT:  Is there anything about their experience

25    or you hearing about it years later that would affect your

JURY SELECTION                                    309

1   ability to be fair and impartial in this case?  This is not a

2   home invasion case.

3          THE PROSPECTIVE JUROR:  No, I don't think that would

4   impact this case because there's no --

5          THE COURT:  But if you were called upon to be a

6   juror in a home invasion case that might be a problem?

7          THE PROSPECTIVE JUROR:  Yes, yes.

8          THE COURT:  But not this case?

9          THE PROSPECTIVE JUROR:  That incident wouldn't

10  affect this case.

11         THE COURT:  Have you, a family member or a close

12  friend ever been a party to a legal action against the United

13  States or have a dispute with the United States or any of its

14  agencies or employees?

15         THE PROSPECTIVE JUROR:  No.

16         THE COURT:  Now, this case has received some degree

17  of media attention.  Have you read, heard or seen anything in

18  the media about this case or the defendant Douglas Mackey

19  a/k/a Ricky Vaughn?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  Have you done any internet searches

22  since being called upon to be a juror in this --

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  This case involves various individuals

25  including the defendant, Douglas Mackey, who had strong

1    political preferences during the 2016 presidential election

2    campaign, including individuals who supported president Donald

3    Trump and individuals who supported presidential candidate

4    Hilary Clinton.  Do you have strong feelings or opinions

5    related to the 2016 presidential election campaign or the two

6    candidates in that campaign such that it would overcome your

7    duty to judge the facts in this case impartially and fairly?

8              THE PROSPECTIVE JUROR:  No.

9              THE COURT:  Do you have any experience with what you

10   perceive to be deliberately false or misleading

11   information information on the internet or social media?

12             PROSPECTIVE JUROR:  Can you repeat it again.

13             THE COURT:  I smile because many people have asked

14   me to repeat that question.  It's not artfully drafted I

15   apologize.  Do you have any experience with what you perceived

16   to be deliberately false or misleading information on the

17   internet or on social media?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  At trial you may hear some language that

20   you may find to be offensive.  You should not assess that

21   evidence based on whether or not it is offensive but rather on

22   whether the evidence tends to prove or disprove the elements

23   of the crime.  If you found some evidence to be offensive

24   would you be able to put aside your feelings about it and

25   objectively hear it and consider it fairly and impartially.

JURY SELECTION                                311

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  You live in Brooklyn?

3          PROSPECTIVE JUROR:  Queens.

4          THE COURT:  You live in Woodside.

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  How long?

7          THE PROSPECTIVE JUROR:  I mean at this particular

8   address six years but in general I think, like, 20 years.

9          THE COURT:  Do you own or do you rent?

10         THE PROSPECTIVE JUROR:  Own.

11         THE COURT:  Do you live with anyone?

12         THE PROSPECTIVE JUROR:  My husband and my daughter.

13         THE COURT:  What does your husband do for a living?

14         THE PROSPECTIVE JUROR:  He works in IT.

15         THE COURT:  And how old is your daughter?

16         THE PROSPECTIVE JUROR:  She's 12.

17         THE COURT:  And what do you do for a living?

18         THE PROSPECTIVE JUROR:  I work in HR and I

19   specialize in benefits.

20         THE COURT:  Thank you.  What is the highest level of

21   education that you completed?

22         THE PROSPECTIVE JUROR:  Bachelor's degree.

23         THE COURT:  Have you ever served in the military?

24         THE PROSPECTIVE JUROR:  No.

25         THE COURT:  Where do you get your news from;

JURY SELECTION                    312

1  newspapers, radios, TV, internet, podcasts, other sources, all

2  of the above, how?

3          THE PROSPECTIVE JUROR:  The internet.

4          THE COURT:  Is tere any particular sources of

5  internet news?

6          THE PROSPECTIVE JUROR:  I think my browser just

7  opens up to MSN.com and I read what's there.  Sometimes I go

8  to the New York Times.

9          THE COURT:  All right, fair enough.  Do you use the

10 internet -- other than what you said do you use the internet

11 and social media?

12         THE PROSPECTIVE JUROR:  Facebook, Instagram, those

13 are the two main ones.

14         THE COURT:  Do you have a Twitter account.  TikTok?

15         THE PROSPECTIVE JUROR:  No, I don't use those.

16         THE COURT:  How often do you use Facebook and

17 Instagram?

18         THE PROSPECTIVE JUROR:  Daily.

19         THE COURT:  And how do you use them?  Just looking

20 what's on your feed?

21         THE PROSPECTIVE JUROR:  Yeah it's on my phone and so

22 I just check Instagram and once a day at least I check

23 Facebook just true the April.

24         THE COURT:  Are you concerned about the reliability

25 of the information that you find on the internet and social

JURY SELECTION                              313

1    media?

2              THE PROSPECTIVE JUROR:  Actually, these days, yes

3    because I've heard of, like, bots in China -- you know,

4    putting up fake reviews and fake comments and fake articles

5    so, yes, these days yes.  I don't trust what I see or hear

6    even if it's a video it could be doctored.  It's difficult to

7    believe anything these days.

8              THE COURT:  Okay.  This case involves allegations of

9    false or misleading information that's spread on the internet

10   and through media.  Given your concern about the reliability

11   of the information, would your concern affect your ability to

12   be fair and impartial in this case, meaning would you be

13   inclined towards one side or the other or be unable to

14   objectively hear the evidence presented in court and weigh it,

15   only -- before you answer, no case is decided on what happens

16   outside of the courtroom.  It's what evidence is presented and

17   admitted into the trial and you have to confine yourself to

18   that.

19             THE PROSPECTIVE JUROR:  Yeah, I mean, so given the

20   fact that I believe that pictures can be doctored, videos can

21   be doctored, articles can be manipulated.  I honestly don't

22   believe anyone or anything these days because I don't know how

23   many hands it went through before it got to me.  Not to say

24   anything about law enforcement.  It's still people.

25             So, I -- I think it may impact me because like I

1   said it's difficult to trust anyone or anything you see these

2   days especially with deep fake you're seeing someone who looks

3   like an actor but it's really not that person so it's

4   difficult to say what's true or not these days irrespective of

5   where it's coming from.

6           THE COURT:  Not withstanding what I will call a

7   healthy skepticism of what you see on the internet and social

8   media do you think you would be able to be a fair and

9   impartial juror in this case which involves allegations of

10  false and misleading information that was distributed through

11  the internet and social media where the evidence would be

12  presented in court and you would have to decide what's what.

13          PROSPECTIVE JUROR:  I mean, I can try to be

14  objective but I think there may be an element of second

15  guessing what I'm seeing and I may be biased unconsciously so

16  I may not be 100 percent -- I don't know what the word is.

17          MR. FRISCH:  May we approach Your Honor?

18          THE COURT:  Sure.

19          (Continued on the next page.)

20          (Sidebar conference.)

21

22

23

24

25

1          (The following occurred at sidebar.)

2          MR. FRISCH:  There's something about the case you

3     don't know which is that the conspirators or people on the

4     internet or in these chat rooms doctored photographs of

5     celebrities and so, for example, there's pictures of Justin

6     Bieber in a MAGA cap and Iggy Azalea.  I don't know how to

7     spell it,  in a MAGA cap and so I think that we probably -- my

8     colleagues and I probably share that this may be too close to

9     the bond.

10          MR. GULLOTTA:  I guess that's fair.  I mean she's

11     lodged a healthy skepticism and I think that's accurate.  I

12     don't know that that renders her unable to separate what she's

13     seen online in the past from what she sees at trial.  I feel

14     like we're going to have a implement with anyone who answers

15     that question that something who heard or seen something

16     online that's false.  I haven't gotten a sense from any of the

17     answers to your questions that she's an unsuitable juror.  So,

18     I don't know that that renders her unqualified.

19          MR. FRISCH:  I think it does.  She's talking about

20     an element of secondguessing.  She's talking about shutting

21     down her Facebook.  This is her getting tired, but shutting it

22     down because of the false or fake information and when she

23     talked about fake photos of celebrities which we know in this

24     case not is done.  It's part of life to show how things are

25     manufactured.

SIDEBAR CONFERENCE                     316

1           MR. GULLOTTA:  The truth and falsity of the

2    documents are not under dispute.  They're obviously false.

3    The question is whether she would have a problem bing an

4    impartial juror knowing he's associated with people who are

5    making false things.  She seemed to have concern about her own

6    ability to tell the deep fake from the real thing.  That's not

7    at issue in this case.  It's all clearly false.  I think

8    that's to provoke strong responses but there may be a

9    clarifying question on that.

10           THE COURT:  All of the things that are going to be

11   shown, all of the things that were distributed on the internet

12   or social media is it conceded that they're false?

13           MR. FRISCH:  Yes, but I don't think -- all of these

14   are photoshopped photographs of celebrities like the two I

15   mentioned.  I appreciate your effort to characterize it as you

16   did but she's going to get turned off by anything she sees

17   she's going to go, this is what I see online.  There's an

18   element of second guessing, an element of bias it' s, just too

19   close.

20           MR. GULLOTTA:  I don't think she said bias.  I

21   understand where Mr. Frisch is coming from it cuts both ways

22   but if you have a juror that would not be fooled because she

23   has this level of skepticism I don't know if it renders her

24   biased towards the Government or defense.  She's bringing her

25   outside experiences to a courtroom like every juror is

SIDEBAR CONFERENCE                         317

1    supposed to do.  If she can separate it from the evidence she

2    can do that.  If she can't do that, she's not qualified.

3              THE COURT:  I mean, she's not going to be called

4    upon to determine whether something is false or not.

5              MR. PAULSEN:  No.

6              THE COURT:  If it's conceded that it's false.

7              MR. PAULSEN:  It's whether she's frustrated at

8    having seen these things before.

9              MR. GULLOTTA:  If it would generate an emotional

10   response she can't overcome, that's different.

11             MR. FRISCH:  I've made my challenge.  She -- she

12   specifically on her own -- look, we all want to get through

13   this but we can't do it too quickly.  I'm a little bit tired.

14   I can be eloquent but not right now.

15             MR. GULLOTTA:  Deep breath.

16             MR. FRISCH:  The time that we take now is going to

17   save time later on if we have a mistrial or we have a problem

18   or something comes up something is in her mind, what do we do

19   and then we lost a juror and then it's a bigger waste of time

20   and a bigger problem.  She's going to see these photos.  We

21   can parse it.  We're all very smart people.  We can parse it

22   any way we want but the fact of the matter is she specifically

23   discussed and mentioned photo apps of celebrities -- fake

24   photographs of celebrities and that's what alleged

25   conspirators in this case did in an election with regard to

1    very well-known people.  Even I know Iggy Azlalea.  I don't

2    remember the song, but I do now.  I just think she's not the

3    right juror for this case.

4                THE COURT:  I'll ask her another question and I'll

5    see.

6                MR. GULLOTTA:  Thanks.

7                (End of sidebar conference.)

8                (Continued on the next page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Ms. Gyalnang, if there is evidence

2    presented in this case of admittedly false and misleading

3    information distributed on the internet and social media

4    including pictures that are admittedly doctored, so no one

5    disputes that these are false, would that -- would knowing

6    that and the question is not -- knowing that, would that

7    affect your ability to be fair and impartial to judge the

8    evidence and say we know that these are admittedly false,

9    doctored, pictures; now let's move on to answer the other

10   questions in the case; does that and the other evidence

11   indicates proof beyond a reasonable doubt that Mr. Mackey

12   committed a crime?

13         THE PROSPECTIVE JUROR:  If the person admitted that

14   they doctored those pictueres?

15         THE COURT:  From what I understand it is not

16   disputed that the -- that the things distributed through the

17   internet and contained -- are doctored images and other false

18   and misleading information.  That's not something that you're

19   going to have to be -- you're going to be asked to decide as a

20   juror.  It's other things.  If you're still uncomfortable with

21   it, tell me.

22         THE PROSPECTIVE JUROR:  I don't understand it.

23         THE COURT:  The allegations here are that

24   information was distributed through the internet and social

25   media that was false and misleading and it was about the 2016

JURY SELECTION                                    320

1    presidential election.  That information contained -- and

2    those distributions through the internet and social media

3    contained at least in part admittedly doctored images.  No

4    dispute there.  You will see that evidence, you will be called

5    upon as a juror to listen to it, see it and other evidence to

6    determine whether or not a crime has been committed and it, of

7    course, is the Government burden to prove that beyond a

8    reasonable doubt, to over come the presumption of innocence

9    that Mr. Mackey has.

10           In light of that, what I just explained to you, do

11   you think you can be fair and impartial?  In other words,

12   you're not being called upon to say is this a doctored image.

13   There's no question that it is.  It's admitted.  So you're

14   not -- the reasons that caused you to stop looking at

15   Facebook, that's not at play in this case.

16           PROSPECTIVE JUROR:  Yes, I think I can do it, yeah.

17           THE COURT:  Did I ask you -- and so you think

18   knowing that you can be fair and impartial and judge the

19   evidence for what it's worth, put the Government to its proof,

20   to prove beyond a reasonable doubt all of the other

21   individuals elements of the crime in order to determine the

22   case?

23           PROSPECTIVE JUROR:  Yes.

24           (Continued on the following page.)

25

JURY SELECTION                          321

1          THE COURT:  Did I ask you if you had any hobbies?

2          THE PROSPECTIVE JUROR:  No.

3          THE COURT:  Did I ask you whether you had been

4  involved in voter education or registration or Get Out the

5  Vote efforts?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Have you been?

8          THE PROSPECTIVE JUROR:  So the first question,

9  hobbies?

10         THE COURT:  Let's go with the first question, voter

11 education or voter registration or Get Out the Vote.  Have you

12 ever done that?

13         THE PROSPECTIVE JUROR:  No.

14         THE COURT:  Do you have any hobbies or how do you

15 spend your leisure time?

16         THE PROSPECTIVE JUROR:  I just walk my dog.

17         THE COURT:  Okay.  Do you have any television shows

18 or radio programs that you regularly watch or listen to?

19         THE PROSPECTIVE JUROR:  I just watch Netflix and

20 Prime so just pick a few shows.  So detective, sometimes

21 detective stories, detective thrillers.

22         THE COURT:  Is there a show you're binging now?

23         THE PROSPECTIVE JUROR:  I think I just started the

24 night manager.

25         THE COURT:  Okay.  Fiction.

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Largely fiction.

3              THE PROSPECTIVE JUROR:  But I do watch, like,

4    detective series like Endeavor, BBC Masterpiece.  I can't

5    remember.  Yes.  So those kind of, those kind of shows.

6              THE COURT:  Is there any reason why you cannot be

7    fair and impartial in this case?

8              THE PROSPECTIVE JUROR:  The only thing I'll say is I

9    don't know the facts of this case but it seems not such, you

10   know, compared to murder and things like that.  It seems,

11   like, sort of white collar crime.  So I don't know how

12   severely this person is going to be punished.  So I just feel

13   like I don't want to be responsible for putting someone in

14   jail and then, you know, like, the effects of jail are really

15   harsh on a person.  It takes, you know -- it's a huge toll on

16   a person so that, I think, may affect me a little.  I think

17   there are bigger crimes out there, not that this is not a

18   crime.  I don't know much about it but I just don't know if

19   it's worth this much effort and, you know, like, putting

20   someone in jail not knowing the facts of the case.

21             THE COURT:  Punishment is an issue for

22   Judge Garaufis to decide.  Whether a sentence of incarceration

23   should be imposed, that is completely up to him, and it's not

24   something that the jury will be asked to do.  All the jury

25   will be asked to do is to determine whether the government has

1    satisfied its burden of proof to prove beyond a reasonable

2    doubt that Mr. Mackey is guilty of the crime that has been

3    charged.  So that is -- you don't have to concern yourself

4    with that.  That is not on you, as they say, but I understand

5    what you're saying.

6             THE PROSPECTIVE JUROR:  Yes, I would just feel

7    somewhat guilty that I played a part in someone possibly going

8    to jail where you're otherwise abused.  That trauma takes

9    years to get over it.  People never get over it.  I watch

10   prisoner-type shows where I know terrible things happen and I

11   kind of believe in second chances.

12            THE COURT:  Would that concern overcome your duty to

13   be fair and impartial to both sides of the case?  In other

14   words, you would side towards finding Mr. Mackey not guilty

15   because you're concerned that he might go to prison?

16            THE PROSPECTIVE JUROR:  I think that guilt -- I will

17   try to be objective, but I don't know if it unconsciously, I

18   kind of don't want that guilt of being part of this --

19            THE COURT:  Okay.

20            THE PROSPECTIVE JUROR:  -- given the nature of the

21   crime.

22            THE COURT:  Will you be able to set aside any

23   sympathies or biases you may have for any of the parties in

24   this case and render an impartial verdict based solely on the

25   evidence and the law as given to you by Judge Garaufis?

```
 1            THE PROSPECTIVE JUROR:  Yes.

 2            THE COURT:  Okay.  All right.  Anything else from

 3     the --

 4            MR. GULLOTTA:  Can we have a sidebar?

 5            THE COURT:  Sure.

 6            (Continued on the next page.)

 7            (Sidebar conference.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SIDEBAR CONFERENCE                          325

1          (The following occurred at sidebar.)

2          THE COURT:  The shoe's on the other foot?

3          MR. GULLOTTA:  Yes, it's a little awkward but it's a

4     different topic and, obviously, she's expressed pretty severe

5     reservations about being able to render a guilty verdict

6     regardless of her evaluation of the evidence.  So I wanted to

7     raise that and address that with the Court because that's a

8     separate topic.  It doesn't change my position on the earlier

9     topic but we have someone who now, even if she's able to put

10    aside whatever her feelings were about doctored photos and

11    evaluate the evidence objectively, she might still render a

12    not guilty verdict simply because she doesn't want to put him

13    in prison, a whole different subject.

14         MR. FRISCH:  I don't feel she's the right juror for

15    this case.

16         THE COURT:  Okay.

17         (In open court; sidebar ends.)

18         THE COURT:  Thank you, Ms. Gyalnang.  I'm going to

19    excuse you from this jury.  You can go to the Central Jury

20    Room and they'll give you further instructions.

21         (Prospective juror excused.)

22         (End of sidebar conference.)

23         (Continued on the next page.)

24

25

JURY SELECTION                        326

1              THE COURT:  Do you want to try to go through one

2    more person before 3:15?

3              MR. GULLOTTA:  Sure.

4              THE COURT:  Okay.  Katarzyna Mojescik, Number 36,

5    raised her card to number 18 .

6              (Prospective juror enters.)

7              THE COURT:  Okay.  Good afternoon, Ms. Mojescik.

8              THE PROSPECTIVE JUROR:  Good afternoon.

9              THE COURT:  Did I pronounce your name correctly?

10             THE PROSPECTIVE JUROR:  Katarzyna Mojescik.

11             THE COURT:  You raised your juror number yesterday

12   in the big courtroom indicating that you, a family member or

13   close friend worked for a law enforcement agency or

14   organization.

15             THE PROSPECTIVE JUROR:  My - I understood that was

16   the question about NYPD police department.  So my daughter has

17   ex-boyfriend was the police officer.  This is what I --

18             THE COURT:  Okay.  So it's your daughter's

19   ex-boyfriend?

20             THE PROSPECTIVE JUROR:  Yes, but she's married other

21   man.

22             THE COURT:  Okay.  Is there anything about their

23   relationship, him being a, their former relationship and him

24   being a cop that would affect your ability to be fair and

25   impartial in this case?

```
 1              THE PROSPECTIVE JUROR:  No.

 2              THE COURT:  Okay.  The trial is going to start on

 3    either the 16th, on Thursday the 16th or Monday the 20th, and

 4    it will last either until the 28th at the latest or the 31st

 5    at the latest, depending on when it starts.  We don't know

 6    yet.  We'll know later, a little later today when the judge is

 7    going to actually have the trial, but is there any reason why

 8    serving on this jury for that period of time would present a

 9    genuine hardship for you?

10              THE PROSPECTIVE JUROR:  No.  Actually, I have the

11    last, March 31st, I have exhibit of, I am part of the exhibit

12    of photography so we have the last day so, afternoon.  So I

13    would be want to --

14              THE COURT:  You'd want to go to that?

15              THE PROSPECTIVE JUROR:  But this is not issue.  I

16    can skip this event.

17              THE COURT:  Okay.  Thank you.

18              Have you, a family member or close friend ever been

19    charged with a crime, convicted of a crime or been the subject

20    of a criminal investigation?

21              THE PROSPECTIVE JUROR:  No.

22              THE COURT:  Have you or any member of your family or

23    close friends ever been a witness to a crime?

24              THE PROSPECTIVE JUROR:  No.

25              THE COURT:  Have you, a family member or close
```

JURY SELECTION                    328

1    friend ever been a witness in a grand jury investigation or

2    been questioned in any matter by law enforcement officers?

3              THE PROSPECTIVE JUROR:  I don't recall.  My husband

4    serve in trial but I don't know the case.

5              THE COURT:  Was he on trial?  Was he the defendant

6    in the case?

7              THE PROSPECTIVE JUROR:  No, as me, as a judge -- I

8    mean this same position as I am now.

9              THE COURT:  I see.  Your husband served on a jury?

10             THE PROSPECTIVE JUROR:  Yes.  Yes.

11             THE COURT:  Okay.  Have you or any member of your

12   family or close friends been the victim of a crime?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  Have you, a family member or close

15   friend ever been a party to a legal action or a dispute

16   against the United States of America, its agencies or its

17   employees?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  This case has received some degree of

20   media attention.  Have you read, heard or seen anything in the

21   media about this case or about the defendant, Douglass Mackey,

22   who was otherwise known as Ricky Vaughn?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  This case involves various individuals

25   including the defendant, Mr. Mackey, who had strong political

1    preferences during the 2016 Presidential election campaign

2    including individuals who supported President Donald Trump and

3    individuals who supported Presidential candidate Hillary

4    Clinton.

5            Do you have strong feelings or opinions related to

6    the 2016 Presidential campaign or to the two candidates in

7    that campaign such that it would overcome your duty to judge

8    the facts in this case fairly and impartially?

9            THE PROSPECTIVE JUROR:  I'm not clear about this

10   question.

11           THE COURT:  Okay.  So the testimony will be that

12   there are people involved in this case who had strong beliefs

13   about the 2016 Presidential election.  Some supported

14   President Trump.  Others may have supported Hillary Clinton.

15           Do you have such strong feelings about either

16   President Trump or Hillary Clinton or the 2016 Presidential

17   campaign and election that would overcome your duty to judge

18   this case fairly and impartially and not based on any bias or

19   prejudice or sympathy you may have for either of those folks?

20           THE PROSPECTIVE JUROR:  No.  I'm just -- I don't

21   have any, like, attachment as in feelings.

22           THE COURT:  Okay.  Do you have any experience with

23   what you perceived to be false or misleading information on

24   the internet or social media?

25           THE PROSPECTIVE JUROR:  I'm not clear with this

JURY SELECTION                    330

1    question.

2              THE COURT:  I'll ask it again.

3              So are you on the internet?  Do you have social

4    media?

5              THE PROSPECTIVE JUROR:  Yes, I have some, Instagram

6    and Facebook.

7              THE COURT:  Instagram and Facebook?  Okay.  Have you

8    had any experiences on Instagram or Facebook or on the

9    internet in general where you perceived something that you saw

10   there to be deliberately false or misleading?

11             THE PROSPECTIVE JUROR:  I'm -- I use only Facebook

12   for, like, follow my friends and just for, not for any, like,

13   political issues.

14             THE COURT:  Or news or anything like that?

15             THE PROSPECTIVE JUROR:  No.  No.

16             THE COURT:  But on Facebook, it has a thing called a

17   feed where you get -- they send you things.

18             THE PROSPECTIVE JUROR:  Like, I don't even see this

19   kind of feeds because I'm -- I just use, like, more for

20   contact with my friends or some, like, pages I like for the

21   art or something like that.

22             THE COURT:  Okay.  At trial, you may hear some

23   language that you find to be offensive.  You shouldn't assess

24   that evidence based on whether you find it to be offensive or

25   not but, rather, on whether that evidence tends to prove or

JURY SELECTION                    331

1  disprove the elements of the crime.

2          If you found some evidence to be offensive, would

3  you be able to put aside your feelings about its offensiveness

4  and judge that evidence and all the evidence in the case

5  objectively, impartially and fairly?

6          THE PROSPECTIVE JUROR:  This is new experience for

7  me so I, I don't know, that it's, like, for me something

8  completely new so I don't know.

9          THE COURT:  It's new for a lot of people who never

10  served on a jury before.

11          THE PROSPECTIVE JUROR:  Yes, so...

12          THE COURT:  The judge will instruct you that you

13  have to evaluate the evidence that's presented without your

14  personal feelings about it.  You have to put all of that

15  aside.  You have to just judge the evidence what's called

16  objectively, fairly and impartially without any bias or

17  relying on your feelings.  Can you do that?

18          Can you look at a piece of evidence that you may

19  find the words used to be offensive and put aside whatever

20  feelings you have about it being offensive and just see

21  whether that evidence tends to support or not support the

22  charges against Mr. Mackey?

23          THE PROSPECTIVE JUROR:  I will try but this is

24  something, new experience for me so I will try the best I'm

25  able to.

JURY SELECTION                                    332

1          THE COURT:  Okay.  You live in Brooklyn?

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  How long have you lived in Brooklyn?

4          THE PROSPECTIVE JUROR:  In Brooklyn, over 20 years.

5          THE COURT:  Do you own or do you rent your home?

6          THE PROSPECTIVE JUROR:  I own home with my husband.

7          THE COURT:  Other than your husband, does anyone

8   live with you in the home?

9          THE PROSPECTIVE JUROR:  Yes, we live together.

10         THE COURT:  No, other than the two of you.

11         THE PROSPECTIVE JUROR:  Yes, we have a few

12   apartments in the building which we rent.

13         THE COURT:  Okay.  But in your apartment, it's just

14   the two of you?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  What does your husband do for a living?

17         THE PROSPECTIVE JUROR:  My husband, he's project

18   manager working in construction field.

19         THE COURT:  Okay.  And you are a photographer?

20         THE PROSPECTIVE JUROR:  I mean I do, photography is

21   my passion.

22         THE COURT:  Okay.  Do you work otherwise?

23         THE PROSPECTIVE JUROR:  Yes, I'm work.  I'm, I'm

24   design clothes.

25         THE COURT:  You design clothes?

JURY SELECTION                              333

1                   THE PROSPECTIVE JUROR:  Yes.

2                   THE COURT:  What is the highest level of education

3      you completed?

4                   THE PROSPECTIVE JUROR:  I'm graduate in my country

5      from early childhood education.

6                   THE COURT:  A college degree?

7                   THE PROSPECTIVE JUROR:  It is between Associate

8      degree and Bachelor in the U.S.

9                   THE COURT:  It's between those two?

10                  THE PROSPECTIVE JUROR:  Yes.

11                  THE COURT:  All right.  Have you ever served in the

12     military?

13                  THE PROSPECTIVE JUROR:  No.  Military, is that what

14     you said?

15                  THE COURT:  Yes.

16                  THE PROSPECTIVE JUROR:  No.

17                  THE COURT:  Where do you get your news from,

18     newspapers, radio, television, internet, social media?

19                  THE PROSPECTIVE JUROR:  Actually we don't do the

20     news from TV because our TV broke so I'm just -- if something

21     I see in internet, not watching TV.

22                  THE COURT:  Okay.  Do you go to any particular

23     internet sites to find news?

24                  THE PROSPECTIVE JUROR:  No.

25                  THE COURT:  It's just whatever comes up?

JURY SELECTION                                334

```
 1            THE PROSPECTIVE JUROR:  Yes, basically.

 2            THE COURT:  What about radio, anything?

 3            THE PROSPECTIVE JUROR:  Radio?  I'm listening to

 4    music from my CDs.

 5            THE COURT:  And you told us that you have a Facebook

 6    and Instagram account, correct?

 7            THE PROSPECTIVE JUROR:  Yes.

 8            THE COURT:  And that's it?

 9            THE PROSPECTIVE JUROR:  That's it.

10            THE COURT:  How often do you use them?

11            THE PROSPECTIVE JUROR:  Daily but how many times?

12    Morning, just a few times every day, like maybe four.

13            THE COURT:  Are you concerned at all about the

14    reliability of information that you find on the internet and

15    social media?

16            THE PROSPECTIVE JUROR:  Can you -- I don't

17    understand exactly the question.

18            THE COURT:  Okay.  We need to have a conference with

19    the Judge so if you could go with my law clerks outside for a

20    few minutes, and then we'll bring you back in, okay, when

21    we're done.

22            THE PROSPECTIVE JUROR:  Okay.

23            (Prospective juror exits.)

24            (Recess taken.)  (Court resumes.)

25            THE CLERK:  Do you want to finish with Juror 36?
```

JURY SELECTION                                335

1          THE COURT:  Before I do, I'm inclined to let

2     everyone who is in 2F, the ones who have been cleared already,

3     to go home for the day.  I will go in and give them the

4     appropriate admonitions and then release them and return

5     tomorrow at, tomorrow after lunch, because we're not going to

6     be done before then.

7          Is there any objection to that?

8          MR. GULLOTTA:  No, Your Honor.  You mean the 16 that

9     have been selected?

10         THE COURT:  Yes.

11         MR. FRISCH:  No objection.

12         MR. GULLOTTA:  No objection.

13         THE COURT:  Let me do that now and then we'll

14    continue with Ms. Mojescik.

15         MR. FRISCH:  And just to protect the record, you'll

16    give an instruction to these folks not to seek out media, not

17    to look at media and all that?

18         THE COURT:  Yes, not to talk to anybody about the

19    case, not to talk to you in the halls and to report any

20    attempts to contact them.

21         MR. GULLOTTA:  And, Your Honor, the jurors know that

22    we're not supposed to talk to them, right?

23         THE COURT:  Yes.

24         MR. GULLOTTA:  So if we see them in the hallway,

25    we're not being rude.

1          THE COURT:  I'll remind them of that.

2          (The following occurred in Courtroom 2F; prospective

3  jurors present.)

4          THE COURT:  Good news but not great news and perhaps

5  some bad news.

6          The bad news is we're going to have to continue the

7  jury selection tomorrow.  We're going very slowly,

8  unfortunately, and we will not be done with the pool of,

9  selecting the pool of 36 to 40 people from which the parties

10 will pick the jury.

11         The good news is I'm releasing you today.  You can

12 go home or go to work or go watch a movie, whatever you want

13 to do.  I would like you to come back tomorrow at 2:00 p.m.

14 because what's going to happen is we're going to do what we

15 did with you for the rest of the day and in the morning

16 tomorrow and hopefully by then we will have enough folks to

17 add to you to have our group of 36 to 40 people.  I can't

18 guarantee that we'll reach that by 2 o'clock.  It's going to

19 be my goal.  Then when you come back and join them, the

20 parties will exercise their peremptory challenges and we will

21 have our jury.

22         The trial is not going to start on Thursday.  It's

23 going to start on Monday.  Judge Garaufis just had a

24 conference with the parties and decided to start it on Monday

25 but we'll give you further instructions on that once we pick

1  the jury.

2        So go home or go wherever you want.  What's the

3  saying?  You don't have to go home but you can't stay here or

4  something like that.

5        I need to impress upon you folks not to do any

6  internet research about this case.  If you see something pop

7  up on your cell phone or you see something on TV, don't look

8  at it, turn it off, change the channel, don't read it if you

9  see it in the papers and certainly don't do any independent

10  research about it.

11        If you see any of the attorneys or the parties in

12  the hall tomorrow when you come back or throughout the life of

13  the trial, you don't talk to them.  They're not going to talk

14  to you.  They may not even acknowledge you.  They know you're

15  there but they're not going to say hello or anything like that

16  because interactions between the parties and the jurors have

17  to be in court.

18        If anyone approaches you during jury selection or if

19  you're selected as a juror and asks you about the case or

20  anything like that, you need to bring that to the Court's

21  attention.  No one should be having any interaction with you

22  anywhere other than in court.

23        If you're asked by your loved ones, just tell them,

24  "I am in the process of being selected for a jury to serve in

25  a criminal case," and that's it, "I can't tell you anything

1  about it," because you actually don't know anything about it.

2  You just know the allegations.  There's no evidence yet.  So

3  that's what we're going to do.

4          Oh, Ms. Santana, okay.  I'll just recap for

5  Ms. Santana.

6          So we're going to -- the trial is going to start

7  Monday.  The jury selection will continue through tomorrow.

8  You can go home now, come back tomorrow at 2:00 p.m., and by

9  then, we hope to have the remainder of the panel from which

10 we're going to pick the jurors.

11         Don't do any internet research.  Don't talk to

12 anyone about the case.  If anyone approaches you about it,

13 please let me know.  If you see any of the lawyers out in the

14 hallway or the parties, don't talk to them.  They're not going

15 to talk to you.  And if you see anything on TV or anything

16 like that or in the papers, don't read it, don't watch it.

17 Okay?

18         Thank you, folks.  I'm really sorry this is taking

19 so long.  This is unusual.  I have had only one other jury

20 selection go two days.  I have never had a jury selection go

21 three days.

22         THE PROSPECTIVE JUROR:  Just a question.  Regardless

23 of whether I'm picked or not, does that mean that most likely

24 we do not have to be here Thursday and Friday or you don't

25 know that yet?

JURY SELECTION                          339

1          THE COURT:  The only way you would have to be here

2    Thursday or Friday is if the jury selection lasted that long

3    and I seriously doubt it.

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  We'll have a better idea tomorrow

6    afternoon.

7          THE PROSPECTIVE JUROR:  Okay.

8          THE COURT:  But the trial is not going to start

9    until Monday.  So if we finish tomorrow with the jury

10   selection, your Thursday and Friday are yours, you can meet

11   with the landscape architect.

12         All right.  Thank you, folks.

13         (Continued on next page.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (The following occurred in Courtroom 2E.)

 2              THE COURT:  We need to continue with Juror Number

 3    36, but Juror Number 176, who I believe is the last juror on

 4    our list, if not, second to the last, Derrick Flores, has

 5    indicated that he has a trip planned from tomorrow through the

 6    19th.  That means that he has no problem with the trial, but

 7    tomorrow he won't be able to be part of the selection.

 8              Any objection to excusing him?

 9              MR. FRISCH:  None.

10              MR. GULLOTTA:  No objection.

11              THE COURT:  Okay.

12              Privately tell Mr. Flores, Number 176 that he's

13    excused.

14              And then I guess, Barbara, you can bring in -- in a

15    little bit, I want everybody to be here.

16              Oh, you're going to do it by yourself.

17              MR. GULLOTTA:  They'll be back pretty quickly, but

18    I'm fine to start now.

19              All right, bring in Number 36.

20              Ms. Mojescik, number 36, correct?

21              (Prospective juror enters the courtroom.)

22              THE COURT:  Hi.  I think we left off with -- I'm

23    sorry, folks, do you remember where we left off with

24    Ms. Mojescik?

25              MR. GULLOTTA:  I think hobbies was the last
```

1    question.

2              THE COURT:  Hobbies.  That's what I thought.  Okay.

3              I asked you if you had hobbies other than

4    photography.

5              THE PROSPECTIVE JUROR:  Yes, correct.

6              THE COURT:  And what did you tell me?

7              THE PROSPECTIVE JUROR:  That's my hobbies.

8              THE COURT:  Those are your hobbies?  Okay.

9              And you told me -- you told us what your work was.

10   Okay.

11             I'm sorry, there are so many of you that I've been

12   speaking with over the past two days it's -- sometimes I

13   forget.

14             Your television broke, right, so you don't watch

15   much television.

16             THE PROSPECTIVE JUROR:  Actually, now we have new

17   TV, but previous two years, we didn't watch.

18             THE COURT:  Are there any TV shows or radio programs

19   that you watch or listen to on a regular basis?

20             THE PROSPECTIVE JUROR:  Actually, I don't have any

21   favorite.

22             THE COURT:  Is there any reason why you cannot be

23   fair and impartial in this case?

24             THE PROSPECTIVE JUROR:  I don't know anything of

25   this case, so I don't know that.

```
1            THE COURT:  So in order to -- well, from what you do
2    know about the case, and of course you haven't seen any of the
3    evidence yet, there's an allegation that Mr. Mackey conspired
4    with others to distribute false or misleading information on
5    the internet concerning the 2016 presidential election
6    campaign.
7            With that basic understanding of the allegations, do
8    you see any reason why you could not be fair and impartial in
9    this case?
10           THE PROSPECTIVE JUROR:  I don't know, but this is
11   really hard for me to say now.  I would try to be objective.
12           THE COURT:  You will be objective.
13           THE PROSPECTIVE JUROR:  I will try, but this is
14   really hard to...
15           THE COURT:  Is it hard in the sense that you're
16   nervous?
17           THE PROSPECTIVE JUROR:  Yeah, I'm so nervous.
18           THE COURT:  That's completely understandable.
19           THE PROSPECTIVE JUROR:  This is so...  I'm pretty
20   nervous.
21           THE COURT:  Okay.  That's completely understandable.
22           But is there anything that would -- that immediately
23   comes to your mind that says, oh, yeah, I would be favored --
24   I would favor one side over the other in this case?  I don't
25   know which side it would be, but anything comes to your mind
```

JURY SELECTION                          343

1    to make you feel that way now?

2              THE PROSPECTIVE JUROR:  I said that I have emotional

3    attachment to this case, so that was the question.

4              THE COURT:  You have an emotional --

5              THE PROSPECTIVE JUROR:  I don't have.

6              THE COURT:  That's really what we're getting at,

7    whether you have any emotional attachment or sympathy or

8    bias --

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  -- one way or the other.

11             THE PROSPECTIVE JUROR:  I don't have.

12             THE COURT:  Okay.

13             Any questions for followup?

14             MR. GULLOTTA:  No, Your Honor, thank you.

15             MR. FRISCH:  No, thank you.  We're good.

16             THE COURT:  Okay.  We are going to -- you're going

17   to continue in the jury selection, but not until tomorrow at

18   2:00.  That's -- everyone who is gone past at this point, I've

19   allowed them to go home and not come back tomorrow morning but

20   come back tomorrow afternoon.

21             So come back tomorrow afternoon to the central jury

22   room where you started off yesterday.

23             Don't talk to anybody about the case.  Don't do any

24   internet research about the case.  If you see anything about

25   it on TV, hear it on the radio, see it in your Facebook or

1    whatever, ignore it.  Don't look at it.

2              THE PROSPECTIVE JUROR:  All right.

3              THE COURT:  And if you see the parties or the

4    lawyers tomorrow in the hallway, don't talk to hem.  They're

5    not going to talk to you.  They're not being rude, it's that

6    any interaction with jurors has to be in court.  It can't be

7    outside in the halls.  Okay?

8              THE PROSPECTIVE JUROR:  Okay.

9              THE COURT:  Thank you.

10             (Prospective juror exits the courtroom.)

11             THE COURT:  Juror Number 149.  The one you know,

12   Ms. Tannenbaum?

13             How do you know her or him?

14             MS. TANNENBAUM:  We studied abroad together.

15             THE COURT:  How long ago was that?

16             MS. TANNENBAUM:  March of 20 -- year to a March of

17   2020.  January, my sincere apologies.

18             THE COURT:  Do you consider her a friend?

19             MS. TANNENBAUM:  No.

20             We are not friends.  We follow each other on social

21   media and like dinners.  Not much else.

22             THE COURT:  You don't want to take people out of the

23   order.  Tell her she's going to have to wait.

24             It may be -- she's listed -- just so you know, I

25   don't know if you see the job listings on the list.  She's

1    listed as a financial crimes and analytics associate.

2             Don't know exactly what that means, but it sounds

3    like it's in the legal or quasi-legal grounds, so there may be

4    other issues with her.

5             But I think we have to let her be for now.  Okay,

6    I'm sorry, maybe you should switch for a while.

7             Okay, the next juror is Anne Lin, Number 37.  She

8    answered affirmatively to Questions 15 and 17.

9             We are currently up to 17.

10            (Prospective juror enters the courtroom.)

11            THE COURT:  We'll go today to 5:30.

12            Good afternoon Ms. Lin.

13            THE PROSPECTIVE JUROR:  Good afternoon.

14            THE COURT:  You indicated that you have a background

15   in the law.

16            THE PROSPECTIVE JUROR:  Oh.  Yes, I used to work as

17   a labor policy researcher Cornell University.  I worked in the

18   employment disability institute, so I took a law class on the

19   Americans with Disabilities Act, which is a continuing

20   education course.

21            THE COURT:  Was that -- was that in the ILR School?

22            THE PROSPECTIVE JUROR:  Yes, I work for the ILR

23   School.

24            THE COURT:  Did you -- is that going to impact your

25   ability to be fair and impartial in this case?

1          THE PROSPECTIVE JUROR:  No, it wouldn't.

2          THE COURT:  And there should be no overlap in the

3     law, between that and this, but you have to take the law from

4     Judge Garaufis.  He'll tell you the final jury instructions

5     and what the law is.

6          You can apply his law?

7          THE PROSPECTIVE JUROR:  Yes, that's fine.

8          THE COURT:  Okay.

9          And you had indicated also that you have close

10    friends or relatives who are lawyers or work for lawyers or a

11    judge or in the courthouse.

12         Tell me about that, please.

13         THE PROSPECTIVE JUROR:  I have friends who I used to

14    work with at Prisoners Legal Services of New York.  So I used

15    to work in their comptroller -- yeah, Office of the

16    Comptroller there.  And, yeah, I have friends who are private

17    lawyers.  Friends who are in law school.  And I have some

18    friends who have retired.  Were lawyers for like EPA and what

19    else?  Oh, also I've worked in a field where I interact with

20    lawyers.

21         THE COURT:  Okay.  You are not a lawyer, though?

22         THE PROSPECTIVE JUROR:  No, I'm not.

23         THE COURT:  So my questions.

24         Your work experience with these people, friendships,

25    you may have discussed the law.  Highly unlikely that unless

1    there were any criminal practitioners, criminal law

2    practitioners, highly unlikely that there'll be any overlap

3    with the law of this case.

4            But can you put aside anything you may have learned

5    from them about the law, or learned in your own professional

6    experience about the law and judge this case fairly and

7    impartially based on the evidence presented in court and the

8    law as given to you by Judge Garaufis?

9            THE PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Okay.  So we just found out that the

11   trial is the going to start on Monday the 20th and last until

12   the Friday the 31st, at the very latest, but more likely it

13   will end earlier in that week.

14           Is there any reason were you selected to serve on

15   this jury that that would present a genuine hardship for you?

16           THE PROSPECTIVE JUROR:  There's no reason.  That

17   would be fine.

18           THE COURT:  Have you, a member of your family or

19   close friend ever been charged with a crime, convicted of a

20   crime or been the subject of a criminal investigation?

21           THE PROSPECTIVE JUROR:  Wait.  Could you repeat

22   that?

23           THE COURT:  Sure.

24           You, or a member of your family or close friend ever

25   been charged with a crime, convicted of a crime or been the

1    subject of a criminal investigation?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Tell me about it.

4              THE PROSPECTIVE JUROR:  I had one friend who had a

5    criminal drug charge.  I believe that he was possessing

6    marijuana while on a train.

7              THE COURT:  And is there anything about that that

8    would affect you ability to be fair and impartial in this

9    case?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  You or any familiar -- excuse me.  You,

12   or any family member or close friend ever been a witness to a

13   crime?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Briefly tell me about that.

16             THE PROSPECTIVE JUROR:  Okay, so myself, I had a

17   partner who stalked me, and I had to get a retraining order.

18             THE COURT:  Anything about that that would affect

19   your ability to be fair and impartial in this case?

20             THE PROSPECTIVE JUROR:  No.

21             THE COURT:  Anything else, any other witnesses of a

22   crime?

23             THE PROSPECTIVE JUROR:  Not that I can think of

24   right now.

25             THE COURT:  All these questions go to the same group

1    of people, you, a family member or a close friend.

2              Witness in a grand jury investigation or been

3    questioned in any matter by law enforcement officers, other

4    than the --

5              THE PROSPECTIVE JUROR:  The drug charge?

6              THE COURT:  -- the drug charge or the stalking.

7              THE PROSPECTIVE JUROR:  There was another friend who

8    was -- he was convicted of a drug charge, but I don't know any

9    of the details.  He's in law school now, so I think they

10   were -- they purged his record.

11             THE COURT:  What about a victim of a crime, other

12   than the stalking that you mentioned?

13             THE PROSPECTIVE JUROR:  None that I can think of

14   right now.

15             THE COURT:  The same group of people.  Anyone have

16   a -- involved in a legal action or dispute with the United

17   States, its agencies or its employees?

18             THE PROSPECTIVE JUROR:  No.

19             THE COURT:  Now this case has received some degree

20   of media attention.

21             Have you read, heard or seen anything in the media

22   about this case or about the defendant Douglass Mackey a/k/a

23   Ricky Vaughn?

24             THE PROSPECTIVE JUROR:  No, actually.

25             THE COURT:  This case involves various individuals,

1    including the defendant Douglass Mackey, who had strong

2    political preferences during the 2016 presidential election

3    campaign, including individuals who supported President Donald

4    Trump and individuals who supported presidential candidate

5    Hillary Clinton.

6              Do you have strong feelings or opinions related to

7    the 2016 presidential election campaign, or to two the

8    candidates, such that it would overcome your duty to judge the

9    facts in this case fairly and impartially?

10             THE PROSPECTIVE JUROR:  No.

11             THE COURT:  Do you have any experience with what you

12   perceive to be deliberately false or misleading information on

13   the internet or social media?

14             THE PROSPECTIVE JUROR:  Yes, to some extent.  I used

15   to work for Facebook.  At the time.

16             THE COURT:  When did you work for Facebook?

17             THE PROSPECTIVE JUROR:  Between March 2020 and

18   December -- or sorry, January 2022.

19             THE COURT:  Okay.  What did you do for Facebook?

20             THE PROSPECTIVE JUROR:  I worked as a user

21   experience researcher.

22             THE COURT:  Okay.  And during that work experience

23   you came across issues of deliberately false and misleading

24   information?

25             THE PROSPECTIVE JUROR:  I worked within internal

1  tools, and so some of those tools involved tracking

2  information.

3          THE COURT:  Okay.  Some of the information that

4  those tools tracked was deemed to be false or misleading or?

5          THE PROSPECTIVE JUROR:  It was triage process that I

6  was aware of, but I wasn't directly involved in that type of

7  project.

8          I researched like recruiting processes with like

9  sophomore and juniors use tools.

10          THE COURT:  Any other experiences with what you

11  perceive to be deliberately false or misleading information on

12  the internet or Facebook or other social media?

13          THE PROSPECTIVE JUROR:  No.

14          THE COURT:  Would any of your experiences with such

15  information affect your ability to be fair and impartial in

16  this case?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  At trial, you may hear some language

19  that you may find to be offensive, and you shouldn't assess

20  evidence based on whether you find it to be offensive or not.

21  But based on whether that evidence tends to prove or disprove

22  the elements of the crime.

23          If you found some of the evidence offensive, would

24  you be able to put aside any feelings of offensiveness and

25  objectively hear and consider the evidence fair and

1    impartially?

2          THE PROSPECTIVE JUROR:  Yes, I can consider it

3    impartially.

4          THE COURT:  You live in Brooklyn?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  How long have you lived in Brooklyn?

7          THE PROSPECTIVE JUROR:  Let's see.  Eight years.

8          THE COURT:  Do you own or do you rent?

9          THE PROSPECTIVE JUROR:  I rent.

10         THE COURT:  Do you live with anyone?

11         THE PROSPECTIVE JUROR:  Not right now.  My dog.

12   Sorry.

13         THE COURT:  Have you ever been married?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  No children?

16         THE PROSPECTIVE JUROR:  No.

17         THE COURT:  And who are you working for currently?

18         THE PROSPECTIVE JUROR:  The Financial Industry

19   Regulatory Authority, FINRA.

20         THE COURT:  And what do you do for them?

21         THE PROSPECTIVE JUROR:  I'm a principal user

22   experience researcher.

23         THE COURT:  Is that your like speciality, user

24   experience researcher?

25         THE PROSPECTIVE JUROR:  So what I do is I research

1  how people and processes do a certain type of action.  And I

2  work with a digital product team to create a solution.  And I

3  gather all the risks and hazards and understand whether or not

4  what they've built fits within that.  And I have to be

5  basically very unbiased during that process.

6         That is like even if it upsets the product team or

7  the design team, I have to tell them.  And, yeah, I've worked

8  in areas of like medical devices, aviation, and internal

9  tools.

10         THE COURT:  What is your highest level of education

11  that you completed?

12         THE PROSPECTIVE JUROR:  I have a master's degree in

13  social science.

14         THE COURT:  Have you ever served in the military?

15         THE PROSPECTIVE JUROR:  No.

16         THE COURT:  Where do you get your news from?

17  Newspapers?  Radio?  Television?  Internet?  Social media?

18  Podcasts?  All of the above?

19         THE PROSPECTIVE JUROR:  Probably all the above.  I

20  think podcasts.  Social media.  Usually -- do you mean

21  specific sources?

22         THE COURT:  Well, tell me television and any

23  particular sources from television?

24         THE PROSPECTIVE JUROR:  I watch YouTube sometimes.

25  They have like comedy videos that unpack the news.  So like

1    something along those lines.

2             But, yeah, I watch news radios that are usually

3    comedy about, you know, what's going on in the news.

4             THE COURT:  Anything broadcast television?

5             THE PROSPECTIVE JUROR:  No, I don't have access, and

6    no.

7             THE COURT:  Tell me how you use the internet and

8    social media?  What particular platforms?  How do you use

9    them?  How frequently.

10            THE PROSPECTIVE JUROR:  I use mostly Instagram.  I

11   have Instagram for my dog, and I consume product pet videos.

12            And I have a personal Instagram where I just share

13   what's going on in my life.  I have Twitter, but I don't

14   really use it.  I don't post much, I just read what's on

15   there.

16            What else?  I have LinkedIn.  More professional.

17   And I also have Facebook, which I've had since 2005, so been

18   using that consistently.

19            THE COURT:  And the frequency of your social media

20   use, it is daily?

21            THE PROSPECTIVE JUROR:  Yeah.

22            THE COURT:  Frequently?  Many times a day?

23            THE PROSPECTIVE JUROR:  Yeah.  Yeah.  Probably.

24            THE COURT:  Okay.  Are you concerned about the

25   reliability of the information that you find on the internet

1    and social media?

2            THE PROSPECTIVE JUROR:  Yes.  I try to be as

3    objective as I can be but, you know, we're all human we all

4    have own other biases so we just have to do our best.

5            THE COURT:  Will your concerns about the reliability

6    of information you find on the internet and social media

7    affect your ability to be fair and impartial in this case?

8            THE PROSPECTIVE JUROR:  I don't think it will impact

9    my ability.

10           THE COURT:  Have you ever been involved in voter

11   education, voter registration, or any "get out the vote"

12   efforts?

13           THE PROSPECTIVE JUROR:  Yes.  In 2006 I was part of

14   the John Kerry campaign all over Massachusetts as part of an

15   internship.

16           THE COURT:  And part of that was voter education and

17   registration?

18           THE PROSPECTIVE JUROR:  We reached out to

19   independent voters.

20           THE COURT:  But is that the only thing?  The only

21   time?

22           THE PROSPECTIVE JUROR:  Yeah, probably the -- yeah.

23   In regards to voting, yes.

24           THE COURT:  Other than your dog's Instagram account,

25   do you have any hobbies?

1          THE PROSPECTIVE JUROR:  Yeah, sometimes I volunteer

2     for Nightlife Events.  Like the parties.  I have friends who

3     are DJs and dancers and performers, so I will volunteer for

4     those evince.

5          And then I'm also involved in community organizing

6     to create a dog park.  And I watch a lot of like true crime

7     like murder mysteries.

8          THE COURT:  What television shows or radio programs

9     do you regularly watch or listen to, if any?

10          THE PROSPECTIVE JUROR:  Oh, Marketplace, which is --

11          THE COURT:  NPR?

12          THE PROSPECTIVE JUROR:  There's an NPR Daily.

13     There's something called like Internet Today.  They have like

14     a weekly news, you know, update every couple of days.

15          THE COURT:  All right.  Anything else that comes to

16     mind?

17          Not that it has to just...

18          THE PROSPECTIVE JUROR:  Washington Post

19     occasionally.

20          THE COURT:  Can you be fair and impartial in this

21     case?

22          THE PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Is there anything about this case that

24     would cause you to favor one side over the other?

25          THE PROSPECTIVE JUROR:  I hesitate, but it's only

1   because I have a family member who has very different views

2   then I do, but I feel like it's important to hear him out as

3   well.  Even though we have opposing views, I try to like be

4   patient and listen.  So I think no but it is also, you know,

5   like up to, you know, like hear I can't, I can't.

6          THE COURT:  Does it depend on -- so if the

7   government -- the government has the burden of proof here,

8   proof beyond a reasonable doubt that Mr. Mackey is guilty.

9          If the government would fail to meet that burden of

10  proof in your mind, it wouldn't -- it didn't -- it wouldn't

11  give you or it didn't give you sufficient evidence from which

12  you could determine beyond a reasonable doubt that Mr. Mackey

13  is guilty, would you have any hesitancy in rendering a verdict

14  of not guilty?

15         THE PROSPECTIVE JUROR:  No hesitancy.

16         THE COURT:  Flip side.

17         If the government would prove beyond a reasonable

18  doubt to you that Mr. Mackey was guilty, would you have any

19  hesitancy in rendering a verdict of guilty?

20         THE PROSPECTIVE JUROR:  No.

21         THE COURT:  Will you be able to set aside any

22  sympathies or biases you may have for any of the parties in

23  this case and render an impartial verdict based solely on the

24  evidence presented in court and the law as given to you by

25  Judge Garaufis?

1        THE PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Any follow-up questions for Ms. Lin?

3        MR. GULLOTTA:  No, Your Honor.

4        MR. FRISCH:  No, Your Honor.  Thank you.

5        THE COURT:  Thank you, Ms. Lin.

6        So you have made it past this round.  We're going to

7  continue the jury selection with your colleagues now.  We are

8  far short of the number that we need for -- to pick the jury,

9  so we're going to have to continue tomorrow.

10       But you are excused -- you're not excused, I'm

11 sending you home, or to wherever you want to go, and you need

12 to come back tomorrow at 2 p.m. to continue the selection.

13       At that point I hope we have -- we'll have enough

14 folks for our pool from which we will exercise, or the lawyers

15 will exercise their preemptory challenges and come up to a

16 jury.

17       Don't talk to anyone about the case.  Don't do any

18 internet research.  If you see anything on the internet, on

19 TV, in the papers, ignore it.

20       If you see the lawyers in the hall, they're not

21 going to talk to you.  They're not being rude.  You shouldn't

22 talk to them.  Interactions can only happen in a courtroom.

23       If anyone approaches you about the case and wants to

24 talk to you about it, you need to let me know.  Okay?

25       THE PROSPECTIVE JUROR:  Okay.

```
 1                THE COURT:  All right.  Thank you.

 2                (Prospective juror exits the courtroom.)

 3                THE COURT:  Candace Webb, Number 38, is next.  She

 4      answered affirmative to Questions 12, 15 and 19.

 5                (Prospective juror enters the courtroom.)

 6                THE COURT:  Good afternoon, Ms. Webb.

 7                THE PROSPECTIVE JUROR:  Good afternoon, Judge.

 8                THE COURT:  You indicated that you have served on

 9      the jury before.

10                THE PROSPECTIVE JUROR:  Yes, I have.

11                THE COURT:  Can you tell me about that, please.

12                THE PROSPECTIVE JUROR:  Yes.  It was for state and I

13      was in Queens.  Long Island City.  It was a small case

14      against -- it was between a citizen and Port Authority.

15                THE COURT:  So it was not a criminal case, it was a

16      civil case.

17                THE PROSPECTIVE JUROR:  Yes.

18                THE COURT:  And how long ago was that?

19                THE PROSPECTIVE JUROR:  I believe it was 2016.

20                THE COURT:  Okay.  And did you render a verdict?

21                THE PROSPECTIVE JUROR:  Yes.

22                THE COURT:  Okay.  You also indicated that you have

23      a background in the law, or have taken courses in the law.

24                THE PROSPECTIVE JUROR:  Yeah, I have an accounting

25      degree that I took in college.  So one of the requirements was
```

1    doing law, business law, particularly.

2              THE COURT:  All right, this case -- so that's the

3    only course you took, business law course?

4              THE PROSPECTIVE JUROR:  I believe I also did just

5    normal other courses in regards to law.

6              But with my major, I did more into business law.

7              THE COURT:  Okay.

8              THE PROSPECTIVE JUROR:  Yeah.

9              THE COURT:  When it comes time for the jury to

10   deliberate, the judge will instruct the jury on the law.

11   Judge Garaufis will do that.  He'll tell you what the law is

12   that you have to apply to the facts that you find.  You have

13   to take the law from Judge Garaufis.  You can't apply any

14   other law that you think might exist or should exist or that

15   you learned about.

16             Can you do that?

17             THE PROSPECTIVE JUROR:  Yeah, I'll be able do that.

18             THE COURT:  You, or a family member, close friends

19   have relationships with law enforcement officers?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Tell me, please.

22             THE PROSPECTIVE JUROR:  It's my dad.  He has a close

23   friend, I believe it's a retired detective.

24             THE COURT:  With the New York City Police

25   Department?

1          THE PROSPECTIVE JUROR:  I believe so, yes.

2          THE COURT:  Is there anything about that

3    relationship that would affect your ability to be fair and

4    impartial in this case.

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  I don't know if you've learned anything

7    about the law from him, but same thing with your business law

8    courses.  It's Judge Garaufis, he's the arbiter of the law

9    here.

10         You can follow his law?

11         THE PROSPECTIVE JUROR:  Uh-huh, yes.  Understand.

12         THE COURT:  Okay, great.

13         So the case is going to start, the trial, on Monday

14   March 20th.  Judge Garaufis just moved it slightly and it's

15   set to conclude no later than March 31st.

16         Is there any reason why severing on the jury during

17   that period of time would cause you a genuine hardship?

18         THE PROSPECTIVE JUROR:  I don't believe so.  I just

19   have engagements for the end of April.  So I don't believe it

20   has any...

21         THE COURT:  If the trial's still going on then, we

22   got a problem.  Not happening.

23         Have you, a family member or close friend ever been

24   charged with a crime, convicted of a crime, been the subject

25   of a criminal investigation, a witness to a crime, involved in

1   a grand jury investigation, or questioned by law enforcement,

2   or a victim of a crime?

3            THE PROSPECTIVE JUROR:  Not to my knowledge, no.

4            THE COURT:  What about the same group of people,

5   you, family member or close friend ever been a party to a

6   legal action or dispute against the United States any of its

7   agencies or employees?

8            THE PROSPECTIVE JUROR:  No.

9            THE COURT:  Now this case has received some degree

10  of media attention.

11           Have you read, heard or seen anything in the media

12  about this case or about the defendant Douglass Mackey,

13  otherwise known as Ricky Vaughn?

14           THE PROSPECTIVE JUROR:  No, I haven't.

15           THE COURT:  This case involve individuals, including

16  the defendant Douglass Mackey, who had strong political

17  preferences during the 2016 presidential election campaign,

18  including individuals who supported President Donald Trump and

19  individuals who supported presidential candidate Hillary

20  Clinton.

21           Do you have strong feelings or opinions related to

22  the 2016 presidential election campaign, or to those two

23  candidates, such that it would overcome your duty to be fair

24  and impartial in the case?

25           THE PROSPECTIVE JUROR:  No.

1              THE COURT:  Do you have any experience with what you

2     perceive to be false, deliberately false or misleading

3     information on the internet or social media?

4              THE PROSPECTIVE JUROR:  In regard to this case?

5              THE COURT:  In regards to anything.

6              THE PROSPECTIVE JUROR:  No, I don't believe so.

7              THE COURT:  At trial, you may hear some language

8     that you may find to be offensive.  You should not assess that

9     evidence based on whether you find it to be offensive or not,

10    but whether rather -- whether that evidence tends to prove or

11    disprove the elements of the crime.

12             If you found some evidence to be offensive, would

13    you be able to put aside your feelings about its offensiveness

14    and objectively hear and consider the evidence impartially and

15    fairly?

16             THE PROSPECTIVE JUROR:  Yeah.  Uh-huh.

17             THE COURT:  You live in Jamaica?

18             THE PROSPECTIVE JUROR:  Right.

19             THE COURT:  How long?

20             THE PROSPECTIVE JUROR:  All my life.

21             THE COURT:  Do you own, do you rent, or neither?

22             THE PROSPECTIVE JUROR:  I rent.

23             THE COURT:  You rent, okay.

24             Do you live with anyone?

25             THE PROSPECTIVE JUROR:  Yes, I do.

JURY SELECTION                                      364

1          THE COURT:  Who did you live with?

2          THE PROSPECTIVE JUROR:  With my two parents.

3          THE COURT:  What do they do for a living?

4          THE PROSPECTIVE JUROR:  My parents and my sister.

5     My mom does not have an occupation.  And my dad is a

6  TLC driver.

7          THE COURT:  And your sister's working?

8          THE PROSPECTIVE JUROR:  No, she's in high school.

9  She's 17.

10         THE COURT:  And what do you do for a living?

11         THE PROSPECTIVE JUROR:  I work at Clariton

12  (phonetic).

13         THE COURT:  In what capacity?

14         THE PROSPECTIVE JUROR:  I work in customer

15  operations.

16         THE COURT:  Married?  Children?

17         THE PROSPECTIVE JUROR:  No.  No to both of them.

18         THE COURT:  What's the highest level of education

19  you completed?

20         THE PROSPECTIVE JUROR:  My bachelor's in accounting.

21         THE COURT:  Ever served in the military?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Where do you get your news from?

24  Newspapers?  Radio?  TV?  Internet?  Social media?  Podcasts?

25  Other places?

JURY SELECTION                    365

1              THE PROSPECTIVE JUROR:  Podcasts.

2              THE COURT:  Any particular podcasts that you watch

3    or I guess listen to?

4              THE PROSPECTIVE JUROR:  Axios.

5              THE COURT:  Recently?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  What is it called?

8              THE PROSPECTIVE JUROR:  Axios.  It's a podcasts on

9    Apple.

10             THE COURT:  It's a news -- it's about news?

11             THE PROSPECTIVE JUROR:  Uh-huh.

12             THE COURT:  Do you use internet and social media?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  What platforms?  How do you use them and

15   how frequently?

16             THE PROSPECTIVE JUROR:  I have Instagram.  And

17   Snapchat.  What else do I have?

18             THE COURT:  Facebook?

19             THE PROSPECTIVE JUROR:  Facebook.

20             THE COURT:  Twitter.

21             THE PROSPECTIVE JUROR:  Not Twitter, no.

22             THE COURT:  TikTok.

23             THE PROSPECTIVE JUROR:  TikTok, yes, I do use it,

24   but not -- not right now because it's live and I have a job.

25             THE COURT:  Are you at all concerned about the

1    reliability of information you find on the internet and social

2    media?

3                    THE PROSPECTIVE JUROR:  I'm sorry, can you repeat

4    that?

5                    THE COURT:  Are you concerned at all about the

6    reliability -- excuse me, the reliability of information that

7    you find on the internet and social media?

8                    THE PROSPECTIVE JUROR:  Oh, yes, I know not

9    everything is credible sources.

10                   THE COURT:  Well, will your concern about the

11   reliability of information on the internet and social media

12   affect your ability to be fair and impartial in this case?  In

13   other words, can you decide this case based on the evidence

14   presented in court, rather than your concern that you may have

15   seen false or misleading information somewhere else on the

16   internet?

17                   THE PROSPECTIVE JUROR:  Yes.  I will be.

18                   THE COURT:  Or social media?

19                   Have you ever been involved in voter education,

20   voter registration or any "get out the vote" efforts?

21                   THE PROSPECTIVE JUROR:  No.

22                   THE COURT:  Do you have any hobbies?

23                   THE PROSPECTIVE JUROR:  Yeah, I do.

24                   THE COURT:  What are they?

25                   THE PROSPECTIVE JUROR:  I read a lot.  And I also

1   dance.  So dance and reading.

2            THE COURT:  What television shows or radio programs

3   do you regularly watch or listen to?  Not news related.

4            THE PROSPECTIVE JUROR:  I don't really listen to the

5   radio.  But I watch a lot of like shows on different platforms

6   like Netflix or Hulu.

7            THE COURT:  Can you be fair and impartial in this

8   case?

9            THE PROSPECTIVE JUROR:  Uh-huh.  Correct.

10            THE COURT:  Is there anything about this case that

11   would cause you to favor one side over the other?

12            THE PROSPECTIVE JUROR:  No.

13            THE COURT:  Will you be able to set aside any

14   sympathies or biases you may have for any of the parties in

15   this case and render an impartial verdict based solely on the

16   evidence presented in court and the law as given to by

17   Judge Garaufis?

18            THE PROSPECTIVE JUROR:  Yes.

19            THE COURT:  Any questions?  Follow up?

20            MR. GULLOTTA:  No, Your Honor.  Thank you.

21            MR. FRISCH:  No questions.

22            THE COURT:  Ms. Webb, you have made it past this

23   round.  You're going to have to come back tomorrow at 2 p.m.

24   to continue.  Hopefully at that point we'll have enough folks

25   that we can pick our jury, and it will be over tomorrow

1   afternoon.  Well, the selection will be over.

2          You can go home now.  Please do not do any internet

3   research about this case or about Mr. Mackey.

4          Do not talk to anyone about it.  You can simply say

5   I'm in jury selection in a criminal case.

6          If you see any of the parties or the lawyers, don't

7   talk to them.  They will not talk to you.  They are not being

8   rude, they're simply following the rules, which require all

9   contact with jurors to be in court.

10          If anyone approaches you about this case, please let

11   me know.  Okay?  And you can do that through Miriam or my law

12   clerks.  All right?

13          THE PROSPECTIVE JUROR:  Okay.

14          THE COURT:  Have a great evening.

15          THE PROSPECTIVE JUROR:  Thank you, Judge.

16          (Prospective juror exits the courtroom.)

17          (Pause in the proceedings.)

18          THE COURT:  Juror Number 82, Ms. Fizza Aijaz, has

19   indicated that she's missed two classes already and she has a

20   lab tomorrow that she is going to miss unless she is excused.

21          Any objection to excusing her?

22          MR. GULLOTTA:  No objection, Your Honor.

23          THE COURT:  All right.  Tell Ms. Aijaz -- quietly

24   tell, Ms. Aijaz, Juror Number 82, that she is excused.  Pull

25   her outside before you do that.

JURY SELECTION                                  369

1            THE COURTROOM DEPUTY:  92, it's an interpreter, and

2    has an appointment seeing a client at Hackensack Hospital at

3    11:30.  I didn't ask what language.

4            THE COURT:  Rafiq Chowdhury, Juror Number 92.

5            How many more do you have?

6            (Discussion was had off the record.)

7            THE COURT:  Mr. Chowdhury, Juror Number 92 has --

8    he's an interpreter, he has to interpret tomorrow at 11:00 at

9    a hospital.

10           THE COURTROOM DEPUTY:  Hackensack Hospital.

11           MR. FRISCH:  No objection.

12           MR. PAULSEN:  No objection.

13           THE COURT:  Excuse Mr. Chowdhury.

14

15           (Continued on the following page.)

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  What we're going to do, unless there's

2     any objection is jurors -- there's seven people we can get

3     through today maybe.

4          MR. GULLOTTA:  Let's do it.

5          THE COURT:  Jurors through number 45 have to stay.

6     Everyone else can leave and come back tomorrow at 9:15.  Give

7     them the other information that jury selection will continue

8     tomorrow at 9:15, trial is Monday the 20th and tell --

9     actually, you know what -- we've got to give them warnings

10    about research.

11         MR. FRISCH:  We do.

12         THE COURT:  I'm going to go to the Central Jury Room

13    and give them the instruction before they go.

14         (Pause in proceedings.)

15         (Continuing in Central Jury Room.)

16         THE COURT:  Can everyone hear me back there?  I'll

17    give it a minute for your colleagues to filter in.  I want to

18    say this once and not twice.  Those of you not in the room,

19    make sure you can hear me because it's important that you know

20    what's going on.  If you can't hear me get closer.

21          Folks, a couple of things:  Judge Garaufis has moved

22    the trial to Monday, March 20th through Friday, March 31st at

23    the latest.  It's just like the period we had before.  It's

24    likely that the trial isn't going to go all the way to March

25    31st.  It's probably going to end before then but we wanted to

1    give you enough warning so you can leave enough time if you're

2    selected for this jury.

3          Process is taking far longer than I had hoped.  I

4    have been a magistrate judge for 17 years.  I have picked

5    dozens of juries and only once has it taken me two days to

6    pick a jury, which we've already hit, so this is unusual and I

7    apologize and I'll take the blame for that.

8          We're going to let many of you go today and come

9    back tomorrow.  I don't want to hold you here unnecessarily

10   and we're not going to be able to get to everyone today.  So

11   jurors with a number 46 or higher can go home now or go

12   somewhere else.  You don't have to stay here, but wait, wait.

13   This is very important:  Do not do any internet research on

14   this case or on the defendant.  If you see anything in the

15   news on TV, hear anything on the radio, it comes up on your

16   Facebook feed, whatever, I go know it.  Turn it off, don't

17   listen to it.  Don't talk to anybody about the case.  If

18   anyone asks you, a spouse, kids, whatever, just say I'm in the

19   process of a jury selection to serve on a criminal case.

20   That's it.

21         If you see the lawyers or the parties in the hall

22   tomorrow morning, don't talk to them.  They're not going to

23   talk to you.  It's not because they're being rude, it's

24   because they're following the rules.  Interactions between the

25   parties and the lawyers and the jurors can only take place in

1    the courtroom.

2            Now, this is very, very important, if anyone

3    approaches you about this case outside of the court, anywhere,

4    please let me know.  People are not supposed to contact

5    jurors, prospective jurors, about anything.  So leave them

6    alone and let the process unfolds as it does.

7            So, again, trial Monday the 20th through Friday, the

8    31st, Jurors  46 and higher can go home, come back tomorrow,

9    and those up to 45 stay here, we hope to get to you tonight

10   and it's my sincere hope.  Come tomorrow at 9:15.  Can you do

11   9 o'clock.

12           PROSPECTIVE JUROR NO. 100:  I can't.

13           THE COURT:  9 o'clock for everybody.

14           Juror No. 100,  you can come at 9:15.

15           Thank you, everyone.

16           (Pause in proceedings.)

17           (Continuing in Courtroom 2E.)

18           THE COURT:  Juror No. 39, Audrian Ashman.

19           (Prospective juror enters.)

20           THE COURT:  Good afternoon, Ms. Ashman.  Sorry to

21   keep you waiting.  Judge Garaufis has adjusted the trial

22   schedule.  The trial will start on Monday, March 20th, and

23   will last until March 31st at the very latest.

24           Is there any reason why that would cause you a

25   general hardship if you were able to sit on this jury?

JURY SELECTION                              373

1              THE PROSPECTIVE JUROR:  No.

2              THE COURT:  Have you, a family member or close

3    personal friend ever been charged with a crime, convicted of a

4    crime, been the subject of a criminal investigation, been

5    witness to a crime, been subject of a grand jury investigation

6    or the victim of a crime?  Basically has anyone in your family

7    or close friends ever been involved in the criminal justice

8    system?

9              THE PROSPECTIVE JUROR:  Never.

10             THE COURT:  Have you, a family member or close

11   friend ever been a party to a legal action against or had a

12   dispute with the United States of America, its agencies or

13   employees?

14             THE PROSPECTIVE JUROR:  Never.

15             THE COURT:  Now, this case has received some degree

16   of media attention.  Have you heard, read or seen anything in

17   the media about this case or about the defendant Douglas

18   Mackey otherwise known as Ricky Vaughn?

19             THE PROSPECTIVE JUROR:  No.

20             THE COURT:  This case involves various individuals

21   including the defendant Douglas Mackey who had strong

22   political preferences during the 2016 presidential election

23   campaign including individuals who supported President Donald

24   Trump and individuals who supported presidential candidate

25   Hilary Clinton.

JURY SELECTION                                    374

1          Do you have strong feelings or opinions related to

2     the 2016 presidential election campaign or those candidates

3     such that it would overcome your duty to be fair and impartial

4     in this case?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  Do you have any experience with what you

7     perceived to be deliberately false and misleading information

8     on the internet or social media?

9          THE PROSPECTIVE JUROR:  No.

10         THE COURT:  At trial you will hear some language

11    that you will find to be offensive.  You should not assess

12    that evidence on whether you find it to be offensive or not

13    but rather on whether that evidence tends to prove or

14    disapprove the elements of the crime.  If you found some of

15    the evidence to be offensive would you be able to put aside

16    your feelings about its offensiveness and judge that evidence

17    fairly and objectively, yes or no?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  You live in Howard Beach?

20         THE PROSPECTIVE JUROR:  Yes.

21         THE COURT:  How long?

22         THE PROSPECTIVE JUROR:  An hour.

23         THE COURT:  How long have you lived there?

24         THE PROSPECTIVE JUROR:  Ten years.

25         THE COURT:  I laughed because a number of jurors

1    said half an hour.  Okay, ten years, good.  Do you own or do

2    you rent?

3              THE PROSPECTIVE JUROR:  I own.

4              THE COURT:  Do you live with anyone?

5              THE PROSPECTIVE JUROR:  I live with my son, my

6    daughter-in-law and my daughter.

7              THE COURT:  Do they all work?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  What does your son, your

10   daughter-in-law and your daughter do for a living?

11             THE PROSPECTIVE JUROR:  My son is an electrician.

12   My daughter works for The Post Office and my daughter-in-law

13   is a 911 operator.

14             THE COURT:  Are you working?

15             THE PROSPECTIVE JUROR:  Yes.

16             THE COURT:  What do you do for a living?

17             THE PROSPECTIVE JUROR:  I'm a nursing assistant.

18             THE COURT:  What is the highest level of education

19   that you completed?

20             THE PROSPECTIVE JUROR:  High school.

21             THE COURT:  Have you ever served in the military?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Where do you get your news from;

24   newspapers, radio, television, internet, social media,

25   podcasts?

JURY SELECTION                                         376

1             THE PROSPECTIVE JUROR:  Sometimes I watch the news

2    if I get a chance, or if I'm at work and the news come on I

3    watch a little bit, but I don't have time to watch the news.

4             THE COURT:  When you do watch at home, are there any

5    particular channels that you watch the news on?

6             THE PROSPECTIVE JUROR:  No, no, not really.

7             THE COURT:  Do you use the internet or social media?

8             THE PROSPECTIVE JUROR:  Not internet -- no, not

9    really.

10            THE COURT:  Do you have a Facebook account, Twitter,

11   Instagram, Snapchat?

12            THE PROSPECTIVE JUROR:  No.

13            THE COURT:  Have you ever been involved in voter

14   education or voter registration or any get out and vote

15   efforts?

16            THE PROSPECTIVE JUROR:  No.

17            THE COURT:  Do you have a hobbies?

18            THE PROSPECTIVE JUROR:  Not really.

19            THE COURT:  Okay.  Are there any television shows or

20   radio programs that you regularly watch or listen to?

21            THE PROSPECTIVE JUROR:  Yes.  I like to watch NYPD

22   Blue on Sunday nights when I'm home and I like Fire.  It comes

23   on, I think, Friday nights when I'm home.

24            THE COURT:  What about radio?

25            THE PROSPECTIVE JUROR:  No.

*SN       RPR       OCR*

1              THE COURT:  Is there any reason why you can't be a

2    fair and impartial juror in this case?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Is there anything about this case that

5    would cause you to favor one side over the another?

6              THE PROSPECTIVE JUROR:  No.

7              THE COURT:  Will you be able to set aside any

8    sympathies or biases you may have for any of the parties in

9    this case and render an impartial verdict based solely on the

10   evidence presented in court and the law as given to you by

11   Judge Garaufis?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Any follow-up questions for Ms. Ashman?

14             MR. GULLOTTA:  No, Your Honor.  Thank you.

15             MR. FRISCH:  No, thank you.

16             THE COURT:  Thank you, Ms. Ashman.  You've made it

17   past this part.  You can go home now.  You need to come back

18   tomorrow at 2 p.m. and please don't do any internet research

19   on this case or on the defendant, Douglas Mackey if I .  You

20   see anything on the TV or read anything in the papers, put it

21   away, don't watch it.  Don't talk with anyone about the case

22   and if you see the lawyers in the halls tomorrow, they're not

23   going to talk to you.  You don't talk to them.  They're not

24   being rude.  They're just fog the rules.  If anyone approaches

25   you about the case tomorrow, let me know.  Okay.  Thank you.

1          (Prospective juror exits.)

2          THE COURT:  Folks, Juror No. 41, Ms. Chua has

3     prepaid travel from March 25th -- starting on March 25th.

4     Excuse her?

5          MR. GULLOTTA:  The Government does not object.

6          MR. FRISCH:  No objection.

7          THE COURT:  And 43 has a medical appointment on

8     March 21st.  I am inclined to excuse them both.  That's Adam

9     Wollman.

10          MR. GULLOTTA:  To the extent that he does have that

11    medical appointment, the Government does not object.

12          THE COURT:  Mr. Frisch?

13          MR. FRISCH:  I have a couple of concerns.  They may

14    have figured out what they need to say to go.  So it might be

15    worthy -- I don't know.  I'll follow Your Honor's --

16          THE COURT:  I don't like calling people a liar.

17          MR. FRISCH:  That's not what I was saying.

18          THE COURT:  Let's go in order.  Let's bring in

19    Ms. Berkalieva and then we'll talk to Ms. Chua or do you mind

20    taking them out of order?

21          MR. FRISCH:  I don't mind taking them out of order.

22          THE COURT:  Bring in Ms. Chau first.  I will note

23    that Ms. Chau did raise her paddle to the travel question and

24    so did Mr. Wollman.

25          (Prospective juror enters.)

1            THE COURT:  Good afternoon -- good evening,

2    Ms. Chau.

3            THE PROSPECTIVE JUROR:  Hi.

4            THE COURT:  Juror No. 41.  You indicated that you

5    have either prepaid vacation plans or confirmed medical

6    appointments over the next two weeks that cannot be moved; is

7    that correct?

8            THE PROSPECTIVE JUROR:  Correct.

9            THE COURT:  Where are you going?

10           THE PROSPECTIVE JUROR:  I'm going to Taiwan on the

11   evening of March 25th.

12           THE COURT:  And when he will you be coming back?

13           THE PROSPECTIVE JUROR:  April 23rd.

14           THE COURT:  You have confirmed tickets?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  How long ago did you make this plan?

17           THE PROSPECTIVE JUROR:  Maybe about six weeks ago.

18           THE COURT:  Okay.  Who are you going to visit, if

19   anyone?

20           THE PROSPECTIVE JUROR:  It's for a family event.

21           THE COURT:  What is the event?

22           THE PROSPECTIVE JUROR:  My brother's wedding.

23           THE COURT:  Any objection to excusing Ms. Chau.

24           MR. GULLOTTA:  No objection, Your Honor.

25           MR. FRISCH:  No objection, Judge.

 1              THE COURT:  You're excused.

 2              THE PROSPECTIVE JUROR:  Thank you.

 3              THE COURT:  Go to the Central Jury Room and they'll

 4     give you further instructions.

 5              THE PROSPECTIVE JUROR:  Thank you.

 6              (Prospective juror exits.)

 7              THE COURT:  Number 43, Mr. Wollman.

 8              (Prospective juror enters.)

 9              THE COURT:  Good evening, Mr. Wollman?

10              THE PROSPECTIVE JUROR:  Good evening.

11              THE COURT:  You indicated that you have either

12     prepaid vacation plans or confirmed medical appointments that

13     could not be moved over the next two weeks; is that correct?

14              THE PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Tell me about it.  You have a medical

16     appointment; is that right?

17              THE PROSPECTIVE JUROR:  Yes.

18              THE COURT:  And that's on March 21st?

19              THE PROSPECTIVE JUROR:  Yes.

20              THE COURT:  How long ago did you schedule that

21     medical appointment?

22              THE PROSPECTIVE JUROR:  I want too say a few months

23     ago.

24              THE COURT:  And that is not something that you can

25     move?

1          THE PROSPECTIVE JUROR:  I'm not 100 percent sure, to

2   be honest.

3          THE COURT:  Is it anything other than a regular

4   checkup with your primary care physician?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Okay.  And you did this a couple of

7   months ago?

8          THE PROSPECTIVE JUROR:  Yes, back in January.

9          THE COURT:  I do not really want to, on the record,

10  get into what it is and I will have to trust you.  You're a

11  fitness coach, right?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Do you work for yourself or someone

14  else?

15         THE PROSPECTIVE JUROR:  For myself.

16         THE COURT:  Any objection to excusing Mr. Wollman?

17         MR. GULLOTTA:  No, Your Honor.

18         MR. FRISCH:  No.

19         THE COURT:  Mr. Wollman, you're excused.  You can go

20  to the Central Jury Room where you started off this morning

21  and they'll give you further instructions.

22         THE PROSPECTIVE JUROR:  Thank you.

23         (Prospective juror exits.)

24         THE COURT:  Number 40, Ms. Berkalieva.

25         (Prospective juror enters.)

JURY SELECTION                          382

1          THE COURT:  Good afternoon, Ms. Berkalieva?

2          THE PROSPECTIVE JUROR:  Correct.

3          THE COURT:  You did not raise your juror number to

4    any of the questions in the main room.

5          THE PROSPECTIVE JUROR:  I was on the fence about a

6    couple of them, so --

7          THE COURT:  Do you remember which ones?

8          THE PROSPECTIVE JUROR:  Yes.  So, it's the do you

9    have any close friends who are lawyers.  My best friend's

10   husband is a lawyer.  Does that count?  He's an intellectual

11   property attorney general.

12         THE COURT:  I mean, is he a close friend of yours?

13         THE PROSPECTIVE JUROR:  We don't really text.

14         THE COURT:  So, that's the measure of closeness

15   whether you text or not?

16         THE PROSPECTIVE JUROR:  Yeah.  And there's another

17   one; can you be unbiased and completely impartial.  I was

18   really unsure about that and I thought about it when I got

19   home.

20         THE COURT:  Let me ask you first about the lawyer

21   relationship question.  Ultimately that question goes to a

22   couple of things; one, whether you've learned anything about

23   the law through this relationship and, if you have, whether

24   you can set aside what you've learned about the law and judge

25   this case based on the law that's given to you by the

1    presiding judge, Judge Garaufis?

2            THE PROSPECTIVE JUROR:  I definitely did not learn

3    about the law from him.

4            THE COURT:  So you can take Judge Garaufis'

5    instructions and apply them to the facts that you find?

6            THE PROSPECTIVE JUROR:  Yeah.

7            THE COURT:  Okay.  Now, tell me about the other

8    issue.

9            THE PROSPECTIVE JUROR:  The one about can you set

10   aside your -- like, I forget what it was.  There were a couple

11   about similar sounding can you be truly unbiased and then I'm,

12   like, sure I can and then I got home and how I think messing

13   with elections is very serious and I don't know if I can be

14   unbiased with my preexisting beliefs.

15           THE COURT:  Let me ask you about that.  In a case,

16   any sort of court case, it's determined by the evidence

17   presented in court and the law that's applied.  The jurors are

18   for deciding what the facts are based on the evidence and they

19   have to apply the law that's given by the judge to those facts

20   to determine what the outcome will be, what the verdict will

21   be.  In a criminal case it's whether the Government has

22   satisfied its burden to prove beyond a reasonable doubt that

23   the defendant is guilty and the jurors have to do that; find

24   the facts and accept the law and put aside any -- any

25   sympathies they may have or prejudices or feelings and decide

1   it based on the evidence and do that fairly and impartially

2   and there are often times when the case involves issues that

3   are -- that people have strong feelings about.

4                THE PROSPECTIVE JUROR:  Which I do.

5                THE COURT:  The integrity of elections, for example.

6   But the question is not whether you have strong feelings.  The

7   question is whether you can put aside those feelings and judge

8   the case based on what is presented in court and whether the

9   Government has or has not met its burden of proof.

10               THE PROSPECTIVE JUROR:  I mean, yeah, I guess in a

11  perfect world I would be able to do that and I would want to

12  be able to do that.

13

14               (Continued on the following page.)

15

16

17

18

19

20

21

22

23

24

25

JURY SELECTION                           385

1

2          THE COURT:  The question is do you think you can do

3    that here?

4          THE PROSPECTIVE JUROR:  Yes.  I think I could but I

5    would have strong beliefs about it personally but, again,

6    that's besides the point.

7          THE COURT:  So you do have strong beliefs but can

8    you, but you can put them aside?

9          THE PROSPECTIVE JUROR:  Yes.  Of course I'm not

10   going to, like, like, impart my beliefs on, like, a person's

11   fate despite the evidence.  I would never do that.

12         THE COURT:  Let me ask the question a different way.

13         If the evidence were presented by the government and

14   you would look at it and say, yes, they didn't meet their

15   burden of proof, the evidence does not prove beyond a

16   reasonable doubt that Mr. Mackey is guilty, it doesn't, would

17   your strong beliefs in the integrity of elections or anything

18   overcome the government's failure --

19         THE PROSPECTIVE JUROR:  It would not, it would not

20   overcome the proof.

21         THE COURT:  Okay.  And the flip side is if the

22   government meets its burden of proof, would you have any

23   hesitancy irrespective of your personal beliefs with finding

24   Mr. Mackey guilty?

25         THE PROSPECTIVE JUROR:  No.

1             THE COURT:  Okay.

2             THE PROSPECTIVE JUROR:  There was another question

3    too that I was on the fence about, this is the last one,

4    about, like, opinions about the police and I did not raise my

5    hand about that but I have some beliefs there too.  Would

6    they -- to your point, I believe you said I would not impart

7    them, I would not let them, like, sway my decision about which

8    way to vote, but I did not raise my hand for that but I do

9    have strong beliefs about the police.  So I don't have any

10   past experiences with the police nor do I have close friends

11   who have personally been, like, victimized by the police, but

12   I do have political opinions about that.

13            THE COURT:  But those strong political opinions,

14   beliefs, will not overcome --

15            THE PROSPECTIVE JUROR:  No.

16            THE COURT:  -- your decision here?

17            THE PROSPECTIVE JUROR:  No.

18            THE COURT:  Okay.  So the trial is going to start on

19   March 20th.  Judge Garaufis moved it.  It's going to last, the

20   latest, March 31st.  More likely before then, it will end.  Is

21   there any reason why this would cause you a genuine hardship?

22            THE PROSPECTIVE JUROR:  No.

23            THE COURT:  Have you, a family member or close

24   friend ever been charged with a crime, convicted of a crime,

25   been the subject of a criminal investigation, been a witness

JURY SELECTION                    387

1   to a crime, been a witness in a grand jury proceeding,

2   questioned by law enforcement or been a victim of a crime?  In

3   other words, have you, a family member or a close friend ever

4   been involved in the criminal justice system?

5           THE PROSPECTIVE JUROR:  A couple of friends of mine

6   have been robbed at gunpoint before.

7           THE COURT:  Okay.

8           THE PROSPECTIVE JUROR:  I don't know if that counts.

9           THE COURT:  No, that counts.  You, family or close

10  friends.  Would that affect your ability to be fair and

11  impartial in this case?

12          THE PROSPECTIVE JUROR:  No.

13          THE COURT:  Have you, a family member or close

14  friend ever been a party to a legal action or had a dispute

15  against the United States, its agencies or employees?

16          THE PROSPECTIVE JUROR:  No, I don't think so.

17          THE COURT:  Now, this case has received some degree

18  of media attention.  Have you heard, read or seen anything

19  about this case on the media or about the defendant Douglass

20  Mackey, otherwise known as Ricky Vaughn?

21          THE PROSPECTIVE JUROR:  I did Google it yesterday

22  when I got home.

23          THE COURT:  Okay.

24          THE PROSPECTIVE JUROR:  I'm sorry.

25          THE COURT:  What did you see?

1              THE PROSPECTIVE JUROR:  A couple of articles, a Vice

2      article.

3              THE COURT:  A Vice article?

4              THE PROSPECTIVE JUROR:  Or NBC article.  I don't

5      know.  A couple of top hits and then I stopped.

6              THE COURT:  You read them?

7              THE PROSPECTIVE JUROR:  I skimmed them.  I didn't

8      read them, the details.

9              THE COURT:  Have you formed any ideas, opinions or

10     conclusions about the facts of this case or about Mr. Mackey

11     based on your viewing of those articles yesterday?

12             THE PROSPECTIVE JUROR:  Have I formed an opinion?

13             THE COURT:  Yes.

14             THE PROSPECTIVE JUROR:  About the case based on

15     those articles?  I have.

16             THE COURT:  And, remember, in a court case, any

17     court case, the only evidence is what is presented in court.

18     It's not what some --

19             THE PROSPECTIVE JUROR:  Yes.

20             THE COURT:  -- blogger writes about or newspaper

21     person writes about or anything like that.  It's what happens.

22     It's what's produced here.

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  So, again, do you have any ideas or

25     opinions or conclusions, have you come to a conclusion about

1    whether Mr. Mackey is guilty or not based upon reading those

2    articles?

3            THE PROSPECTIVE JUROR:  I mean, I guess just

4    answering your question very specifically, like, can I

5    honestly make a, say what I think happened?  No, I guess,

6    because it was some articles, but I did read them.

7            THE COURT:  Okay.  If you were selected as a juror

8    with the knowledge that you had read these articles, and the

9    government presented evidence and you concluded, based on the

10   evidence, that the government failed to meet its burden of

11   proof, it has not established beyond a reasonable doubt that

12   Mr. Mackey is guilty, would you have any hesitancy in

13   rendering a verdict of not guilty after having read those

14   articles which are not evidence?

15           THE PROSPECTIVE JUROR:  I would stick to what was

16   presented in the trial because I would feel guilty about using

17   the information outside of the trial to make a decision.  That

18   would not be good.

19           THE COURT:  So are you able to set aside what you

20   read in those articles and judge this case based on the

21   evidence presented in the courtroom?

22           THE PROSPECTIVE JUROR:  I think so, yeah, I would

23   like to think I could.

24           MR. FRISCH:  Can we approach, Judge?

25           THE COURT:  Yes.

1          (The following occurred at sidebar.)

2          MR. FRISCH:  Challenge for cause.  She said she had

3  opinions.  She Googled the story already, saw the headlines

4  and skimmed two stories.  When a prospective juror who is not

5  a lawyer and not used to be in federal court is being

6  questioned by a federal magistrate judge, it's difficult, it

7  seems to me, I've never been in that position, but it's

8  difficult to resist and say something which the juror may

9  perceive as being inappropriate or not what the judge, I'll

10  leave it to the word inappropriate.  We're arguing she did get

11  an instruction, she Googled, she saw two articles and she said

12  she had opinions.  I think that's enough to challenge her for

13  cause.

14          MR. GULLOTTA:  We don't object.

15          THE COURT:  Okay.

16          (In open court; sidebar ends.)

1              (In open court; Prospective Jury present.)

2              THE COURT:  Ms. Berkalieva, you are excused from

3     serving on this jury.  You can report to the Central Jury

4     Room.  They'll give you further instructions.

5              THE PROSPECTIVE JUROR:  Cool.  Thank you.

6              (Prospective juror excused.)

7              THE COURT:  Juror Number 42, G L Rivilla-Rojas, no

8     positive responses.

9              (Prospective juror enters.)

10             THE COURT:  Good evening, Ms. Rivilla-Rojas.

11             THE PROSPECTIVE JUROR:  Good evening.

12             THE COURT:  You did not raise your juror number in

13    the main room to any of the questions, correct?

14             THE PROSPECTIVE JUROR:  That's correct.

15             THE COURT:  The trial in the case is going to start

16    on Monday, the 20th, it's been changed slightly, and it will

17    conclude no later than Friday, March 31st, but more likely

18    before then.

19             Is there any reason why this would cause you a

20    genuine hardship were you selected to serve on this jury?

21             THE PROSPECTIVE JUROR:  No.

22             THE COURT:  Have you, a family member or close

23    friend ever been charged with a crime, convicted of a crime,

24    been the subject of a criminal investigation, been a witness

25    to a crime, been a witness in a grand jury investigation or

1    been questioned in any matter by law enforcement officers or

2    been the victim of a crime?

3              THE PROSPECTIVE JUROR:  No.

4              THE COURT:  Okay.  Have you, a family member or

5    close friend ever been a party to a legal action or dispute

6    against the United States or any of its agencies or employees?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  This case has received some degree of

9    media attention.  Have you read, heard or seen anything in the

10   media about this case or about the defendant Douglass Mackey

11   a/k/a Ricky Vaughn?

12             THE PROSPECTIVE JUROR:  Not until yesterday, to be

13   honest, but I swiped it.

14             THE COURT:  You Googled it or something?

15             THE PROSPECTIVE JUROR:  I didn't.  I was on my, on

16   my Facebook and it did pop up.

17             THE COURT:  It was on your Facebook?

18             THE PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And it popped up in your feed?

20             THE PROSPECTIVE JUROR:  It did.

21             THE COURT:  And what was it that popped up?

22             THE PROSPECTIVE JUROR:  The jurors were, I mean the

23   jurors were being picked.  That's -- but I only read the title

24   and I swiped.

25             THE COURT:  Okay.  Other than that, have you --

1          THE PROSPECTIVE JUROR:  Never heard about it.

2          THE COURT:  Okay.  Seeing that on your Facebook

3   feed, did you form any ideas or opinions or conclusions about

4   the facts of this case or about the defendant Douglass Mackey?

5          THE PROSPECTIVE JUROR:  No.

6          THE COURT:  This case involves various individuals

7   including the defendant Douglass Mackey who had strong

8   political preferences during the 2016 Presidential election

9   campaign including individuals who supported President Donald

10  Trump and others who supported Presidential candidate Hillary

11  Clinton.

12         Do you have strong feelings or opinions related to

13  the 2016 Presidential election campaign or to the two

14  candidates during that campaign such that it would overcome

15  your duty to judge this case fairly and impartially?

16         THE PROSPECTIVE JUROR:  No.  Honestly, I didn't even

17  vote.

18         THE COURT:  Honestly, you what?

19         THE PROSPECTIVE JUROR:  Didn't even vote.

20         THE COURT:  Okay.  Do you have any experience with

21  what you perceived to be deliberately false or misleading

22  information on the internet or on social media?

23         THE PROSPECTIVE JUROR:  Pretty much I don't believe

24  much of social media.  I don't go by anything on social media.

25  And news, I, very sparely.  A news person, to watch news every

1   day?  No.

2          THE COURT:  Okay.  Would the fact that you don't

3   believe a lot of what's on the internet or social media, would

4   that affect your ability to be fair and impartial in this

5   case?

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  At trial, you may hear some language

8   that you may find to be offensive.  You should not assess that

9   evidence based on whether you find it to be offensive or not

10  but, rather, based on whether that evidence tends to prove or

11  disprove the elements of the crime that's been charged.

12         If you found some of the evidence to be offensive,

13  would you be able to put aside your feelings about its

14  offensiveness?

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And judge this case fairly and

17  impartially?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  You live, Ms. Rivilla-Rojas, in

20  Brooklyn, correct?

21         THE PROSPECTIVE JUROR:  That's correct.

22         THE COURT:  How long have you lived in Brooklyn?

23         THE PROSPECTIVE JUROR:  Thirty-two years.

24         THE COURT:  Do you own or do you rent?

25         THE PROSPECTIVE JUROR:  I rent.

```
 1              THE COURT:  Do you live with anyone?

 2              THE PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  Who do you live with?

 4              THE PROSPECTIVE JUROR:  My husband.

 5              THE COURT:  What does your husband do for a living?

 6              THE PROSPECTIVE JUROR:  He's a school bus driver.

 7              THE COURT:  Do you have any kids?

 8              THE PROSPECTIVE JUROR:  No.

 9              THE COURT:  What do you do for a living?

10              THE PROSPECTIVE JUROR:  I work for 1199.  I'm a data

11  analyst.

12              THE COURT:  For Local 1199?

13              THE PROSPECTIVE JUROR:  Yes.

14              THE COURT:  What's the highest level of education

15  you completed?

16              THE PROSPECTIVE JUROR:  College.

17              THE COURT:  Bachelor's degree or Associate's?

18              THE PROSPECTIVE JUROR:  Associate's.

19              THE COURT:  Have you ever served in the military?

20              THE PROSPECTIVE JUROR:  Yes.

21              THE COURT:  What branch?

22              THE PROSPECTIVE JUROR:  Navy.

23              THE COURT:  How long?

24              THE PROSPECTIVE JUROR:  Three years.  I served two

25  years and my dismissal was in 1999.
```

JURY SELECTION                                396

1          THE COURT:  You told us that you don't watch much

2    news but when you do watch news, where do you get it from,

3    newspapers, radio, television, internet?

4          THE PROSPECTIVE JUROR:  Television.

5          THE COURT:  Television?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Are there any particular television news

8    stations that you watch?

9          THE PROSPECTIVE JUROR:  New York 1.

10         THE COURT:  Do you use the internet and social

11   media?

12         THE PROSPECTIVE JUROR:  I do.

13         THE COURT:  What platforms?

14         THE DEFENDANT:  I use Google.

15         THE COURT:  You told us Facebook already.

16         THE PROSPECTIVE JUROR:  Yes.  I have Instagram also.

17   I use Google.

18         THE COURT:  How frequently are you on your Instagram

19   account, Facebook, Google?

20         THE PROSPECTIVE JUROR:  Google, pretty much every

21   day, but Instagram, every two or three days if I get a message

22   or something.  I'm not there every day.

23         THE COURT:  Are you concerned at all about the

24   reliability of the information that you find on the internet

25   and social media being that you don't believe most of what you

1    see?

2                THE PROSPECTIVE JUROR:  It's scary, some of the

3    stuff you find there.

4                THE COURT:  Will your concern about the scary things

5    you see on the internet and social media affect --

6                THE PROSPECTIVE JUROR:  Not really.

7                THE COURT:  -- your ability to be fair and

8    impartial?

9                THE PROSPECTIVE JUROR:  No.

10               THE COURT:  Have you been involved in voter

11   education, voter registration or any Get Out the Vote efforts?

12               THE PROSPECTIVE JUROR:  No.

13               THE COURT:  What are your hobbies?  How do you spend

14   your leisure time?

15               THE PROSPECTIVE JUROR:  Well, the summertime, I like

16   to travel and beach time, books, running.  That's about it.

17               THE COURT:  All right.  What television shows or

18   radio programs do you regularly read or watch?

19               THE PROSPECTIVE JUROR:  Oh, my God, I watch the CW,

20   mostly the CW, Channel  11, and all the super heroes shows.

21   That's about it.

22               THE COURT:  Okay.  No radio?

23               THE PROSPECTIVE JUROR:  Sometimes.

24               THE COURT:  Any particular radio --

25               THE PROSPECTIVE JUROR:  -- station?  Mega.

JURY SELECTION                                398

1           THE COURT:  Is there any reason why you cannot be

2      fair and impartial in this case?

3           THE PROSPECTIVE JUROR:  No.

4           THE COURT:  Is there anything about this case that

5      would cause you to favor one side over the other?

6           THE PROSPECTIVE JUROR:  No.

7           THE COURT:  Will you be able to set aside any

8      sympathies or biases you may have for any of the parties in

9      this case and render an impartial verdict based solely on the

10     evidence presented in court and the law as given to you by the

11     judge?

12          THE PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Any followup for Ms. Rivilla-Rojas?

14          MR. GULLOTTA:  No thank you, Your Honor.

15          MR. FRISCH:  No thank you.

16          THE COURT:  Ms. Rivilla-Rojas, you've made it

17     through this point successfully.

18          THE PROSPECTIVE JUROR:  Okay.

19          THE COURT:  I'm going to ask you to go home, go

20     wherever you want if you've got plans this evening, and come

21     back tomorrow at 2:00 p.m.

22          THE PROSPECTIVE JUROR:  Okay.

23          THE COURT:  Don't --

24          THE PROSPECTIVE JUROR:  Discuss?

25          THE COURT:  -- Google this case --

JURY SELECTION                                    399

1            THE PROSPECTIVE JUROR:  No.

2            THE COURT:  -- or Mr. Mackey.  If you see anything

3    more on your Facebook feed, ignore it.  If you see anything on

4    TV, hear anything on the radio and the newspapers, whatever,

5    ignore it.  Don't watch it.  Don't listen to it.  Don't read

6    it.

7            THE PROSPECTIVE JUROR:  No problem.

8            THE COURT:  If anyone contacts you about the case,

9    let me know tomorrow.

10           THE PROSPECTIVE JUROR:  Sure.

11           THE COURT:  Don't talk about the case with anyone.

12   Just tell them, if they ask, or your husband asks you, "I've

13   been selected to" or "I'm in the selection process to serve on

14   a criminal case."  Don't get involved in any discussions about

15   the case.

16           If you see the lawyers outside tomorrow in the hall

17   or Mr. Mackey, they're going to not speak with you and pretty

18   much you'll think that they're ignoring you.  It's not that

19   they are.  It's that they see you and they're not supposed to

20   interact with you outside of the courtroom.  Okay?  And so you

21   don't talk to them even.  All right?

22           THE PROSPECTIVE JUROR:  Understood.

23           THE COURT:  Thank you so much.  See you tomorrow.

24           THE PROSPECTIVE JUROR:  Thank you.  Have a good

25   night.

JURY SELECTION                    400

1              (Prospective juror exits.)

2              THE COURT:  Can we get through two more tonight, you

3      think?

4              You're done?

5              MR. FRISCH:  Yes.

6              THE COURT:  I hate to do it to them.

7              MR. PAULSEN:  We're fine to go as long as you want.

8              MR. FRISCH:  Actually, what I was thinking was you

9      told them 5:30 and I fear for your safety.

10             THE COURT:  Do me a favor.  Ask them if they want to

11     continue through, it will take us about another 20  minutes,

12     or whether they want to go home and come back tomorrow morning

13     at 9 o'clock.

14             I told them 9 o'clock.  I told the jurors 9 o'clock.

15             (Pause.)

16             THE COURT:  They want to stay.

17             Let's bring in John Thomas, Number 44.

18             (Prospective juror enters.)

19             THE COURT:  Good evening, Mr. John -- excuse me --

20     Mr. Thomas.

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  You indicated that you have difficulty

23     reading or understanding English.

24             THE PROSPECTIVE JUROR:  Reading, it's okay, but I

25     can't speak not well.

1              THE COURT:  How long have you been in the United

2     States?

3              THE PROSPECTIVE JUROR:  I've been more, more than

4     17 years.

5              THE COURT:  All right.  What do you do for a living?

6              THE PROSPECTIVE JUROR:  I working two years, around

7     two years, I working in the Postal Service.

8              THE COURT:  Food service?

9              THE PROSPECTIVE JUROR:  Postal, Postal Service.

10             THE COURT:  Postal Service?

11             THE PROSPECTIVE JUROR:  Before I'm working a private

12    company.

13             THE COURT:  And are you married?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  What does your spouse do for a living?

16    Your wife, what does she do?

17             THE PROSPECTIVE JUROR:  My wife is a nurse, RN.  I

18    have two daughters also.  They are also, they are also

19    working, they're nurses.

20             THE COURT:  They're both nurses?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Taking after their mother?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Good.  And do they live with you?

25             THE PROSPECTIVE JUROR:  Yes.

```
 1              THE COURT:  Okay.  Mr. Thomas, the trial is going to
 2    start on the 20th of March, next Monday.
 3              THE PROSPECTIVE JUROR:  Next Monday.
 4              THE COURT:  And it's supposed to go until March
 5    31st.  Is there any reason this would cause you a genuine
 6    hardship if you were selected to serve on this jury?
 7              THE PROSPECTIVE JUROR:  I don't understand that.
 8              THE COURT:  Would it be difficult for you to serve
 9    on this jury for that length of time?
10              THE PROSPECTIVE JUROR:  No, no problem.  I'm coming
11    20th.
12              THE COURT:  You come in from Nassau County, New Hyde
13    Park?
14              THE PROSPECTIVE JUROR:  Yes.
15              THE COURT:  Have you, a family member or close
16    friend ever been charged with a crime, convicted of a crime,
17    been the subject of a criminal investigation, been a witness
18    to a crime, been a witness in a grand jury investigation or
19    been questioned in any matter by law enforcement officers or
20    been the victim of a crime?
21              Do you understand or no?
22              THE PROSPECTIVE JUROR:  No.
23              (Continued on next page.)
24
25
```

1            THE COURT:  All right, Mr. Thomas, I'm going to

2    excuse you from serving on the jury.  You can go to the

3    central jury room where you started off this morning --

4            THE PROSPECTIVE JUROR:  Okay.

5            THE COURT:  -- and they'll give you further

6    instructions.  Okay?

7            THE PROSPECTIVE JUROR:  Tomorrow?

8            THE COURT:  You don't have to come back tomorrow,

9    no, but go tonight -- are they still there.

10           THE PROSPECTIVE JUROR:  Okay.

11           THE COURT:  Go to the central jury room, they'll

12   give you your instructions.

13           THE PROSPECTIVE JUROR:  Yeah.

14           (Prospective juror exits the courtroom.)

15           (Prospective juror enters the courtroom.)

16           THE COURT:  Good afternoon, Ms. Pryor, lucky you.

17           THE PROSPECTIVE JUROR:  I'm the last one here.

18           THE COURT:  Yes.

19           Ms. Pryor, you indicated that you have served on a

20   jury or grand jury before.

21           THE PROSPECTIVE JUROR:  I have.

22           THE COURT:  Tell me about that, please.

23           THE PROSPECTIVE JUROR:  It was in 2018 in the

24   Manhattan federal court.

25           Do you need more information than that?

1          THE COURT:  What kind of case was it?

2          THE PROSPECTIVE JUROR:  It was a drug-related case.

3          THE COURT:  Criminal case?

4          THE PROSPECTIVE JUROR:  Criminal case.

5          THE COURT:  Without revealing what, if anything, the

6    verdict was, did the jury reach a verdict?

7          THE PROSPECTIVE JUROR:  Yes, we did.

8          THE COURT:  So this case is going -- the trial is

9    going to start on March 20th and last through March 31st, at

10   the latest, probably will conclude before then, shortly before

11   then.

12         Is there anything reason why this would cause you a

13   genuine hardship if you were selected to serve on the jury?

14         THE PROSPECTIVE JUROR:  No.

15         THE COURT:  Do you have -- have you, or any member

16   of your family or close friend ever been charged with a crime?

17   Convicted of a crime?  Been the subject of a criminal

18   investigation?  Been a witness to a crime?  Witness to a grand

19   jury investigation or been questioned in any matter by law

20   enforcement, or been the victim of a crime?

21         In other words, have you, family members or close

22   friends ever been part of the criminal justice process?

23         THE PROSPECTIVE JUROR:  Yes.

24         THE COURT:  Tell me about that, please.

25         THE PROSPECTIVE JUROR:  My father was part of a

1    criminal investigation for part of his job a couple years ago.

2              THE COURT:  Was that criminal investigation resolved

3    to your family's satisfaction?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Is there anything about that that would

6    affect your ability to be fair and impartial in this case?

7              THE PROSPECTIVE JUROR:  No.

8              THE COURT:  There was an investigation into his --

9    into a business that he was a part of?

10             THE PROSPECTIVE JUROR:  Yes.  So he was the CFO of a

11   business.  And it was just like a general investigation that

12   was part of it, but nothing came of that investigation.

13             THE COURT:  Okay.

14             Have you, a family member or close friend ever been

15   a party to a legal action or had a dispute against the United

16   States, its agencies or employees?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Now this case has received some degree

19   of media attention.

20             Have you read, heard or seen anything in the media

21   about this case or about the defendant Douglass Mackey,

22   otherwise known Ricky Vaughn?

23             THE PROSPECTIVE JUROR:  No.

24             THE COURT:  This case involves individuals, various

25   individuals, including Mr. Vaughn -- excuse me, Mr. Mackey,

1    who had strong political preferences during the 2016

2    presidential election campaign, including individuals who

3    supported President Donald Trump and individuals who supported

4    presidential and candidate Hillary Clinton.

5              Do you have any strong feelings or opinions related

6    to the 2016 presidential election campaign or to those two

7    candidates such that it would overcome your ability to be fair

8    and impartial in this case?

9              THE PROSPECTIVE JUROR:  No.

10             THE COURT:  Do you have any experience with what you

11   perceive to be deliberately false or misleading information on

12   the internet or in social media?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  At trial, you may hear some language

15   that you may find to be offensive.  You should not assess the

16   evidence you hear based on whether you find it to be offensive

17   or not, but rather whether it tends to prove or disprove the

18   elements of the crime.

19             If you found some of the evidence to be offensive,

20   would you be able to set aside your feelings about its

21   offensiveness and objectively evaluate it fairly and

22   impartially?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  You live in Brooklyn?

25             THE PROSPECTIVE JUROR:  I do.

1              THE COURT:  How long?

2              THE PROSPECTIVE JUROR:  Four years.  About four

3      years.

4              THE COURT:  Do you own or do you rent?

5              THE PROSPECTIVE JUROR:  I rent.

6              THE COURT:  Do you live with anyone?

7              THE PROSPECTIVE JUROR:  Yes, I live with my husband.

8              THE COURT:  What does your husband do for

9      employment, if anything?

10             THE PROSPECTIVE JUROR:  He works for a company

11     called Fancy Tone, which is like a music discovery platform.

12             THE COURT:  Do you have any kids?

13             THE PROSPECTIVE JUROR:  No.

14             THE COURT:  My list says you're in human resources.

15             THE PROSPECTIVE JUROR:  That's correct.

16             THE COURT:  Who do you work for?

17             THE PROSPECTIVE JUROR:  I work for Etsy.

18             THE COURT:  Heard of it.

19             What's your highest level of education?

20             THE PROSPECTIVE JUROR:  Bachelor's degree.

21             THE COURT:  Have you ever served in the military?

22             THE PROSPECTIVE JUROR:  No.

23             THE COURT:  Where do you get your news from?

24     Newspapers?  Radio?  Television?  Internet?  Social media?

25     Podcasts?  Everything?  Everywhere?

1            THE PROSPECTIVE JUROR:  A little bit of a mixture,

2   so typically the New York Times and the daily podcasts, if I

3   have time to read it, which I don't really have time.

4            THE COURT:  You get news from TV?

5            THE PROSPECTIVE JUROR:  TV, no, I don't have TV.

6            THE COURT:  Do you use the internet and social

7   media?

8            THE PROSPECTIVE JUROR:  I use Instagram, but not

9   social media very often.

10            THE COURT:  Do you have Facebook, Instagram, Twitter

11   Snapchat, TikTok, whatever, any of those?

12            THE PROSPECTIVE JUROR:  I have Instagram.  I don't

13   use often.  And I also have BeReal.

14            THE COURT:  I don't know that one.

15            THE PROSPECTIVE JUROR:  It's a newer one.

16            THE COURT:  And how do you use BeReal or the

17   Instagram when you do use it?

18            THE PROSPECTIVE JUROR:  So BeReal is essentially --

19   it's the same prompt to every person at the same exact time so

20   you don't have time to like do any -- so you essentially have

21   to take picture within two minutes.  So it's just people

22   taking pictures of their daily life.  It's not like Instagram.

23            THE COURT:  I've heard of that.

24            THE PROSPECTIVE JUROR:  It's a pretty new thing.

25            THE COURT:  How frequently are you on it?

1        THE PROSPECTIVE JUROR:  Once a day maybe.  Instagram

2   not often.

3        THE COURT:  Are you concerned at all about the

4   reliability of information that you find on the internet and

5   social media?

6        THE PROSPECTIVE JUROR:  Yes.  Just --

7        THE COURT:  Will that affect your ability to be fair

8   and impartial in this case?

9        THE PROSPECTIVE JUROR:  No.

10        THE COURT:  Have you ever been involved in voter

11   education, voter registration or "get out the vote" efforts?

12        THE PROSPECTIVE JUROR:  Like a person that goes out

13   and does that?

14        THE COURT:  With an organization or, you know, man

15   the voter registration tables, or anything like that?

16        THE PROSPECTIVE JUROR:  No.

17        THE COURT:  What are your hobbies?  How do you spend

18   your leisure time?

19        THE PROSPECTIVE JUROR:  I take night courses down on

20   Atlantic Street, and I'm also in signed up for a language

21   course for Italian.

22        THE COURT:  Are there any television shows or radio

23   programs that you regularly watch or listen to.

24        THE PROSPECTIVE JUROR:  Yes, I watch 90 Day Fiance.

25        THE COURT:  Can you be fair and impartial in this

1  case?

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Is there anything about the case that

4  would cause you to favor one side over the over?

5              THE PROSPECTIVE JUROR:  No.

6              THE COURT:  Will you be able to set aside any

7  sympathies or bias -- I'm sorry, the lights turned off

8  automatically.

9              Will you be able to set aside any biases you may

10  have for any of the parties in this case and render an

11  impartial verdict based solely on the evidence presented in

12  the court and the laws given to you by Judge Garaufis.

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Do you have any follow-up for Ms. Pryor?

15             MR. GULLOTTA:  No, Your Honor.

16             MR. FRISCH:  No, Your Honor.

17             THE COURT:  Ms. Pryor, thank you.  You've made it

18  through.  You can go home, or go wherever.  You don't have to

19  stay here, but you have to come back tomorrow at 2.

20             THE PROSPECTIVE JUROR:  At 2:00.

21             THE COURT:  We need to get a few more people to get

22  enough -- a large enough pool from which the parties can

23  exercise their peremptory challenges.

24             Don't do any internet research about this case.  If

25  you see anything on the TV, radio, if you hear it, comes

1    across your feed, whatever, ignore it.  Don't read it.

2            Don't talk about the case with anyone.  Anyone asks

3    you, I'm in the process of being selected to serve on a jury

4    in a criminal case.  That's it.

5            You see the lawyers in the hall tomorrow, they're

6    going to look like they're ignoring you.  And that's not

7    because they are, it's because they are not to have any

8    contact with you outside of the courtroom.  Don't talk to them

9    either.

10           And if anyone contacts you about this case and tries

11   to get any information from you, please let me know about it,

12   okay?

13           THE PROSPECTIVE JUROR:  All right.

14           THE COURT:  Have a great evening.  Thanks.

15                   *    *    *    *    *

16           (Proceedings adjourned at 6:00 p.m. to resume on

17   March 15, 2023 at 9:00 a.m.)

18

19

20

21

22

23

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*